

NIELSEN, MERKSAMER, PARRINELLO,
   MUELLER & NAYLOR, LLP
JAMES R. PARRINELLO, SBN #63415
SEAN P. WELCH, SBN #227101
2350 KERNER BLVD., SUITE 250
SAN RAFAEL, CA 94901
TELEPHONE (415) 389-6800
FAX      (415) 388-6874
e-mail: jparrinello@nmgovlaw.com

*Attorneys for Defendant*
W.J. Deutsch & Sons, Ltd.

E-filing

ORIGINAL FILED
JUN  9 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JCS

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENWOOD WINERY, INC., | Case No. |
|   *Plaintiff,* | CV 08 2848 |
| v. | NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (Diversity) |
| W.J. DEUTSCH & SONS, LTD., a New York Corporation, and DOES 1-50, inclusive, | |
|   *Defendants.* | CASE FILED: June 9, 2008 |
| | REMOVED FROM STATE COURT |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant W.J. DEUTSCH & SONS, LTD. hereby

removes this action to the United States District Court for the Northern District of

California.   The grounds for removal are as follows:

1.    This action being properly removed to Federal Court based on diversity

jurisdiction because it involves a claim between parties from different states where the

amount in controversy exceeds $75,000.

2.    On June 9, 2008, an action was commenced in the Superior Court in the

State of California in and for the County of Napa entitled *Renwood Winery, Inc., Plaintiff*

1

*v. W.J. Deutsch & Sons, Ltd, a New York Corporation, and Does 1-50, inclusive,*

*Defendants* (the "State Court Action"). True and correct copies of all of the documents in

the State Court Action are attached hereto as Exhibit A.

3.      A copy of the initial pleading setting forth the claim for relief upon which

the State Court Action is based was provided to Defendant W.J. Deutsch & Sons, Ltd. on

June 8, 2008, within thirty (30) days of this notice of removal. This removal is therefore

timely in accordance with 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(e).

4.      Plaintiff RENWOOD WINERY, INC. was at all relevant times and is still

incorporated under the laws of the State of California, having its principal place of

business in the State of California. Defendant W.J. Deutsch & Sons, Ltd., the sole named

defendant in this action, is incorporated under the state laws of New York, having its

principal place of business in New York.

5.      Jurisdiction: This Court has original jurisdiction over this civil action under

28 U.S.C. § 1332(a)(1), in that the amount in controversy for Plaintiff's alleged claim

exceeds $75,000, and the parties are undeniably diverse based on their citizenship as

described above in paragraph 4. Specifically, Plaintiff's alleged claim involves the

repossession of wine products in an amount exceeding $1,000,000. Accordingly, this is

an action that may be removed pursuant to the provisions of 28 U.S.C. § 1441(b).

6.      Promptly after this Notice of Removal is filed, a Notice to Adverse Party of

Removal to Federal Court, together with a copy of this Notice of Removal, will be served

on Plaintiff and filed with the Superior Court for the State of California, County of Napa.

///

///

///

///

2

7.    Wherefore, Defendant W.J. Deutsch & Sons, Ltd. prays that this action be removed from Superior Court of the State of California in and for the County of Napa, to the United States District Court for the Northern District of California, and for such further relief as may be just and proper.

Date: June 9, 2008

Nielsen, Merksamer, Parrinello,
Mueller & Naylor LLP

By: _____

James R. Parrinello, Esq.
ATTORNEYS FOR W.J. DEUTSCH & SONS, LTD.

3

1  WHITNEY A. DAVIS, SBN 149523
   MARIA S. ROSENFELD, SBN 186116
2  CHARTER DAVIS, LLP
   1730 I Street, Ste. 240
3  Sacramento, CA  95814
   Tel:  (916) 448-9000
4  Fax: (916) 448-9009

5  Attorneys for Defendant
   RENWOOD WINERY, INC.

6

7

8              IN THE SUPERIOR COURT IN THE STATE OF CALIFORNIA

9                   IN AND FOR THE COUNTY OF NAPA

10

11 RENWOOD WINERY INC.              )  Case No.:
                                    )
12          Plaintiff,              )
                                    )
13     vs.                          )  **VERIFIED COMPLAINT ON BEHALF**
                                    )  **OF DEFENDANT RENWOOD WINERY,**
14 W.J. DEUTSCH & SONS LTD.,  a New York )  **INC.**
   Corporation, and DOES 1-50 inclusive,  )
15                                  )     **1.  Possession of Personal Property**
            Defendants.            )     **2.  Injunctive Relief**
16 _____)

17        Plaintiff  RENWOOD  WINERY  INC. (hereinafter "RENWOOD" and/or "Plaintiff")

18 alleges as follows:

19                           __JURISDICTION__

20        1.  Plaintiff RENWOOD is and at all relevant time was a California Corporation

21 with its principal place of business in Sacramento, California.

22        2.  Defendant W.J. DEUTSCH & SONS LTD. (hereinafter "WJD" and/or

23 "Defendant") is upon information and belief, a New York corporation that imports and distributes

24 wines, and, upon information and belief, is qualified to, and does do, and has at all relevant times

25 done business in California.

26        3.   The names and capacities, whether individual, corporate, associate or otherwise of

27 Defendants DOES 1 through 50, inclusive, are unknown to RENWOOD, who therefore sues

28 these Defendants by fictitious names.  Jurisdiction is proper in Napa County as the cure inventory

                                    -1-
           VERIFIED COMPLAINT ON BEHALF OF DEFENDANT RENWOOD WINERY INC.

at issue in this in rem/quasi in rem based action, is located in Napa County, California. RENWOOD is informed and believes and thereon alleges that each of the Defendants designated as a fictitiously named Defendant is, in some manner, responsible for the events and happenings hereinafter alleged and caused or contributed to the damage done to RENWOOD as hereinafter set forth in each cause of action, or has possession of the cure inventory located in Napa County, California, that is the subject of this complaint. RENWOOD will seek the Court's leave to amend this complaint to allege such true names and capacities when they have been ascertained.

4.    RENWOOD is informed and believes and on that basis alleges that at all times herein mentioned all defendants were, and are, the agents, servants and employees of all the other defendants, and were acting within the scope of this agency or employment in doing the things herein alleged.

## GENERAL ALLEGATIONS

5.    RENWOOD and WJD executed a wine sales and service agreement in March of 2006.   The agreement requires that RENWOOD produce 16 wines organized in four tiers (product categories) and that WJD exert its "best efforts" to market and sell those wines. WJD also guaranteed a 15% growth in Renwood sales by product and by tier for each month during the first five years of the contract.  This means that if WJD did not sell the wine, WJD had to buy the wine itself to cure the breach of the performance standard.  Additionally, WJD had to ensure that depletions of distributor inventory to retailers could not fall below 80% of the sales performance standard.  (See a true and correct copy of the Services Agreement, **Exhibit A** to this complaint).

6.    The Services Agreement also required that RENWOOD pay WJD a marketing contribution or allowance for each case depleted to a retailer on some of the wines.  WJD could only send a marketing contribution bill to Renwood on a quarterly basis.

7.    In the Services Agreement, WJD agreed to a sales performance standard by guaranteeing 15% sales growth over the previous year, on a monthly basis. The monthly performance standards were pre-calculated for a five-year period. Per the terms of the agreement, WJD must cure any sales shortfall below the performance standard, by product and by tier,

1   within 15 days of cure demand by Renwood.  There is no limitation in the contract as to when

2   Renwood can call for a cure.

3       8.   The 16 Renwood wines that are covered by the Services Agreement are grouped by

4   tiers (product categories.)  Tier 1 contains Proprietary wines; Tier 2 includes the "Amador

5   County" wines; Tier 3 includes "Red Label" value wines; and Tier 4 contains dessert wines.

6   Tiers 2 & 3 represent 85% of Renwood's annual domestic sales historically.

7       9.   WJD was required to fulfill its obligation as follows:  the monthly sales requirements

8   for Tiers 1&4 had to be fulfilled 100% from those tiers, respectively; but the monthly

9   requirement for Tiers2&3 had to be fulfilled from only 85% from those respective tiers, with a

10  flexibility allowance that permitted the remaining 15% of the requirement to be satisfied from

11  overages in any other tier.  As an accommodation to WJD, during the first three months of the

12  relationship (the "Transition Period") the Service Agreement provided that WJD only had to

13  meet 100% of the prior year's sales for April, May and June 2006.  Therefore, the 15% increase

14  would not be applied until July, 2006.

15      10.  The Renwood fiscal year runs from July to June.  The Transition period included

16  April, May and June, 2006.  Fiscal Year 2007 commenced on July 1, 2006.  During the

17  Transition Period, WJD experienced a $300,000 shortfall out of the $2.1 million sales standard.

18  The shortfall included a 1,100-case sale to Beverages & More that RENWOOD closed before the

19  WJD agreement was signed.  RENWOOD invoiced WJD for the 1,100 cases, but WJD still

20  refuses to pay it.

21      11.  Cure notices were sent to WJD after the Transition Period.  WJD created a conflict

22  because it tried to borrow July 2006 sales to make up the $300,000 deficit from June in order to

23  meet its Transition Period cure obligations.  RENWOOD protested WJD's actions.  By WJD

24  borrowing sales from July 2006 to cure the Transition Period shortfall, WJD started fiscal year

25  2007 with a shortfall.   The WJD sales shortfall ballooned to $2.5 million by the end of

26  November, 2007, merely seven months into the contract.  The cure inventory grew dramatically.

27  WJD's decision to ship from the cure inventory instead of from RENWOOD's caused larger

28  monthly shortfalls in their sales guarantee. The sales shortfall and cure issue became a problem

during Fiscal 2007 because WJD fell too far behind the sales guarantee. By the year's end in June of 2007, WJD would only have sold about $3 million of the $8.217 million performance standard.

12. Thereafter, WJD began a practice of acknowledging cure(s) in 15 days, placing an order for the cure goods 10 to 15 days thereafter, paying RENWOOD 35 days after their order is shipped. This departure from the prior contractual arrangement moved RENWOOD's cash flow back between 50-60 days. They also manipulated the shipping date by refusing to accept goods within 15 days from the cure demand. If WJD would have sold the goods to a distributor instead of buying the goods from RENWOOD for cure purposes, WJD would have had to pay RENWOOD for the same wine 60 days earlier. WJD had thus begun to use the cure as a way to stretch-out payment terms another 60 days. WJD amassed a huge "cure" inventory of RENWOOD wine, then filled distributor orders from the cure inventory before ordering from RENWOOD's inventory. This scenario cut-off cash flow to RENWOOD. Despite RENWOOD's objection, and lengthy discussion through a year of mediation, WJD continued this cure practice until February of 2008. At that point, WJD stopped even acknowledging the cure demands of RENWOOD, and started to sell-off the cure inventory.

13. RENWOOD has a security interest in that cure inventory evidence by a UCC filing and the terms of the Services Agreement. (Exhibit A at p.8 (i)(c).)

14. In the year before hiring WJD, RENWOOD shipped about 96,000 cases of wine and collected the proceeds directly from the distributors. After hiring WJD, and more importantly, after RENWOOD refused WJD's demand to reduce the 15% sales guarantee, WJD disrupted the shipment and payment procedures dramatically. To date in Fiscal 2008, WJD has shipped about 44,000 cases from the cure inventory as compared to 12,680 cases from RENWOOD's inventory.

15. WJD is selling out the enormous cure inventory before selling from RENWOOD inventory, and at the same time, WJD has not cured contract breaches of the sales performance standard for many months. WJD is past due on cure invoices totaling in excess of $2 million. Renwood has a security interest in that cure inventory.

VERIFIED COMPLAINT ON BEHALF OF DEFENDANT RENWOOD WINERY INC.

16.   The sale of wine from the WJD cure inventory before satisfying monthly sales requirements or cure demands constitutes an unfair business practice, in that WJD has used the cure to delay payment and breach the contract.

17.   By cutting off sales revenue from contracted wines, WJD is eliminating revenue to prevent RENWOOD from funding its harvest of grapes for the next vintage. The grapes of an entire vintage will be ruined, causing irreparable injury in the form of lost inventory. RENWOOD's wines cannot be made with grapes from other vineyards, nor could RENWOOD buy grapes to replace them as the unique Grandpere and Grandmere grapes, blended into many of the other RENWOOD wines, can only be grown at RENWOOD.

## FIRST CAUSE OF ACTION

(Possession of Personal Property-Claim and Delivery)

18.   RENWOOD hereby incorporates by reference as though fully set forth paragraphs 1 through 17 above.

19.   Under the Services Agreement, WJD granted to RENWOOD a security interest in the W.J. Deutsch cure inventory. The cure inventory now consists of more that 14,000 cases of wine stored at Western Wine Warehouse in American Canyon, California. The estimated value of the cure inventory is less than $1.4 million, which is less than the amounts due and owing to Renwood. (See a true and correct copy of the most recent W.J. Deutsch Cure Inventory Listing, **Exhibit B** to this complaint)

20.   By reason of WJD'S breaches as alleged above and pursuant to the Services Agreement, wherein WJD stipulates to writ of attachment and/or execution methods regarding the cure inventory upon breach, RENWOOD is entitled to and demands immediate possession of the cure inventory in which RENWOOD holds a security interest.

21.   RENWOOD has made lawful demand upon WJD to deliver the cure inventory to RENWOOD. (See a true and correct copy of Demand Letter to W.J. Deutsch, May 29, 2008, **Exhibit C** to this complaint).

22.   WJD has failed and refused to deliver possession of the cure inventory to RENWOOD. (See true and correct copies of the W.J. Deutsch response dated June 4, 2008,

VERIFIED COMPLAINT ON BEHALF OF DEFENDANT RENWOOD WINERY INC.

**Exhibit D** to this complaint; the second Renwood demand of June 4, 2008, **Exhibit E** to this complaint; and the Renwood notice regarding consequences of W.J. Deutsch failing to respond to the Renwood demand dated June 4, 2008, **Exhibit F** to this complaint); notice to counsel for W.J. Deutsch dated June 5, 2008, **Exhibit G**. WJD remains in possession of the cure inventory in defiance of RENWOOD'S security interest and contractual rights to possession.

    23.   RENWOOD maintains a listing of all cure inventory in which it holds a security interest.

    24.   RENWOOD is informed and believes and alleges that the cure inventory in which RENWOOD has a security interest has not been taken for a tax, assessment or fine pursuant to statute, or seized under any execution against the property.

    25.   The cure inventory has a value less than the amount of the obligation owed to RENWOOD and therefore WJD has no economic interest in the cure inventory.

## SECOND CAUSE OF ACTION

### (Injunctive Relief)

    26.  RENWOOD hereby incorporates by reference as though fully set forth paragraphs 1 through 25 above.

    27.  WJD is in possession of the cure inventory and proceeds wrongfully generated from by WJD's sale of the cure inventory in lieu of selling RENWOOD inventory.

    28.  WJD's wrongful conduct in failing to turn over the cure inventory has caused and will continue to cause great and irreparable injury to RENWOOD unless and until WJD is enjoined and restrained by order of this Court. RENWOOD is in danger of great and irreparable injury because WJD's retention of the cure inventory allows it to use the cure inventory for purposes other than repaying the obligations owed to RENWOOD. This results in a dissipation of the cure inventory for which RENWOOD has a secured interest.

///

///

///

VERIFIED COMPLAINT ON BEHALF OF DEFENDANT RENWOOD WINERY INC.

29.   RENWOOD is also at risk because the cure inventory is moveable and can be removed from the business premises at which it is stored and otherwise hidden to prevent RENWOOD from recovering all or some of the collateral.  Renwood is informed and believes that W.J. Deutsch is currently negotiating with its distributors to purchase the entire cure inventory immediately.

30.   RENWOOD has no adequate remedy at law for the injuries that it will suffer if WJD retains the cure inventory in defiance of RENWOOD's rights.

31.   RENWOOD seeks a temporary restraining order and preliminary injunction against WJD to prohibit it and its agents, employees and other representatives from selling, diverting, commingling, removing from the premises, depositing, or otherwise disposing of any and all of the cure inventory. The injunction should also prohibit WJD from doing anything with the proceeds and other income that is generated from the use or misuse of the cure inventory other than paying those funds over to RENWOOD or depositing those same funds into Court. RENWOOD also seeks an order enjoining WJD from using the cure inventory for any purpose except to preserve RENWOOD's interest in the cure inventory and to return it to RENWOOD.

///

///

///

VERIFIED COMPLAINT ON BEHALF OF DEFENDANT RENWOOD WINERY INC.

**PRAYER**

WHEREFORE, RENWOOD WINERY, INC. prays judgment against WJD as follows:

      1.   For possession of all cure inventory in which RENWOOD has a securing interest;

      2.   For a judgment requiring WJD to deliver the cure inventory to RENWOOD.

      3.   For a temporary restraining order, preliminary injunction and permanent injunction, each prohibiting WJD and its principals, agents, employees and other representatives from selling, diverting, hypothecating, or commingling the cure inventory and/or depositing, spending or otherwise disposing of proceeds of the cure inventory in which RENWOOD has a security interest, and from doing anything with the proceeds and other income of same, other than paying them over to RENWOOD or depositing the same into Court;

      4.   For costs of suit herein;

      5.   For reasonable attorneys' fees incurred herein; and

      6.   For such other and further relief as to the Court may seem just.


DATED:  June 5, 2008                    CHARTER DAVIS, LLP


                                   _____

                                   WHITNEY A. DAVIS
                                   Attorneys for Defendant
                                   RENWOOD WINERY, INC.

VERIFIED COMPLAINT ON BEHALF OF DEFENDANT RENWOOD WINERY INC.

1

## **<u>VERIFICATION</u>**

2   I declare under penalty of perjury under the laws of the State of California that the

3   foregoing is true and correct of my own personal knowledge, and that this Verified Complaint

4   was executed by Robert I. Smerling, Chief Executive Officer of Renwood Winery, Inc. on this

5   _____ day of June, 2008 in Sacramento, California.

6

7

8                                    _____
                                     ROBERT I. SMERLING

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT ON BEHALF OF DEFENDANT RENWOOD WINERY INC.

1  WHITNEY A. DAVIS, SBN 149523
   MARIA S. ROSENFELD, SBN 186116
2  CHARTER DAVIS, LLP
   1730 I Street, Ste. 240
3  Sacramento, CA 95814
   (916) 448-9000
4  (916) 448-9009

5  ATTORNEYS FOR DEFENDANT
   RENWOOD WINERY, INC.
6

7

8              IN THE SUPERIOR COURT IN THE STATE OF CALIFORNIA

9                     IN AND FOR THE COUNTY OF NAPA

10

11

12  RENWOOD WINERY INC.              )   Case No.:
                                     )
13                                   )   NOTICE OF HEARING ON BEHALF OF
                                     )   RENWOOD WINERY, INC.
14              Plaintiff,           )   IN SUPPORT OF APPLICATION FOR
                                     )
15         vs.                       )   (1)EX PARTE WRIT OF POSSESSION,
                                     )   (2)TEMPORARY RESTRAINING ORDER
16                                   )   PENDING HEARING ON WRIT OF
    W.J. DEUTSCH & SONS LTD., a New  )   POSSESSION,
17  York Corporation, and DOES 1-50  )   (3) WRIT OF POSSESSION
    inclusive,                       )   (4) PRELIMINARY INJUNCTION
18                                   )
19                                   )
                Defendants,          )   Date:   June 9, 2008
20                                   )   Time:   11:30 a.m.
                                     )   Dept:  B, Historic Courthouse
21                                   )   Hon. Francisca P. Tischer, P.J.
                                     )
22                                   )
                                     )
23  _____ )

24

25  TO THE CLERK OF THE COURT, THE COURT, AND ALL INTERESTED PARTIES AND
26  THEIR COUNSEL OF RECORD:

27  PLEASE TAKE NOTICE THAT, on June 9, 2008 at 11:30 a.m. or as soon thereafter as the

28  matter may be heard, in Division B of the above-entitled Court, located at 825 Brown Street,

    Napa, California ,
                                          1
              NOICE OF HEARING ON BEHALF OF RENWOOD WINERY INC.
        FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
                (3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

1    plaintiff RENWOOD WINERY INC. ("RENWOOD") will and hereby does move this Court ex

2    parte for an order issuing a writ of possession, or, in the alternative, for a temporary restraining

3    order ("Application").

4          Defendant W.J. DEUTSCH & SONS LTD. ("WJD") and their counsel were given notice

5    of this Application on June 4, 2008. (See Declaration of Whitney A. Davis filed and served

6    herewith.)

7          This Application is made on the grounds that Defendant WJD is in wrongful possession

8    certain cure inventory representing personal property collateral. RENWOOD seeks an ex parte

9    writ of possession following WJD'S contractual defaults/breaches relating to the wine sales and

10   services agreement of March 2006 entered into by and between RENWOOD and WJD. The

11   agreement requires that RENWOOD produce 16 wines organized in four tiers and that WJD

12   exert its "best efforts" to market and sell those wines. WJD also guaranteed a 15% growth in

13   RENWOOD sales by product and by tier for each month during the first five years of the

14   contract. This means that if WJD did/does not sell the wine, WJD must buy the wine itself to

15   cure the breach of the performance standard. Additionally, WJD must ensure that depletions of

16   distributor inventory to retailers not fall below 80% of the sales performance standard.

17         As is described in more detail within the accompanying points and authorities, WJD has

18   breached the services agreement, (1) by accumulating and then selling out the enormous cure

19   inventory, located in American Canyon, CA, before selling from RENWOOD inventory, and (2)

20   at the same time, failing to cure contract breaches of the sales performance standard per the

21   service agreement for many months. WJD is past due on cure invoices totaling in excess of $2

22   million. RENWOOD has a security interest in that cure inventory per the security agreement and

23   UCC-1 filings. The sale of wine from the WJD cure inventory before satisfying monthly sales

24   requirements or cure demands constitutes an unfair business practice, in that WJD has used the

25   cure to delay payment and breach the contract. (See accompanying declarations of Robert

26   Smerling and Danica Ratkovich filed and served herewith.)

27         Based on the above, and given the immediate danger of the cure inventory quickly

28   disappearing (per WJD's recent "sell off scheme") RENWOOD applies for an ex parte writ of

     possession to mandate the return of the cure inventory collateral and to prevent WJD from

                                              2
                NOICE OF HEARING ON BEHALF OF RENWOOD WINERY INC.
         FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
                   (3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

1  wrongfully selling off cure inventory without curing contractual breaches under the services
2  agreement. Due to WJD'S defaults on its contractual obligations to RENWOOD per the services
3  agreement, RENWOOD has sent notices of cure and also made demand for the cure inventory in
4  which it has a security interest, but WJD has refused to comply. RENWOOD seeks the court's
5  assistance in enforcing its rights to possession of its cure inventory before WJD sells off more
6  cure inventory, wrongfully diverting RENWOOD's collateral, and wrongfully profiting from the
7  cure inventory.

8      PLEASE TAKE FURTHER NOTICE THAT, alternatively, if for any reason the ex parte
9  writ of possession does not issue, RENWOOD seeks a temporary restraining order directing WJD
10  to preserve the remaining cure inventory pending a noticed hearing on RENWOOD's application
11  for writ of possession.

12      This Application is made on the ground that there is good cause to issue the writ of
13  possession or, in the alternative, issue a temporary restraining order. This Application is based on
14  the attached Memorandum of Points and Authorities, the Declarations of Robert Smerling,
15  Danica Ratkovich, and the accompanying application for Ex Parte Writ of Possession,
16  accompanying Ex Parte Writ of Possession declaration of Whitney A. Davis, the accompanying
17  Compendium of Exhibits, and related papers filed concurrently herewith, on all pleadings, papers,
18  records and files herein, and upon such further argument and evidence as may be considered by
19  the Court.

20  DATED: June _6_ 2008          CHARTER DAVIS, LLP
21
22                                _____
23                                WHITNEY A. DAVIS
24
25
26
27
28

NOICE OF HEARING ON BEHALF OF RENWOOD WINERY INC.
FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
(3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

<u>AFFIDAVIT OF ROBERT I. SMERLING</u>

I, ROBERT I. SMERLING, do hereby declare:

1.    That I am a person above the age of 18 years.  I have personal knowledge of the facts and circumstances set forth below, and if called upon to do so could and would competently testify thereto.

2.    I am the founder of Renwood Winery, Inc ("Renwood").  I also act as Chairman of the Board and Chief Executive Officer of Renwood,

3.    On April 30, 2008, Renwood's Marketing Manager Danica Ratkovich brought a sales data reporting problem to my attention concerning our marketing partners, W.J. Deutsch & Sons ("WJD").  Ms. Ratkovich found case sales discrepancies and potential evidence of data manipulation by WJD which would cause them great financial benefit.

4.    WJD is the 4th largest wine marketing company in the U.S.A.  They represent Yellow Tail (America's largest wine brand) and Georges DeBoeuf (America's largest French wine brand) and that they have recorded annual sales of over $400 million as compared to Renwood's $9 million.

**The Services Agreement**:

5.    Renwood and WJD executed a wine sales and service agreement in March of 2006. (See *"Services Agreement"*, **Exhibit A** to *Evidentiary Exhibits*).

6.    The agreement requires Renwood to produce 16 wines organized in four tiers (Section V(A), at pp. 2-3), and requires WJD to exert its "best efforts" to market and sell those wines (Section VIII(A), at p. 8).

7.    The agreement also contained a sales performance standard that WJD had to meet monthly.  WJD guaranteed 15% growth over Renwood's prior year's sales on a monthly basis.  In other words, the sales requirement for October of 2007 was 15%

1    higher than the sales requirement for October, 2006, which was 15% higher than the

2    actual sales of October, 2005.

3  8.    The guarantee had to be met by tier for every month during the first five years of

4    the contract.  The monthly performance standards were pre-calculated monthly and

5    annually for a five-year period and were set forth a *Schedule C* to the *Services*

6    *Agreement*. (Section VIII(D), at pp. 9-10, and *Schedule C* appended to the contract.)

7    This means that if WJD did not sell 15% more wine in a given month than that same

8    month the year before, WJD was in breach and had to buy the wine itself to cure the

9    breach.  WJD was required to cure by purchase within 15 days of demand by

10    Renwood.  The *Services Agreement* did not limit when or how often Renwood could

11    call for a cure, but Renwood's practice was to make sure that WJD cured monthly, if

12    necessary.

13  9.    Additionally, WJD had to ensure that depletions of distributor inventory could

14    not fall below 80% of the sales performance standard.  (Section V(B)(i)(l), at p. 5)

15  10.   The Services Agreement required that Renwood pay WJD a marketing

16    contribution for its top selling wines. (Section VI, at p. 6 and *Schedule B* appended

17    to the contract).  WJD could only send a marketing contribution bill quarterly based

18    upon depletions from distributor inventory.  These allowances applied to 8 specific

19    wines: $5 per case on all Red Label wines except the Zinfandel and Syrah, which

20    were $11 per case.  The Old Vine Zinfandel and Fiddletown Zinfandel allowances

21    were $20 per case. WJD would provide Renwood with a DIVER report with their

22    quarterly marketing allowance invoice showing the depletions of these wines, then

23    they would demand their marketing allowance.

24  11.   The database from which DIVER draws its data is maintained by an independent

25    third party called BDN, which in turn, is provided *its* data by each licensed

26    distributor on a daily basis as each order is shipped.  This system is the standard for

27    the wine and alcohol industry and is used by federal and local authorities to monitor

28

and track sales for regulation purposes. DIVER is a software package that allows subscribers to collect and organize data into a form that is usable.

12.    The 16 Renwood wines or "sku's" that are covered by the *Services Agreement* are grouped by tiers in the *Services Agreement* (Section V at pp. 2-3) and in the Performance Standards set forth in *Schedule C*. WJD designed its DIVER reports to likewise reflect sales by product and by tier. Tier 1 contains Proprietary wines; Tier 2 consists of the "Amador County" wines; Tier 3 consists of "Red Label/Sierra Series" value wines; and Tier 4 contains dessert wines. Tiers 2 & 3 represent 85% of Renwood's annual domestic sales historically.

13.    WJD was required to fulfill its monthly and annual sales obligations pursuant to the figures set forth on *Schedule C*. (Section VIII(D)(i) and (ii)). One-hundred percent (100%) of any shortfall in Tiers 1&4 had to be cured only from those tiers. However, for flexibility purposes, only 85% of the shortfall from Tiers 2&3 had to be cured from those tiers. Because of market fluctuations and market timing, Renwood gave WJD some flexibility to make up the remaining shortfall from Tier 2 or Tier 3 (15%) from any other tier. I personally spent dozens of hours analyzing data to determine how much flexibility to allow WJD on Tiers 2&3, and engaged in protracted discussions with WJD on this very subject. This flexibility component to the guarantee came to be known as the "any tier" line item on the cure invoices Renwood would eventually send to WJD.

14.    As another accommodation to WJD, during the first three months of the relationship (the "Transition Period") the *Service Agreement* provided that WJD only had to meet 100% of the prior year's sales for April, May and June 2006. Therefore, the 15% increase would not be applied until July, 2006.

**The Transition Period**:

15.    The Renwood fiscal year runs from July 1 to June 30.  The Transition Period took place in April, May and June, 2006.  Fiscal Year 2007 commenced on July 1, 2006.  During the Transition Period, WJD experienced a $300,000 shortfall out of the $2.1 million sales standard.  The shortfall included a 1,100-case sale to Beverages & More that Renwood closed before the WJD agreement was signed.  WJD gave themselves credit for the sale they never made, but Renwood did not.  Sales data reporting from WJD was delayed at the outset, so it took months for Renwood to realize that WJD included the 1,100 cases in the sales data for the Transition period.  Renwood invoiced WJD for the 1,100 cases, but WJD has refused to pay it.

16.    I reviewed and approved Renwood's first cure notices sent after the Transition Period.  WJD created a conflict because it tried to borrow July 2006 sales to make up the $300,000 deficit from June in order to meet its cure obligations.  Renwood protested WJD's actions as it violated accounting principles.   By WJD borrowing sales from July 2006 to cure the Transition Period shortfall, WJD start fiscal year 2007 with a shortfall.

17.    WJD's President, Peter Deutsch, forbade Renwood personnel from discussing the terms of the Services Agreement with WJD sales personnel.

18.    The shortfall ballooned to $2.5 million by the end of November, 2007, merely seven months into the contract.  The WJD cure inventory grew dramatically.  Their decision to ship from the WJD cure inventory instead of from Renwood's inventory caused larger monthly shortfalls.

**Arbitration, Shipment and Payment Changes**:

19.    In the year before hiring WJD, Renwood shipped about 96,000 cases of wine and collected the proceeds directly from the distributors.  By the end of WJD's first year of service, in June of 2007, WJD had only sold about $3 million of the $8.217 million performance standard.

20.    As the first year progressed, WJD fell further and further behind the sales performance standards.  In the Fall of 2006, after just 6 months of sales WJD demanded that Renwood accept annual cure payments.  After I declined on Renwood's behalf, WJD started to disrupt shipment and payment procedures dramatically.

21.    Then, WJD filed for arbitration regarding the cure and sales guarantee in November, 2006, only 7 months into the agreement.  The arbitration was eventually cancelled after the parties entered into mediation. An interim operating agreement resulted from the mediation that gave WJD a reduced sales goal.  (See *Interim Agreement*, **Exhibit B** to the *Evidentiary Exhibits*)    Renwood later allowed that interim agreement to expire after Renwood realized that WJD could not even achieve the agreement's modified sales goals.

22.    Before WJD filed for arbitration, they paid Renwood regular invoices within 35 days generally.  Cure invoices were paid late.

23.    *After* filing for arbitration, however, WJD unilaterally declared that they could cure by merely "acknowledging" the cure amount in 15 days, and not pay for it. WJD would place an order for the cure goods 10 to 15 days thereafter, and then pay Renwood 35 days after their order is ***shipped***.  WJD also manipulated the shipping date by refusing to accept goods within the 15 day cure period.  This departure from the prior contractual arrangement moved Renwood's cash flow back between 50-60 days.    This action by WJD actually removed two months of income out of Renwood's annual sales, placing Renwood in jeopardy with lender covenants.

24.    If Renwood would have shipped the goods to a distributor instead of WJD, WJD would have had to pay Renwood for the same wine about 60 days earlier.

25.    WJD thus began to use the cure as a way to stretch-out payment terms another 60 days.  By then, WJD maintained, a huge "cure" inventory of Renwood wine, then filled distributor orders from WJD's inventory before ordering from Renwood's inventory.  A true and correct copy of my letter to WJD prohibiting this conduct is attached as **Exhibit M** to the Evidentiary Exhibits. This stymied cash flow to Renwood.  Despite Renwood's objection, and lengthy discussion through a year of mediation, WJD continued this cure practice until the interim agreement with reduced sales and cure figures was signed.  When Renwood rejected the interim agreement in February of 2008, WJD stopped even acknowledging the cure demands of Renwood, stated again that the cure was annual and not monthly, and started to sell-off its cure inventory in lieu of selling from Renwood's stock.     See true and correct copies of *Cure Demands*, **Exhibit N** to the *Evidentiary Exhibits*, and *Cure Analysis*, **Exhibit O** to the *Evidentiary Exhibits*.

26.    Attached to the *Evidentiary Exhibits* as **Exhibit C** is a true and correct copy of two spreadsheets I asked Danica Ratkovich to prepare showing a comparative shipment history as between Renwood's inventory and WJD' cure inventory.  The data for the spreadsheets were obtained from both Renwood's inventory database and WJD DIVER reports.

27.    When the comparative shipment trends of the two inventories are compared to contractual events between the companies, the timing of WJD's decisions regarding curing and payment track with changes in the WJD/Renwood relationship.

28.    For example, from July to January of 2007, WJD shipped 8,974 cases from its cure inventory as compared to about 28,000 cases from Renwood's inventory.

29.    In January, 2007, settlement talks failed and the parties were bound for litigation.  Shipment trends changed dramatically.  From February 2007 to the end of the fiscal

year in June, 2007, WJD shipped about 23,000 cases from its cure inventory, as compared to about 5,500 cases from Renwood's inventory.

30.    The parties abandoned arbitration in favor of mediation, which failed in February of 2008.  To date in Fiscal 2008, WJD has shipped about 44,000 cases from its cure inventory as compared to 12,680 cases from Renwood's inventory.

31.    Since WJD stopped acknowledging cures in 2008, the only money flowing to Renwood from distributor sales would be new case sales that WJD could not fill from its own cure inventory.  When WJD would run out of a specific wine that was ordered from a customer, it would then place an order from Renwood.  (See *Letter from WJD re Exhaustion of Grandpere*, **Exhibit D** to the *Evidentiary Exhibits*).

**WJD Falsifying Data**:

32.    WJD contracted to be the exclusive wholesaler for 16 Renwood wines.  In January, 2007, Renwood created seven new wines to solve distinct problems created by WJD poor marketing:  four wines designed for restaurants ("Tahoe Series"), and three wines made exclusively for beverage retailer Beverages & More ("BevMo Private Label").  At the annual marketing meeting in January 2007 held at Renwood's corporate offices in Sacramento, I personally offered WJD's President Jim Mello the opportunity to include those seven new wines in the Services Agreement as Contracted Products.  He abruptly declined.  Renwood was left to market those wines on their own, which meant that the wines would ***not*** be included in the Services Agreement and would not be counted toward WJD sales performance standards, marketing allowances or depletion requirements. Payment and collection of these wines would be Renwood's responsibility.

33.    This meeting took place at the same time both parties were preparing for arbitration; when WJD had an enormous cure inventory that it owned; and at a time

1   when WJD was not selling enough of the wines it had already contracted with
2   Renwood to sell.

3   34.    Left to sell the seven wines its own, on behalf of Renwood I decided to use
4   Southern Wine & Spirits as the direct distributor as they were already calling on
5   BevMo for WJD on the 16 contracted Renwood wines.

6   35.    Southern agreed to purchase the 3 BevMo wines directly from Renwood Winery.
7   This meant that all sales and marketing data, bills, and revenue would be sent to
8   Renwood directly without WJD involvement.  This procedure worked until WJD
9   intervened to divert the Private Label orders to WJD, and redirect the sales and
10  depletion data through DIVER.

11  36.    BevMo runs a promotion called the "Nickel Sale" for the months of March and
12  October every year.  The promotional terms provide that if the customer buys the
13  first bottle at full price, they can buy the second bottle for an additional 5 cents.

14  37.    Renwood has been a top-seller in the Nickel Sale historically.  It was again
15  invited in October 2007 to offer three wines in the Nickel Sale, more than the entire
16  WJD portfolio combined.

17  38.    For the October 2007 Nickel Sale, Renwood's Private Label was available.
18  Southern placed orders directly to Renwood for the three Private Label wines to be
19  shipped to BevMo for the October Nickel Sale.  Even though WJD was not
20  contractually entitled to handle the BevMo sale of Private Label wines due to the
21  rejection of those wines months before, I was asked by Roy Danis, National Sales
22  Manager for WJD, for a reduced 10% commission to handle the three Private Label
23  wines.  As a gesture of good faith to assist in the pending mediation between WJD
24  and Renwood, I reached a side agreement with Mr. Danis with confirming
25  correspondence. The deal would cover only the Fall 2007 and Spring 2008 Nickel
26  Sales, and expressly provided that the Private Label sales would not be counted
27  toward the WJD sales performance standard, nor would a marketing allowance be
28

paid.  True and correct copies of the *Renwood Side Agreement Letter*, and *BevMo Confirming e-mails* are attached as **Exhibit E** to the *Evidentiary Exhibits*)

39.    WJD accepted the terms through Roy Danis.  The Nickel Sale in October 2007 was a great success with the Private Label wines.

40.    After the October, 2007 Nickel Sale, I received DIVER reports from WJD that showed all Renwood sales and depletions from the wines contracted under the Services Agreement, but with a separate break-out for the "side deal" Private Label sales and depletions for BevMo's Nickel Sale.

41.    In contrast, after the March 2008 Nickel Sale, I noticed that DIVER failed to report the three Private Label wines sales.  I ask Danica Ratkovich to contact Southern, and they provided me with the Private Label data.

42.    Then, on April 25, 2008, the WJD DIVER depletion report was sent to Renwood attached to the WJD First Quarter Marketing Contribution demand.  The DIVER report did not contain categories for the Private Label wines.  What I *did* notice was a dramatic increase in sales on Red Label Zin, Red Label Syrah and Old Vine.  (See *March 2008 Marketing Allowance Invoice*, **Exhibit F** to the *Evidentiary Exhibits*).

43.    WJD receives a marketing contribution from Renwood for depletions of Red Label Syrah at $11 per case; Red Label Zinfandel at $11 per case, and Renwood Old Vine Zinfandel at $20 per case.  Since WJD cannot charge a marketing allowance for the Private Label wines sold to BevMo, it is proper that no Private Label wines appeared on the WJD report sent to Renwood with the invoice for the marketing allowance.

44.    On April 30, 2008, I sent an e-mail to WJD's Brand Manager for Renwood, Francois Magnant.  I asked Francois to explain the uncharacteristic increase in depletions on the Red Label wines.  (See *BevMo Fraud e-mail string re: Francois*, **Exhibit G** to the *Evidentiary Exhibits*).  Francois' response was as follows:

    *"Robert,*

*knowing that Renwood is a high priority brand in the WJD portfolio and that WJD's Fiscal Year ends in March, SWS CA made an all-out effort to maximize sales for the month of March. BevMo has historically been a supporter of Renwood and SWS executed on maximizing sales at BevMo on Red Label tier and Old Vine Zin.*

*Best,*
*François*

*François Magnant*
*Brand Manager, Renwood, [YellowTail] Reserve & Sparkling*
*W. J. Deutsch & Sons, ltd.*

*Office: 914-251-3292"*

45.    The "SWS" to which Francois referred I understand to be Southern Wine & Spirits, the distributor that services the BevMo account for both WJD and Renwood. I understood Francois' response to confirm that the large increase in depletions were attributable to the Red Label and Old Vine products being sold in volume at the end of WJD's fiscal year, which I knew to be around March 31, 2007.

46.    Because the sudden increase in depletions took place at the same time of the March 2008 Nickel Sale, and because the Private Label wines no longer appeared on WJD's DIVER report in a separate category, I sought independent corroboration of WJD's story about the Red Label increases.

47.    To do so, I asked Danica Ratkovich to obtain and cross-reference the "Accounts Sold" report from WJD to Renwood that shows what WJD sold to BevMo in 2008 (Attached as **Exhibit H** to the *Evidentiary Exhibits*); with the "Accounts Sold" report that was reported by distributor SWS as being sold to BevMo for the same period (Attached as **Exhibit I** to the *Evidentiary Exhibits*). The WJD report did not show a category for Private Label. The SWS report did.

48.    Ms. Ratkovich provided me with a data worksheet she created (Attached as **Exhibit J** to the *Evidentiary Exhibits*). As the worksheet reflects, SWS sold 1842.8 cases of Renwood wines to BevMo for the first three months of 2008, including the

Private Label wines. Of that total, WJD reported depletion of 689 cases of Red label Syrah. However, for the same 689 cases sold to BevMo, SWS reported depletion of 16 cases of Red Label Syrah, and depletion of 673 Private Label Petite Sirah. On the Zinfandel sku, WJD reported Red Label Zin depletions at 754 cases. However, for the same 754 cases sold to BevMo, SWS reported depletions of 745 cases of Private Label Lodi Zinfandel and only 9 cases of the Red Label Zin. On another sku, WJD reported Old Vine Zinfandel depletions at 333 cases. However, SWS reported depletion of 308 cases of Private Label OFV Zinfandel and only 25 cases of Old Vine.

49.    Both the WJD DIVER report to Renwood, and the WJD demand for the first quarter marketing contribution shows that WJD combined the Red Label Syrah sales with the Private Label Petite Sirah sales and called them all Red Label Syrah sales. WJD also did so for Private Label Lodi Zinfandel and the Red Label Zinfandel wines. WJD likewise did so for Private Label OFV Zinfandel and the Old Vine Zinfandel wines.

50.    I concluded the following from this data:

- As of March 31, 2008, SWS reported to BDN the depletion of 50 cases of Red Label wines and 1,386 cases of Private Label wines to BevMo;

- WJD pulled that depletion data from the BDN database using DIVER;

- WJD manipulated its DIVER report to exclude the Private Label category and combined the Red Label and Private Label case depletion volume under only the Red Label sku's;

- On April 25, 2008, WJD sent its Quarterly Marketing Contribution invoice to Renwood including the manipulated DIVER data, demanding marketing allowances for Private Label wines for which they knew they

could receive no marketing contribution (See *WJD Marketing Allowance Invoice*, **Exhibit F** to the *Evidentiary Exhibits*);

- On May 1, 2008, WJD employee Francois Magnant (Renwood's Brand Manager) was not truthful when providing his e-mail response about the facts behind the spike in Red Label sales to BevMo; (See *BevMo Fraud e-mail string re: Francois*, **Exhibit G** to the *Evidentiary Exhibits*).

- Later on May 1, 2008, when I pressed Francois about the issue, he again sent the manipulated DIVER data to me without further explanation about the Red Label sales spike; (See *BevMo Fraud e-mail string re: Francois*, **Exhibit G** to the *Evidentiary Exhibits*).

- On May 2, 2008, I sent correspondence to WJD owners Peter and William Deutsch concerning the manipulated data and demanding an explanation. (See *BevMo Fraud e-mail string re: Francois*, **Exhibit G** to the *Evidentiary Exhibits*).

- On May 5, 2008, Peter Deutsch sent correspondence to me which I took to tacitly admit that WJD unilaterally decided to count the Private Label cases for performance purposes, but it was silent on the issue of counting those cases for purposes of the marketing contribution. (See *BevMo Fraud e-mail string re: Francois*, **Exhibit G** to the *Evidentiary Exhibits*).

- The difference between the marketing contribution demanded by WJD, and that which would be due had WJD not manipulated DIVER is $22,000.

- By counting those cases for depletion credit against the 80% depletion standard in the Services Agreement, I estimate that WJD took depletion credits from Renwood in excess of $140,000.

- By counting those cases for sales credit against the Sales Performance Standard, I estimate that WJD took sales credit from Renwood of in excess of $140,000.

- Through my recent review of the same paperwork for the prior quarter, consisting of October, November and December 2007, I discovered that WJD engaged in the same manipulation and fraud. I estimate that WJD took more than $2,000 of marketing allowance for Private Label sales not due to them. (See *Fourth Quarter (OND) Marketing Contribution Claim Analysis*, **Exhibit K** to the *Evidentiary Exhibits*).

- At no point before the signing of this declaration has Renwood received an amended Marketing Contribution demand from WJD.

**The Diverted BevMo Order**:

51.   Since the Private Label wines fell outside the *Services Agreement*, WJD could not stock their warehouse or those of its distributors with the wines. Only Renwood kept the Private Label wines. BevMo ordered the Private Label wines for sale only during the Nickel Sale.

52.   SWS acted as the distributor for Renwood on the Private Label wines for the Nickel Sales in October of 2007 and March of 2008. Renwood also offered a reduced 10% commission to WJD via a side deal for marketing support.

53.    To ensure prompt payment, order accuracy and appropriate customer service to BevMo, Renwood demanded that Private Label wines be ordered by SWS directly from Renwood, instead of through WJD. This protocol was followed by all concerned during the October 2007 Nickel Sale.

54.    However, weeks after the March 2007 Nickel Sale had ended, SWS faxed an order dated 4/30/2008 to WJD for 270 cases of Private Label wines worth about $60,000. (See *April 30, 2008 BevMo Invoice*, **Exhibit L** to the *Evidentiary Exhibits*). The order was diverted at WJD's request in order to set-up future claims for commission, depletion credits, and sales performance standard credits and continue to control Renwood's cash flow which was seriously hurt when WJD ceased cure payments in January. I know this because the SWS representative responsible for sending the order to WJD, Steve Colburn, admitted to me that a WJD Western Sales Representative had specifically requested that he do so.

**The Irreparable Harm to Renwood**:

*Diverted Invoices*:

55.    WJD has not paid Renwood for months, and is instead deducting amounts due to Renwood from fraudulent marketing contribution claims.

56.    WJD is selling just enough wine from Renwood inventory to allow itself to offset its marketing contribution claims against the dollars it owes Renwood for the few sales it makes. All other sales are made from WJD cure inventory, allowing WJD to receive that sales revenue, and not Renwood. At the same time, WJD is not acknowledging Renwood cure demands, and is therefore not paying Renwood any money, and not re-stocking the WJD cure inventory that it is depleting.

57.    If the diversion of BevMo orders by WJD is permitted to continue, WJD will collect the sales revenues from those sales and retain it for offset against whatever money it contends Renwood owes it for marketing contributions or commissions.

58.   WJD has no contractual right to collect the sales revenue from BevMo sales of Private Label wines.

59.   By WJD cutting off sales revenue from contracted wines, the further theft, delay or diversion of non-contracted BevMo orders and revenues will eliminate enough revenue to prevent Renwood from funding its harvest of grapes for the next vintage. The grapes of an entire vintage will be ruined. Renwood's wines cannot be made with grapes from other vineyards, nor could Renwood buy grapes to replace them as the unique Grandpere and estate grapes, blended into many of the other Renwood wines, can only be grown at Renwood. Renwood owns the only recognized Grandpere zinfandel vineyard in the world.

*Sales Inventory Priority*:

60.   WJD is selling out its enormous cure inventory before selling from Renwood inventory, and at the same time, WJD has not cured contract breaches of the sales performance standard for many months. WJD is past due on cure invoices totaling approximately $2.5 million.

61.   Renwood has a security interest in that cure inventory.

62.   The sale of wine from the WJD cure inventory before satisfying monthly sales requirements or cure demands constitutes an unfair business practice, in that WJD has used the cure to delay payment and breach the contract.

63.   WJD is well aware of Renwood's lender covenants. WJD's decision to cut-off Renwood's cash flow will cause effective June, 2008 a breach of lender covenants and a default on all vineyard loans. All credit has been essentially exhausted. What this means is that, absent court intervention to stop these unfair business practices, Renwood will not be able to fund its harvest.

64.   Even if Renwood could harvest its own grapes, the grapes cannot be crushed and placed into bottles. Renwood cannot purchase the bottles. Even *if* the grapes could be crushed, Renwood's tanks are full to capacity until the wine is bottled. Further, a full tank farm would mean that Renwood cannot fulfill grape contracts with its

suppliers. The grapes cannot be purchased, and even if they could, they cannot be crushed due to the full tanks. If Renwood does not fulfill those grape contracts, it will lose those contracts for the foreseeable future.

65. By removing a vintage, Renwood will have no inventory to sell. By preventing the purchase of bottles, Renwood will have no place to put the wine for future sales, even if it could find a way to harvest the grapes.

66. The irreparable injury to Renwood that is being caused by WJD's inventory sales scheme is the loss of a vintage, the loss of long-term grape contracts, and the end of the Renwood brand.

I declare under penalty of perjury in accordance with the laws of the State of California that the foregoing is true and correct. Executed this 4th day of June, 2008, at Sacramento, California.

_____

ROBERT I. SMERLING

## AFFIDAVIT OF MICHAEL ADAIR

I, Michael Adair, do hereby declare:

1.  That I am a person above the age of 18 years.  I have personal knowledge of the facts and circumstances set forth below, and if called upon to do so could and would competently testify thereto.

2.  I was hired by W.J. Deutsch in approximately February, 2004.  I was employed by that company as the Northern California Chain Representative from the date of hire until March 21, 2008.   My territory included chain customers in Northern California and Hawaii.  I gave notice of resignation a few days before March 21, 2008, but W.J. Deutsch elected the separation date before the traditional two weeks had expired.  I have fifteen (15) years of experience in selling wine and spirits, which provides some of the basis for the facts set forth below.  When I left W.J. Deutsch, I directly reported to Susan Hwang, Regional Manager for Northern California and Hawaii.  Ms. Hwang reported directly to Al Della Corna, Western Vice-President.  When I was first hired by W. J. Deutsch, I reported to Scott Evans and Pat McNamara.

**Wine Sales Channels**:

3.  Wine sales historically take place in either a three (3) or four (4) level system.

4.  In a three level system, a wine supplier or winery (Level 1) will sell its wine pursuant to contract with a distributor or group of distributors (Level 2) who re-sell the wine to retailers (level 3).  In the three-level system, a supplier often supplements the sales effort by employing in-house sales representatives to make sales calls with distributors, develop special marketing or promotional programs, organize sales events or winery tours, and track/encourage distributor sales performance.   The suppliers also traditionally provide their distributors a marketing allowance to permit intermittent promotional pricing, fund marketing

materials and displays, and compensate for transportation differences depending on the distance from the warehouse.

5. In a four- level system, a supplier will "outsource" most of the in-house sales function to a importer, importer or sales organization. The importer effectively manages the wine brand from the sales perspective. The importer hires the distributors of its choice. The sales commission and marketing allowances are paid to the importer by the supplier. The supplier supplements the sales effort to a lesser degree than in the three-level system with fewer in-house sales resources. The importer often handles several brands at once and has a large sales team devoted to selling all of the brands. This volume and brand control provides the importer more leverage with distributors and retailers. Importantly, the importer often controls enormous financial leverage and resources by collecting marketing allowances from the several suppliers it represents.

6. W.J. Deutsch is an importer.

7. Renwood Winery is a supplier that used to work under the three-level model. In the Spring of 2006, Renwood hired W.J. Deutsch as its importer, and thereby moved into a four-level format.

8. Wine sales are generally categorized by the location where the wine is consumed. "On-Premise" sales are those made to restaurants and bars, and are deemed "on-premise" because the final consumer drinks the wine where it is purchased (i.e. the restaurant or bar). "Off-premise" sales concern wine purchases where consumption is contemplated to take place at the customer's home. In California, the majority of off-premise sales occur at supermarket chains, beverage specialty chains such as Beverages & More, of at club stores such as Costco. The sales techniques, marketing strategies brand positioning and economics are very different depending on whether the sales target is an "on-premise" or off-premise" account.

///

**<u>Sales Performance</u>**:

9.  Wineries enter into agreements with importers or distributors to market the wines. Those agreements generally contain sales performance requirements. The importers that, in turn, hire distributors to market the wine in a four-level system likewise generally have sales performance standards built into their agreements with the distributors.

10. As a wine and spirits sales representative, my sales performance and compensation has always been measured against a sales performance goal or requirement. The same was true when I worked at W.J. Deutsch.

11. Sales performance requirements at every level in the distribution channel are the main source of career-sensitive reward or punishment.

12. The same is generally true for wineries, whose sales performance is tracked and ranked through AC Nielsen for general depletion data.

13. An important distinction in the wine sales lexicon is the term "depletion," which is the sale of wine to a merchant that sells the wine to the consumer.

14. Distributor depletions are tracked nationally through a reporting system. Depletion data is collected by an organization known as BDN. Importers and distributors tap into this database through third-party data-sifting computer applications. The application was used by W.J. Deutsch to compile and translate the data from the database is known as "Diver," which permits the user to customize reports for their own purposes.

15. While at W. J. Deutsch, I became intimately familiar with the Diver reports, as I would be provided those reports regularly to track depletions by the distributors through whom I sold wine brands. Those reports would also be used as the measure of my performance.

///

///

///

**Renwood and the BevMo Transactions**:

16.   W.J. Deutsch was the importer for Renwood wine products commencing in the Spring of 2006.  I was responsible for selling Renwood wine products or "sku's" to chain enterprises in my territory, and my performance bonus depended on how much Renwood wine I could sell.

17.   Soon after Renwood hired W.J. Deutsch, I worked for several months to arrange for Renwood to participate in BevMo's "nickel sale."   The sale was to run for a few weeks in March, 2007, and was popular with customers because they could buy the second bottle of wine for a nickel if the first bottle was purchased at full price.  It was popular with distributors as it depleted a large volume of wine (3,500 cases) in a few weeks and served as a great promotion for the brand.  It was popular with me as a sales representative for the same reasons.  Everyone's sales performance numbers could be greatly enhanced with even one successful nickel sale.

18.  I arranged for Renwood sku's known as "Fiddletown," "Jackrabbit Flat," and "Syrah Rose" to be the sku's for the Spring, 2007 nickel sale.  I was able to strike a deal with Renwood's Robert Smerling to provide special terms to W.J. Deutsch and BevMo to have these wines participate in the sale.  Another nickel sale takes place in October of every year.

19. Conflict with Renwood quickly arose because the deep discounting left little or nothing for the supplier after commissions and marketing allowances.  I do not know how or if that conflict was resolved, but the promotion took place and it was a success.

20.   By October of 2007, Renwood had created three new sku's just for BevMo's nickel sale, which they called "Private Label."   Since the nickel sale cut so deeply on the wine prices, a special deal was reached between W.J. Deutsch and Renwood which impacted commissions.  The nickel sale in October 2007 was a

great success with the private label wines, but controversy arose in the sales ranks at W.J. Deutsch because the nickel sale depletions did not appear on W.J. Deutsch's Diver reports. This meant to me that the salespeople might not receive credit against our annual goals for the large volume sale to BevMo. W.J. Deutsch never told me beforehand that Renwood's Private Label wines were never part of the contract with Renwood. By November of 2007, I was reassured by Al Della Corna that W.J. Deutsch would give the sales team credit for the BevMo nickel sales.

21. We as a sales force was not permitted to speak to Renwood employees directly about the sales performance count, or any other issue for that matter. If we had a promotional deal or marketing related questions for Renwood, we would need to clear it through a controlled hierarchy of our direct reports, then through the brand manager or others at the W.J. Deutsch headquarters in New York. This communication protocol made it extremely difficult and time consuming to get anything done, and sometimes stood as an obstacle to selling the Renwood wines. If time-sensitive issues arose, we often could not respond in time due to the communication hierarchy.

22. In January of 2008, I received depletion reports from W.J. Deutsch that showed all Renwood sales from the contracted sku's, with a separate break-out for the private label sales to BevMo.

23. During that month, we received word at a W.J. Deutsch sales meeting that the company was cutting funding for temporary price reduction programs, promotional travel and entertainment with accounts, events and samples. That announcement by W.J. Deutsch also included the message that W.J. Deutsch was changing its sales strategy to profitability rather than volume sales at a lower margin.

24. The March, 2008 nickel sale was approaching by this time, and was taking place as I was preparing to resign from W.J. Deutsch. Renwood's Private Label wines

were again going to participate. I recall checking Southern Wine & Spirit's ("SWS's") Diver report on March 14, 2008. SWS showed no inventory of Renwood's Private Label on that date, which meant to me that all Private Label wine had been sold to BevMo.

25. On April 1, 2008, I was hired as the chain sales manager for Santino Wines, which is owned by Renwood.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 2nd day of June, 2008, at Sacramento, California.

_____

MICHAEL ADAIR

## AFFIDAVIT OF DANICA RATKOVICH

I, DANICA RATKOVICH, do hereby declare:

1.      That I am a person above the age of 18 years. I have personal knowledge of the facts and circumstances set forth below, and if called upon to do so could and would competently testify thereto.

2.      I was hired by Renwood Winery, Inc ("Renwood") in approximately February of 2005. I have been employed by Renwood continuously since that time, and currently hold the position of Marketing Manager. I have seven years of experience in wine marketing and restaurant management. My experience includes: tracking sales performance of our wholesaler W.J. Deutsch & Sons, Ltd. ("WJD") and the WJD distributor network; fulfilling wine orders; computing and approving promotional/ marketing allowances; and tracking winery performance. Through a license agreement provided by WJD, we use software named DIVER, which is a proprietary tracking system for sales and depletion information. It is the leading software tracking system in the wine industry. Using DIVER reports and other data, I supervise the preparing and billing for wine sales, and perform financial analysis of all sales, depletion, marketing expenses, and invoicing on a weekly and monthly basis. I report directly to Robert Smerling, Chairman and Chief Executive Officer of Renwood Winery, Inc. Renwood Winery, Inc. is a subsidiary of Renwood Group.

3.      I was informed by WJD that they were the 4th largest wine marketing company in the U.S.A. They represent YellowTail (America's largest wine brand); Georges DeBoeuf (America's largest French wine brand) and they have recorded sales of over $450 million as compared to Renwood's $8 million.

4.      I recently brought to Mr. Smerling's attention a reporting problem with WJD regarding our sales data. It was quite apparent to me that the discrepancies I found were the result of data manipulation by WJD which would cause them

-1-

great financial benefit.  After careful research and review, I determined that it was impossible for this problem to have been a mere error on WJD's part, and brought this problem immediately to Mr. Smerling's attention.

**The Services Agreement**:

5.      Renwood and WJD executed a wine sales and service agreement in March of 2006. (See "*Services Agreement*", **Exhibit A** to *Evidentiary Exhibits*). I worked closely with Mr. Smerling and other members of senior management on providing data helpful to creating the *Services Agreement.*

6.      I understand the agreement to require Renwood to produce 16 wines organized in four tiers (Section V(A), at pp. 2-3), and to require WJD to exert its "best efforts" to market and sell those wines (Section VIII(A), at p. 8).

7.      The agreement also contained a sales performance standard that WJD had to meet monthly.  WJD guaranteed 15% growth over Renwood's prior year's sales on a monthly basis.  The guarantee had to be met by product and by tier for every month during the first five years of the contract.  The monthly performance standards were pre-calculated monthly and annually for a five-year period and were set forth a *Schedule C* to the *Services Agreement.* (Section VIII(D), at pp. 9-10, and *Schedule C* appended to the contract.) This means that if WJD did not sell 15% more wine in a given month than that same month the year before, WJD was in breach and had to buy the wine itself to cure the breach.  WJD was required to cure within 15 days of demand by Renwood.  The *Services Agreement* did not limit or define the interval at which Renwood could call for a cure, but Renwood's practice was to send cure demands monthly, if necessary.

8.      Additionally, WJD had to ensure that depletions of distributor inventory could not fall below 80% of the sales performance standard.  (Section V(B)(i)(l), at p. 5)

9.      I understood the Services Agreement to require that Renwood pay WJD a marketing contribution for some of the wine sku's. (Section VI, at p. 6 and *Schedule B* appended to the contract).   WJD could only send a marketing contribution bill quarterly based upon depletions from distributor inventory. These allowances applied to 8 specific wines: $5 per case on all Red Label wines except the Zinfandel and Syrah, which were $11.  The Old Vine and Fiddletown allowances were $20 per case. WJD would provide Renwood with a DIVER report with their quarterly marketing allowance invoice showing the depletions of these wines.

10.     The database from which DIVER draws its data is maintained by an independent third party called BDN, which in turn, is provided *its* data by each licensed distributor on a monthly basis. This system is the standard for the wine and alcohol industry and is used by federal and local authorities to monitor and track sales for regulation purposes.   DIVER is a software package that allows subscribers to collect and organize data into a form that is usable.

11.     The 16 Renwood wines or "sku's" that are covered by the *Services Agreement* are grouped by tiers in the *Services Agreement* (Section V at pp. 2-3) and in the Performance Standards set forth in *Schedule C*.  WJD designed its DIVER reports to likewise reflect sales by product and by tier.  Tier 1 contains Proprietary wines; Tier 2 consists of the "Amador County" wines; Tier 3 consists of "Red Label/Sierra Series" value wines; and Tier 4 contains dessert wines. Tiers 2 & 3 represent 85% of Renwood's annual domestic sales historically.

12.     WJD was required to fulfill its monthly and annual sales obligations pursuant to the figures set forth on *Schedule C*. (Section VIII(D)(i) and (ii)). One-hundred percent (100%) of any shortfall in Tiers 1&4 had to be cured only from those tiers.  However, for flexibility purposes, only 85% of the shortfall from Tiers 2&3 had to be cured from those tiers. Because of market fluctuations and market timing, Renwood gave WJD some flexibility to make up the

remaining shortfall from Tier 2 or Tier 3 (15%) from any other tier. I know this because during contract negotiations with WJD, I was required to perform the analysis and obtain the data by which Renwood could determine how much flexibility to give WJD. This flexibility component to the guarantee came to be known as the "any tier" line item on the cure invoices Renwood would eventually send to WJD.

13.     As another accommodation to WJD, during the first three months of the relationship (the "Transition Period") the *Service Agreement* provided that WJD only had to meet 100% of the prior year's sales for April, May and June 2006. Therefore, the 15% increase would not be applied until July, 2006.

**The Transition Period**:

14.     The Renwood fiscal year runs from July 1 to June 30. The Transition Period took place in April, May and June, 2006. Fiscal Year 2007 commenced on July 1, 2006. During the Transition Period, WJD experienced a $300,000 shortfall out of the $2.1 million sales standard. The shortfall included a 1,100-case sale to Beverages & More that Renwood closed before the WJD agreement was signed. WJD gave themselves credit for the sale they never made, but Renwood did not. Sales data reporting from WJD was delayed at the outset, so it took months for Renwood to realize that WJD included the 1,100 cases in the sales data for the Transition period. Renwood invoiced WJD for the 1,100 cases, but WJD has refused to pay it.

15.     I collected the data and helped prepare Renwood's first cure notices after the Transition Period. WJD created a conflict because it tried to borrow July 2006 sales to make up the $300,000 deficit from June in order to meet its cure obligations. Renwood protested WJD's actions as it violated accounting

principles.    By WJD borrowing sales from July 2006 to cure the Transition Period shortfall, WJD start fiscal year 2007 with a shortfall.

16.    I am informed and believe that WJD's President, Peter Deutsch, forbade Renwood personnel from discussing the terms of the sales guarantee with WJD sales personnel.  So, when I called the order department at WJD to inquire about their payment to cure the sales shortfalls, they had no idea what a "cure" was, or how they were supposed to resolve the cure.

17.    The shortfall ballooned to $2.5 million by the end of November, 2007, merely seven months into the contract.    The WJD cure inventory grew dramatically.   Their decision to ship from the WJD cure inventory instead of from Renwood's inventory caused larger monthly shortfalls.

**Arbitration, Shipment and Payment Changes**:

1.    In the year before hiring WJD, Renwood shipped about 96,000 cases of wine and collected the proceeds directly from the distributors.  By the end of WJD's first year of service, in June of 2007, WJD had only sold about $3 million of the $8.217 million performance standard.

2.    As the year progressed, WJD fell further and further behind the sales performance standards.   In the Fall of 2006, WJD demanded that Renwood reduce the 15% sales guarantee.  Renwood declined, so WJD started to disrupt the shipment and payment procedures dramatically.

3.    WJD filed for arbitration regarding the cure and sales guarantee in November, 2006, only 7 months into the agreement.    The arbitration was eventually cancelled after the parties entered into mediation, then an interim operating agreement.  (See *Interim Agreement*, **Exhibit B** to the *Evidentiary Exhibits*)   That interim agreement was later rejected by Renwood after Renwood

1   realized that WJD would not even comply with the agreement's modified sales

2   goals.

3   4.      Before WJD filed for arbitration, they paid Renwood regular invoices

4   within 35 days generally. Cure invoices were paid on-time.

5   5.      *After* filing for arbitration, however, WJD unilaterally declared that they

6   could cure by merely "acknowledging" the cure amount in 15 days, and not pay

7   for it. WJD would place an order for the cure goods 10 to 15 days thereafter, and

8   then pay Renwood 35 days after their order is ***shipped***. WJD also manipulated

9   the shipping date by refusing to accept goods within the 15 day cure period. This

10  departure from the prior contractual arrangement moved Renwood's cash flow

11  back between 50-60 days.   This action by WJD actually removed two months of

12  income out of Renwood's annual sales, placing Renwood in jeopardy with lender

13  covenants.

14  6.      If WJD would have sold the goods to a distributor instead of buying the

15  goods from Renwood for cure purposes, WJD would have had to pay Renwood

16  for the same wine 60 days earlier.

17  7.      WJD thus began to use the cure as a way to stretch-out payment terms

18  another 60 days. WJD amassed, then maintained, a huge "cure" inventory of

19  Renwood wine, then filled distributor orders from WJD's inventory before

20  ordering from Renwood's inventory.  This stymied cash flow to Renwood.

21  Despite Renwood's objection, and lengthy discussion through a year of

22  mediation, WJD continued this cure practice until the interim agreement with

23  reduced sales and cure figures was signed. When Renwood rejected the interim

24  agreement in February of 2008, WJD stopped even acknowledging the cure

25  demands of Renwood, stated again that the cure was annual and not monthly, and

26  started to sell-off its cure inventory in lieu of selling from Renwood's stock.

27  8.      Attached to the *Evidentiary Exhibits* as **Exhibit C** is a true and correct

28  copy of two spreadsheets I prepared showing a comparative shipment history as

1    between Renwood's inventory and WJD' cure inventory. The data for the

2    spreadsheets were obtained from both Renwood's inventory database and WJD

3    DIVER reports.

4    9.    When the comparative shipment trends of the two inventories are

5    compared to contractual events between the companies, the timing of WJD's

6    decisions regarding curing and payment track with changes in the WJD/Renwood

7    relationship.

8    10.    For example, from July to January of 2007, WJD shipped 8,974 cases from

9    its cure inventory as compared to about 28,000 cases from Renwood's inventory.

10    11.    In January, 2007, settlement talks failed and the parties were bound for

11    litigation. Shipment trends changed dramatically. From February 2007 to the

12    end of the fiscal year in June, 2007, WJD shipped about 23,000 cases from its

13    cure inventory, as compared to about 5,500 cases from Renwood's inventory.

14    12.    The parties abandoned arbitration in favor of mediation, which failed in

15    February of 2008. To date in Fiscal 2008, WJD has shipped about 44,000 cases

16    from its cure inventory as compared to 12,680 cases from Renwood's inventory.

17    13.    Since WJD stopped acknowledging cures in 2008, the only money flowing

18    to Renwood from distributor sales would be new case sales that WJD decided not

19    to fill from its own cure inventory. When WJD would run out of a specific wine

20    that was ordered from a customer, it would then place an order from Renwood.

21    (See *Letter from WJD re Exhaustion of Grandpere*, **Exhibit D** to the *Evidentiary*

22    *Exhibits*).

23

24    **WJD Falsifying Data**:

25

26    14.    WJD contracted to be the exclusive wholesaler for 16 Renwood wines. In

27    January, 2007, Renwood created seven new wines: four wines designed for

28    restaurants ("Tahoe Series"), and three wines made exclusively for beverage

retailer Beverages & More ("BevMo Private Label").  At the annual marketing meeting in January 2007 held at Renwood's corporate offices in Sacramento, I heard WJD President Jim Mello reject Renwood's offer to include those seven new wines in the Services Agreement as Contracted Products.  Renwood was left to market those wines on their own, which meant that the wines would not be included in the Services Agreement and would not be counted toward WJD sales performance standards.

15.     This meeting took place at the same time both parties were preparing for arbitration; when WJD had an enormous cure inventory that it owned; and at a time when WJD was not selling enough of the wines it had already contracted with Renwood to sell.

16.     Left to sell the seven wines its own, Renwood decided to use Southern Wine & Spirits as the direct distributor as they were already calling on BevMo for WJD on the 16 contracted Renwood wines.

17.     Southern agreed to purchase the 3 BevMo wines directly from Renwood Winery.  This meant that all sales and marketing data, bills, and revenue would be sent to Renwood directly without WJD involvement.  This procedure worked until WJD intervened to divert the Private Label orders to WJD, and redirect the sales and depletion data through DIVER.

18.     BevMo runs a promotion called the "Nickel Sale" for the months of March and October every year.  The promotional terms provide that if the customer buys the first bottle at full price, they can buy the second bottle for an additional 5 cents.

19.     Renwood has been a top-seller in the Nickel Sale historically.  It was again invited in October 2007 to offer three wines in the Nickel Sale, more than the entire WJD portfolio combined.

20.     For the October 2007 Nickel Sale, Renwood's Private Label was available.  Orders were placed by Southern for the three Private Label Renwood wines to be

shipped exclusively to BevMo for the October Nickel Sale. Even though WJD was not contractually entitled to handle the BevMo sale of Private Label wines due to the rejection of those wines months before, Renwood was asked by Roy Danis, National Sales Manager for WJD, for a reduced 10% commission to handle the three Private Label wines. As a gesture of good faith to assist in the pending mediation between WJD and Renwood, a side agreement was reached with confirming correspondence. The deal would cover only the Fall 2007 and Spring 2008 Nickel Sales, and expressly provided that the Private Label sales would not be counted toward the WJD sales performance standard, nor would a marketing allowance be paid. (See *Renwood Side Agreement Letter*, and *BevMo Confirming e-mails* attached as **Exhibit E** to the *Evidentiary Exhibits*)

21.      WJD accepted the terms through Roy Danis. The Nickel Sale in October 2007 was a great success with the Private Label wines.

22.      After the October, 2007 Nickel Sale, I received DIVER reports from WJD that showed all Renwood sales and depletions from the wines contracted under the Services Agreement, but with a separate break-out for the "side deal" Private Label sales and depletions for BevMo's Nickel Sale.

23.      In contrast, after the March 2008 Nickel Sale, I noticed that DIVER failed to report the three Private Label wines sales. I contacted Southern, and they provided me with the Private Label data.

24.      Then, on April 25, 2008, the WJD DIVER depletion report was sent to Renwood attached to the WJD First Quarter Marketing Contribution demand. The DIVER report did not contain categories for the Private Label wines. What I *did* notice was a dramatic increase in sales on Red Label Zin, Red Label Syrah and Old Vine. (See *March 2008 Marketing Allowance Invoice*, **Exhibit F** to the *Evidentiary Exhibits*).

25.      WJD receives a marketing contribution from Renwood for depletions of Red Label Syrah at $11 per case; Red Label Zinfandel at $11 per case, and

1    Renwood Old Vine Zinfandel at $20 per case. WJD cannot charge a marketing

2    allowance for the Private Label wines sold to BevMo.

3    26.    On April 30, 2008, I saw an e-mail from Renwood's Chairman and CEO

4    Robert Smerling that was sent to WJD's Brand Manager for Renwood Francois

5    Magnant. Mr. Smerling asked Francois to explain the uncharacteristic increase in

6    depletions. (See *BevMo Fraud e-mail string re: Francois*, **Exhibit G** to the

7    *Evidentiary Exhibits*). Francois' response was as follows:

> *"Robert,*
>
> *knowing that Renwood is a high priority brand in the WJD portfolio and that WJD's Fiscal Year ends in March, SWS CA made an all-out effort to maximize sales for the month of March. BevMo has historically been a supporter of Renwood and SWS executed on maximizing sales at BevMo on Red Label tier and Old Vine Zin.*
>
> *Best,*
> *François*
>
> *François Magnant*
> *Brand Manager, Renwood, [YellowTail] Reserve & Sparkling*
> *W. J. Deutsch & Sons, ltd.*
>
> *Office: 914-251-3292*

19    27.    The "SWS" to which Francois referred I understand to be Southern Wine

20    & Spirits, the WJD distributor that services the BevMo account. I took Francois'

21    response to confirm that the large increase in depletions were attributable to the

22    Red Label and Old Vine products being sold in volume at the end of WJD's

23    fiscal year which I knew to be around March 31, 2007.

24    28.    Because the sudden increase in depletions took place at the same time of

25    the March 2008 Nickel Sale, and because the Private Label wines no longer

26    appeared on WJD's DIVER report in a separate category, I sought independent

27    corroboration of the WJD representations.

29.     To do so, I obtained and cross-referenced the "Accounts Sold" report which was reported from WJD's DIVER system to Renwood that shows what WJD sold to BevMo in 2008 (Attached as **Exhibit H** to the *Evidentiary Exhibits*); with the "Accounts Sold" report that was reported by distributor SWS as being sold to BevMo for the same period (Attached as **Exhibit I** to the *Evidentiary Exhibits*).  The WJD report did not show a category for Private Label.  The SWS report did.

30.     I complied the data on a worksheet that I created (Attached as **Exhibit J** to the *Evidentiary Exhibits*).  As the spread sheet reflects, SWS sold 1842.8 cases of Renwood wines to BevMo for the first three months of 2008, including the Private Label wines.  Of the Petite Syrah categories of Red Label and Private Label, the SWS report shows 689 cases total, with 673 being Private Label and 16 being Red Label.  Of the Zinfandel categories of Red Label and Private Label, SWS sold a total of 754 cases, with 745 cases being Private Label and 9 cases being Red Label.  Of the Old Vine Zinfandel categories of Red Label and Private Label, SWS sold a total of 333 cases, with 308 cases being Private Label and 25 cases being Red Label.

31.     Both the WJD DIVER report to Renwood, and the WJD demand for the first quarter marketing contribution shows that WJD combined the Red Label Syrah sales with the Private Label Petite Sirah sales and called them all Red Label Syrah sales.  WJD also re-named the Private Label Lodi Zinfandel as Red Label Zinfandel wines, and re-named the Private Label OFV Zinfandel as Old Vine Zinfandel.

32.     I concluded the following from this data:

     -     As of March 31, 2008, SWS reported to BDN the depletion of 50 cases of Red Label wines and 1,386 cases of Private Label wines to BevMo;

     -     WJD pulled that depletion data from the BDN database using DIVER;

AFFIDAVIT OF DANICA RATKOVICH

- WJD manipulated its DIVER report to exclude the Private Label category and combined the Red Label and Private Label case depletion volume under only the Red Label sku's;

- On April 25, 2008, WJD sent its Quarterly Marketing Contribution invoice to Renwood including the manipulated DIVER data, demanding marketing allowances for Private Label wines for which they knew they could receive no marketing contribution (See *WJD Marketing Allowance Invoice*, **Exhibit F** to the *Evidentiary Exhibits*);

- On May 1, 2008, WJD employee Francois Magnant (Renwood's Brand Manager) was not truthful when providing his e-mail response about the facts behind the spike in Red Label sales to BevMo; (See *BevMo Fraud e-mail string re: Francois*, **Exhibit G** to the *Evidentiary Exhibits*).

- Later on May 1, 2008, when pressed by Renwood Chairman Robert Smerling about the data, WJD employee Francois again sent the manipulated DIVER data to Renwood without further explanation about the Red Label sales spike; (See *BevMo Fraud e-mail string re: Francois*, **Exhibit G** to the *Evidentiary Exhibits*).

- On May 2, 2008, Renwood Chairman Robert Smerling sent correspondence to WJD owners Peter and William Deutsch concerning the manipulated data and demanding an explanation. (See *BevMo Fraud e-mail string re: Francois*, **Exhibit G** to the *Evidentiary Exhibits*).

- On May 5, 2008, Peter Deutsch sent correspondence to Chairman Robert Smerling tacitly admitting that WJD unilaterally decided to count the Private Label cases for performance purposes, but is silent on the issue of counting those cases for purposes of the marketing contribution. (See *BevMo Fraud e-mail string re: Francois*, **Exhibit G** to the *Evidentiary Exhibits*).

- The difference between the marketing contribution demanded by WJD, and that which would be due had WJD not manipulated DIVER is $22,000.

- By counting those cases for depletion credit against the 80% depletion standard in the Services Agreement, I estimate that WJD took depletion credits in excess of $140,000.

- By counting those cases for sales credit against the Sales Performance Standard, I estimate that WJD took sales credit in excess of $140,000.

- Through my recent review of the same paperwork for the prior quarter, consisting of October, November and December 2007, I discovered that WJD engaged in the same manipulation and fraud. I estimate that WJD took more than $2,000 of marketing allowance for Private Label sales not due to them. (See *Fourth Quarter (OND) Marketing Contribution Claim Analysis*, **Exhibit K** to the *Evidentiary Exhibits*).

33.    At no point before the signing of this declaration has Renwood received an amended Marketing Contribution demand from WJD.

AFFIDAVIT OF DANICA RATKOVICH

**The Diverted BevMo Order**:

34.    Since the Private Label wines fell outside the *Services Agreement,* WJD could not stock their warehouse or those of its distributors with the wines.  Only Renwood kept the Private Label wines.  BevMo ordered the Private Label wines for sale only during the Nickel Sale.

35.    SWS acted as the distributor for Renwood on the Private Label wines for the Nickel Sales in October of 2007 and March of 2008.  Renwood also offered a reduced 10% commission to WJD via a side deal for order fulfillment for those two sales.

36.    To ensure prompt payment, order accuracy and appropriate customer service to BevMo, Renwood demanded that Private Label wines be ordered by SWS directly from Renwood, instead of through WJD.  This protocol was followed by all concerned during the October 2007 Nickel Sale.

37.    However, weeks after the March 2007 Nickel Sale had ended, SWS faxed an order dated 4/30/2008 to WJD for 270 cases of Private Label wines worth about $60,000. (See *April 30, 2008 BevMo Invoice*, **Exhibit L** to the *Evidentiary Exhibits*).

I declare under penalty of perjury in accordance with the laws of the State of California that the foregoing is true and correct.  Executed on this 2nd day of June, 2008, at Sacramento, California.

_____
DANICA RATKOVICH

1  WHITNEY A. DAVIS, SBN 149523
   MARIA S. ROSENFELD, SBN 186116
2  CHARTER DAVIS, LLP
   1730 I Street, Ste. 240
3  Sacramento, CA 95814
   (916) 448-9000
4  (916) 448-9009

5  ATTORNEYS FOR DEFENDANT
   RENWOOD WINERY, INC.
6

7           IN THE SUPERIOR COURT IN THE STATE OF CALIFORNIA
8                  IN AND FOR THE COUNTY OF NAPA
9

10

11
   RENWOOD WINERY INC.                    )  Case No.:
12                                        )
                                          )  MEMORANDUM OF POINTS AND
13                                        )  AUTHORITIES ON BEHALF OF
              Plaintiff,                  )  RENWOOD WINERY, INC.
14                                        )  IN SUPPORT OF APPLICATION FOR
         vs.                              )
15                                        )
                                          )  (1) EX PARTE WRIT OF POSSESSION,
16 W.J. DEUTSCH & SONS LTD., a New        )  (2) TEMPORARY RESTRAINING ORDER
   York Corporation, and DOES 1-50        )  PENDING HEARING ON WRIT OF
17 inclusive,                             )  POSSESSION,
                                          )  (3) WRIT OF POSSESSION
18                                        )  (4) PRELIMINARY INJUNCTION
                                          )
19            Defendants.                 )
                                          )  Date:  June 9, 2008
20                                        )  Time:  11:30 a.m.
                                          )  Dept:  B, Historic Courthouse
21                                        )  Hon. Francisca P. Tischer, P.J.
                                          )
22                                        )
                                          )
23  _____

24

25

26

27

28

            MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF RENWOOD WINERY INC.
              FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
                   (3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... ii

I.    INTRODUCTION ......................................................................... 1

III.   LEGAL ANALYSIS.......................................................................6

      A.    THE APPLICATION FOR WRIT OF POSSESSION
            SHOULD BE GRANTED..........................................................6

      1.    Good Cause Exists for Renwood's Application for Writ Of Possession to be
            Issued Ex Parte..........................................................................6

      2.    Renwood Has Established the Probable Validity of its Claim to Possession of the
            Cure Inventory ...........................................................................7

      3.    The Court Should not require an Undertaking by Renwood ...................9

      4.    In Conjunction with Granting of the Writ, the Court Should Order a Levying
            Officer to Enter WJD's business as Necessary to Recover the Cure Inventory...10

      B.    IN THE ALTERNATIVE, THE COURT MUST ISSUE A TEMPORARY
            RESTRAINING ORDER.......................................................10

      C.    IN THE ABSENCE OF ISSUANCE OF ITS WRIT OF POSSESSION EX
            PARTE OR POST HEARING, RENWOOD IS ENTITLED TO A
            PRELIMINARY JUNCTION.....................................................11

IV.   CONCLUSION...........................................................................12

i

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Pages</u>

*Commercial & Sav. Bank v. Foster*

    (1930) 210 Cal. 76........................................................................7

*RCA Service Company v. Superior Court of San Francisco County*

    (1982) 137 Cal.App.3d 1 ...............................................................6

*Symes Cadillac Inc. v. Insurance Co. of North America*

    (1977) 66 Cal.App.3d 905...............................................................9


<u>Statutes</u>


Code Civ. Proc. §§511.010-516.050........................................................ 6-13

ii

# I.
## INTRODUCTION

Plaintiff RENWOOD WINERY INC. (hereinafter "RENWOOD") hereby submits the following Memorandum of Points and Authorities in support of its application for an ex parte application for a writ of possession or, in the alternative, a temporary restraining order pertaining to certain cure inventory collateral as discussed herein. To the extent ex parte writ of possession relief is denied, and a temporary restraining order instead issues pending a noticed hearing on the writ of possession, RENWOOD submits points and authorities in support of its writ of possession application concurrently herein. Lastly, if for any reason the Court denies the writ of possession application, a request for preliminary injunction is made to, at the very least, preserve the status quo as to the subject cure inventory pending judgment on the verified complaint filed and served herewith.

RENWOOD applies for Writ of Possession relief under California Code of Civil Procedure § 512.010 to recover certain cure inventory representing personal property collateral in the possession of defendant W.J. DEUTSCH & SONS (hereinafter "WJD" and/or "Defendant".) RENWOOD seeks a writ of possession (ex parte or by noticed hearing as the Court deems necessary) following WJD'S contractual defaults/breaches relating to the wine sales and services agreement of March 2006 entered into by and between RENWOOD and WJD. (**Exhibit A**, attached to the accompanying Compendium of Exhibits.) The agreement requires that RENWOOD produce 16 wines organized in four tiers and that WJD exert its "best efforts" to market and sell those wines. WJD also guaranteed a 15% growth in RENWOOD sales by product and by tier for each month during the first five years of the contract. This means that if WJD did/does not sell the wine, WJD must buy the wine itself to cure the breach of the performance standard. Additionally, WJD must ensure that depletions of distributor inventory to retailers not fall below 80% of the sales performance standard.

As is described in more detail herein, WJD has breached the services agreement, (1) by accumulating and then selling out the enormous cure inventory, located in American Canyon, CA, before selling from RENWOOD inventory, and (2) at the same time, failing to cure contract

1
MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF RENWOOD WINERY INC.
FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
(3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

1  breaches of the sales performance standard per the service agreement for many months. WJD is

2  past due on cure invoices totaling in excess of $2 million. RENWOOD has a security interest in

3  that cure inventory per the security agreement and UCC-1 filings. The sale of wine from the

4  WJD cure inventory before satisfying monthly sales requirements or cure demands constitutes an

5  unfair business practice, in that WJD has used the cure to delay payment and breach the contract.

6  (See accompanying declarations of Robert Smerling and Danica Ratkovich filed and served

7  herewith.)

8  　　　Based on the above, and given the immediate danger of the cure inventory quickly

9  disappearing (per WJD's recent "sell off scheme") RENWOOD applies for an ex parte writ of

10  possession to mandate the return of the cure inventory collateral and to prevent WJD from

11  wrongfully selling off cure inventory without curing contractual breaches under the services

12  agreement. Due to WJD'S defaults on its contractual obligations to RENWOOD per the

13  services agreement, RENWOOD has sent notices of cure and also made demand for the cure

14  inventory in which it has a security interest, but WJD has refused to comply, RENWOOD seeks

15  the court's assistance in enforcing its rights to possession of its cure inventory before WJD sells

16  off more cure inventory, wrongfully diverting RENWOOD's collateral, and wrongfully profiting

17  from the cure inventory. If for any reason the ex parte writ of possession does not issue,

18  RENWOOD seeks a temporary restraining order directing WJD to preserve the remaining cure

19  inventory pending a noticed hearing on RENWOOD's application for writ of possession. In

20  order to streamline the process, RENWOOD likewise includes herein authorities supporting the

21  noticed writ of possession hearing. If for any reason the writ of possession does not issue

22  following noticed hearing, a request for preliminary injunction is also made herein.

23
## II.
### FACTUAL SUMMARY
24

25  　　RENWOOD and WJD executed a wine sales and service agreement in March of 2006.

26  (Exhibit A, attached to the accompanying declaration of Robert Smerling.) The agreement

27  requires that RENWOOD produce 16 wines organized in four tiers and that WJD exert its "best

28  efforts" to market and sell those wines. (See accompanying Declaration of Robert Smerling

2

MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF RENWOOD WINERY INC.
FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
(3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

1   (hereinafter "Smerling Dec") at ¶ 5; Declaration of Danica Ratkovich (hereinafter "Ratkovich

2   Dec" at ¶ 6.) WJD also guaranteed a 15% growth in Renwood sales by product and by tier for

3   each month during the first five years of the contract. This means that if WJD did not sell the

4   wine, WJD had to buy the wine itself to cure the breach of the performance standard.

5   Additionally, WJD had to ensure that depletions of distributor inventory to retailers could not fall

6   below 80% of the sales performance standard. (*Id.* Smerling Dec at ¶ 5; Ratkovich Dec at ¶ 7.)

7          The Services Agreement also required that RENWOOD pay WJD a marketing

8   contribution or allowance for each case depleted to a retailer on some of the wines. WJD could

9   only send a marketing contribution bill to Renwood on a quarterly basis. (Smerling Dec at ¶ 6.)

10  In the Services Agreement, WJD agreed to guarantee 15% sales growth over the previous year,

11  on a monthly basis; i.e. the "performance standard." The monthly performance standards were

12  pre-calculated for a five-year period. Per the terms of the agreement, WJD must cure any sales

13  shortfall below the performance standard, by product and by tier, within 15 days of cure demand

14  by Renwood. (Smerling Dec at ¶ 8; Ratkovich Dec at ¶ 7.) There is no limitation in the contract

15  as to when Renwood can call for a cure. (*Id.*)

16         The 16 Renwood wines that are covered by the Services Agreement are grouped by tiers.

17  "Tiers" are product categories. Tier 1 contains Proprietary wines; Tier 2 includes the "Amador

18  County" wines; Tier 3 includes "Red Label" value wines; and Tier 4 contains dessert wines.

19  (Smerling Dec at ¶ 9.) Tiers 2 & 3 represent 85% of Renwood's annual domestic sales

20  historically. (*Id.*)

21         WJD was required to fulfill its obligation as follows: the monthly sales requirements for

22  Tiers 1&4 had to be fulfilled 100% from those tiers, respectively; but the monthly requirement

23  for Tiers 2&3 had to be fulfilled from only 85% from those respective tiers, with a flexibility

24  allowance that permitted the remaining 15% of the requirement to be satisfied from overages in

25  any other tier. (Smerling Dec at ¶ 10.) As an accommodation to WJD, during the first three

26  months of the relationship (the "Transition Period") the Service Agreement provided that WJD

27  only had to meet 100% of the prior year's sales for April, May and June 2006. Therefore, the

28  15% increase would not be applied until July, 2006. (Smerling Dec at ¶ 11; Ratkovich Dec ¶¶

    11-13.)                                3

    MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF RENWOOD WINERY INC.
    FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
    (3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

1    The Renwood fiscal year runs from July to June. The Transition period included April,
2    May and June, 2006. Fiscal Year 2007 commenced on July 1, 2006. During the Transition
3    Period, WJD experienced a $300,000 shortfall out of the $2.1 million sales standard. (Smerling
4    Dec at ¶ 12; Ratkovich Dec at ¶¶ 14.) The shortfall included a 1,100-case sale to Beverages &
5    More that RENWOOD closed before the WJD agreement was signed. RENWOOD invoiced
6    WJD for the 1,100 cases, but WJD still refuses to pay it. (Id.)

7    Cure notices were sent to WJD after the Transition Period. WJD created a conflict
8    because it tried to borrow July 2006 sales to make up the $300,000 deficit from June in order to
9    meet its Transition Period cure obligations. (Smerling Dec at ¶¶ 13-15; Ratkovich at ¶ 15.)
10   RENWOOD protested WJD's actions. By WJD borrowing sales from July 2006 to cure the
11   Transition Period shortfall, WJD started fiscal year 2007 with a shortfall. The WJD sales
12   shortfall ballooned to $2.5 million by the end of November, 2007, merely seven months into the
13   contract. (Id.) The WJD cure inventory grew dramatically. Their decision to ship from their
14   inventory instead of from RENWOOD's caused larger monthly shortfalls in their sales
15   guarantee. The sales shortfall and cure issue became a problem during Fiscal 2007 because WJD
16   fell too far behind the sales guarantee. By the year's end in June of 2007, WJD would only have
17   sold about $3 million of the $8.217 million performance standard. (Smerling Dec at ¶ 16;
18   Ratkovich at ¶ 16-17.)

19   Thereafter, WJD began a practice of acknowledging cure(s) in 15 days, placing an order
20   for the cure goods 10 to 15 days thereafter, paying RENWOOD 35 days after their order is
21   shipped. This departure from the prior contractual arrangement moved RENWOOD's cash flow
22   back between 50-60 days. (Smerling Dec at ¶ 19; Ratkovich Dec at ¶ 18-23.) They also
23   manipulated the shipping date by refusing to accept goods within 15 days from the cure demand.
24   If WJD would have sold the goods to a distributor instead of buying the goods from RENWOOD
25   for cure purposes, WJD would have had to pay RENWOOD for the same wine 60 days earlier.
26   WJD then began to use the cure as a way to stretch-out payment terms another 60 days. WJD
27   amassed a huge "cure" inventory of RENWOOD wine, then filled distributor orders from the
28   cure inventory before ordering from RENWOOD's inventory. (Id. Smerling Dec at ¶ 19;

Ratkovich at ¶ 24-30) This cut-off cash flow to RENWOOD, Despite RENWOOD's objection,
MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF RENWOOD WINERY INC.
FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
(3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

1  and lengthy discussion through a year of mediation, WJD continued this cure practice until
2  February of 2008.  At that point, WJD stopped even acknowledging the cure demands of
3  RENWOOD, and started to sell-off the cure inventory. (*Id.*)  RENWOOD has a security interest
4  in that cure inventory evidence by UCC filings and the terms of the Services Agreement.
5  (Smerling Dec at ¶ 20.)

6       In the year before hiring WJD, RENWOOD shipped 96,000 cases of wine and collected
7  the proceeds directly from the distributors.  After hiring WJD, and more importantly, after
8  RENWOOD refused WJD's demand to reduce the 15% sales guarantee, WJD disrupted the
9  shipment and payment procedures dramatically.  (Smerling Dec at ¶ 21.) To date in Fiscal 2008,
10  WJD has shipped about 44,000 cases from the cure inventory as compared to 12,680 cases from
11  RENWOOD's inventory.  (Smerling at ¶ 26; Ratkovich at ¶ 27-30.)

12       WJD is selling out the enormous cure inventory before selling from RENWOOD
13  inventory, and at the same time, WJD has not cured contract breaches of the sales performance
14  standard for many months.  WJD is past due on cure invoices exceeds $2 million.  Renwood has
15  a security interest in that cure inventory. (Smerling Dec at ¶¶59-60.)

16       The sale of wine from the WJD cure inventory before satisfying monthly sales
17  requirements or cure demands constitutes an unfair business practice, in that WJD has used the
18  cure to delay payment and breach the contract.  (Smerling Dec at ¶ 61; See Ratkovich Dec ¶¶ 31-
19  50 re: specifics regarding falsification data.)  By cutting off sales revenue from contracted wines,
20  WJD is eliminating revenue to prevent RENWOOD from funding its harvest of grapes for the
21  next vintage.  The grapes of an entire vintage will be ruined, causing irreparable injury in the
22  form of lost inventory.  RENWOOD's wines cannot be made with grapes from other vineyards,
23  nor could RENWOOD buy grapes to replace them as the unique Grandpere and Grandmere
24  grapes, blended into many of the other RENWOOD wines, can only be grown at RENWOOD.
25  (Smerling Dec at ¶ 62.)

26

27

28

5

MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF RENWOOD WINERY INC.
FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
(3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

## III.
## LEGAL ANALYSIS

### A.  THE APPLICATION FOR WRIT OF POSSESSION SHOULD BE GRANTED.

Code of Civil Procedure §§ 511.010 through 516.050 set forth the statutory provisional remedy of claim and delivery. The remedy of claim and delivery may be asserted to secure possession of personal property pending the outcome of an action. (Code Civ. Proc. §512.010.) Ownership is not the determinative issue.  Rather, the ultimate issue is the right to possession. (Code of Civ. Proc. §512.010; see also, *RCA Service Company v. Superior Court of San Francisco County* (1982) 137 Cal.App.3d 1, 3).

### 1. Good Cause Exists for Renwood's Application for Writ Of Possession to be Issued *Ex Parte*.

Pursuant to § 512.020(b)(3) of the Code of Civil Procedure, the Court may issue an ex parte writ of possession where the defendant acquired the property in the course of a trade or business for commercial purposes and:

    (i)    The property is not necessary for the support of the defendant or his family; and

    (ii)   There is an immediate danger that the property will become unavailable to levy by reason of being transferred, concealed, or removed from the state or will become substantially impaired in value by acts of destruction or by failure to take care of the property in a reasonable manner;

    (iii)  The ex parte issuance of a writ of possession is necessary to protect the property.

See C.C.P. § 512.020(b)(3).

The requirements of section 512.020 are met. The declarations of Robert Smerling and Danica Ratkovich filed in support hereof contain substantial evidence to support that there is an immediate danger of loss, destruction, transfer, or concealment to the subject cure inventory. (see declarations of Robert Smerling and Danica Ratkovich supporting this application and specific factual recitation above with reference to declarations.)  First, WJD obtained the cure inventory in the ordinary course of business, and not for personal and/or household purposes.

1   Second, the cure inventory consists of wine inventory and thus is inherently mobile and subject
2   to being moved. Third, WJD is depriving RENWOOD of its security interest collateral on a
3   daily basis, and has now concocted a scheme whereby the cure inventory collateral is being
4   diverted/sold off, thus constituting an immediate and present danger, necessitating ex parte
5   relief. (*Id.*)

6   ## 2. Renwood Has Established the Probable Validity of its Claim to Possession of the Cure Inventory
7
8   The requirement that the claim has probable validity before a writ may issue is satisfied
9   where it appears more likely than not that the moving party, here RENWOOD, will obtain a
10  judgment against its opponent, WJD, as regards to the claim for possession of the cure inventory.
11  (Code Civ. Proc. §511.090.)

12  Section 512.060 of the Code of Civil Procedure provides that a writ of possession shall be
13  issued if plaintiff establishes the probable validity of the claim to possess the property. Section
14  511.090 defines "probable validity" as where it is more likely than not that the plaintiff will
15  obtain a judgment against the defendant on that claim. Thus, this standard requires that a plaintiff
16  demonstrate only a prima facie case for the claim.

17  The statement of facts set forth above, as supported by the declarations of Robert
18  Smerling and Danica Ratkovich filed in support, establish that RENWOOD has proven a prima
19  facie case with regard to its cause of action for possession of personal property/injunctive relief.
20  A person who is entitled to the possession of personal property held by another may bring an
21  action for the specific recovery of that property. (Code Civ. Proc. §512.010 *et. seq.*) An action for
22  possession of personal property can be brought only by a person who is entitled to immediate
23  possession of the property. (*Commercial & Sav. Bank v. Foster* (1930) 210 Cal. 76, 79-80.) The
24  person need not be the absolute owner or be vested with legal title, so long as the person holds
25  some qualified interest that entitles the person to possession of the property. (*Id.*)

26  The Declarations of Robert Smerling and Danica Ratkovich, summarized
27  above, (see factual summary) establish probable cause for RENWOOD's claim to possession of
28  the subject cure inventory. The declarations cumulatively establish the following key facts:

7

MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF RENWOOD WINERY INC.
FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
(3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

1     - RENWOOD and WJD entered into a wine sales and services agreement requiring that

2     RENWOOD produce 16 wines organized in four tiers and that WJD exert its "best efforts" to

3     market and sell those wines.

4     -Per the agreement, if WJD did not sell the wine, WJD had to buy the wine itself to cure

5     the breach of the performance standard.

6     - Over time WJD experienced a $300,000 shortfall out of the $2.1 million sales standard

7     during the initial transition period.

8     -Cure notices were sent.

9     -WJD then turned to borrowing sales to cure its transitional period shortfall.  The WJD

10    sales shortfall ballooned to $2.5 million by the end of November, 2007, merely seven months

11    into the contract.

12    -The WJD cure inventory grew dramatically.  WJD then turned to shipping out from the

13    cure inventory rather than RENWOOD's inventory per the contract.

14    -By the year's end in June of 2007, WJD would only have sold about $3 million of the

15    $8.217 million performance standard.

16    -Thereafter, WJD began a practice of acknowledging cure(s) in 15 days, placing an order

17    for the cure goods 10 to 15 days thereafter, paying RENWOOD 35 days after their order is

18    shipped.  This departure from the prior contractual arrangement moved RENWOOD's cash flow

19    back between 50-60 days.

20    -They also manipulated the shipping date by refusing to accept goods within 15 days

21    from the cure demand.  If WJD would have sold the goods to a distributor instead of buying the

22    goods from RENWOOD for cure purposes, WJD would have had to pay RENWOOD for the

23    same wine 60 days earlier.

24    -WJD then began to use the cure as a way to stretch-out payment terms another 60 days.

25    WJD amassed a huge "cure" inventory of RENWOOD wine, then filled distributor orders from

26    the cure inventory before ordering from RENWOOD's inventory.  This cut-off cash flow to

27    RENWOOD.

28

8

MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF RENWOOD WINERY INC.
FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
(3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

1    -Despite RENWOOD's objection, and lengthy discussion through a year of mediation,
2    WJD continued this cure practice until February of 2008.  At that point, WJD stopped even
3    acknowledging the cure demands of RENWOOD.

4         -At this point, WJD has turned to a practice of selling out the enormous cure inventory
5    before selling from RENWOOD inventory, and at the same time, WJD has not cured contract
6    breaches of the sales performance standard for many months.  WJD is past due on cure invoices
7    exceeding $2.5 million.  Renwood has a security interest in that cure inventory.

8         (See accompanying declarations of Robert Smerling and Danica Ratkovich.)

9         The above scenario establishes RENWOOD's right to immediate possession of the cure
10   inventory as a remedy for WJD'S failure to cure its contractual breaches and new scheme of
11   wrongfully selling out the cure inventory.  The requested relief is also necessary to protect and
12   preserve the cure inventory collateral.  WJD's repeated and continuing failure to cure its
13   breaches and further, practice of selling off the cure inventory prior to other inventory forever
14   deprives RENWOOD of its security interest in the cure inventory and proceeds generated from
15   wrongful sale/diversion of the same.  Once the cure inventory is diverted/sold off, RENWOOD
16   is without remedy.

17        **3. The Court Should not require an Undertaking by RENWOOD**

18        The purpose of the undertaking requirement is to indemnify the defendant against the
19   consequence of a taking that may later be adjudged to be wrongful. (*Symes Cadillac Inc. v.*
20   *Insurance Co. of North America* (1977) 66 Cal.App.3d 905, 909.)

21        Under Code of Civil Procedure section 515.010(b), the bond for a writ of possession is
22   *not* required if the defendant has *no economic interest or equity in the cure inventory*:

23        (b) If the Court finds that the defendant has no interest in the property the
24        Court shall waive the requirement of the plaintiff undertaking and shall
         include in the order for issuance of the writ the amount of the defendant's
25        undertaking sufficient to satisfy the requirements of subdivision (b) of Section
         515.020.
26

27        In this case, WJD can have no economic interest in the cure inventory as the cure
28   inventory has an estimated value of $1,761,400.00 but WJD owes RENWOOD more than $3
     million (Supplemental Declaration of Robert Smerling Declaration.)
          MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF RENWOOD WINERY INC.
          FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
               (3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

1    Under California Code of Civil Procedure § 515.020(a), any redelivery bond posted by

2  WJD must be in the same amount as RENWOOD's bond (if required) or in an amount

3  determined by the court. Herein, to permit redelivery on a bond less than the value of the cure

4  inventory would be a serious injustice to RENWOOD. RENWOOD thus requests that any

5  redelivery bond be no less than the value of the cure inventory.

6          **4. In Conjunction with Granting of the Writ, the Court Should Order a Levying**

7             **Officer to Enter WJD's business as Necessary to Recover the Cure Inventory**

8

9      RENWOOD has established the probable cause requirement of California Code of Civil

   Procedure § 512.060(b) to enter a private place:

10

11       No writ directing the levying officer to enter a private place to take
        possession of any property shall be issued unless the plaintiff has established

12      that there is probable cause to believe that such property is located there.

13      RENWOOD has established probable cause to believe the cure inventory is located at

14  Western Wine Services, 875 Hanna Drive, American Canyon, CA. Attached as Exhibit B to the

15  accompanying verified complaint is a true and correct copy of the precise identifying information

16  concerning the subject cure inventory at this location.

17      As a separate basis to allow entry to WJD'S premises, RENWOOD submits that the

18  services agreement stipulates on behalf of WJD to filing and satisfaction of writs of

19  attachment/execution aimed against contracted product inventory including that "owned" by

20  WJD. (**Exhibit A** to the declaration of Robert Smerling at p. 8 (i)(b).) Thus, implied

21  permission is indeed contemplated within the agreement and is warranted at this time.

22          **B. IN THE ALTERNATIVE, THE COURT MUST ISSUE A**
             **TEMPORARY RESTRAINING ORDER.**

23

24      At the same a plaintiff files an application for a writ of possession, or as here, an ex parte

25  writ of possession, the plaintiff may also seek a temporary restraining order ("TRO") to prevent

26  the defendant from transferring any interest in the property or from otherwise disposing the cure

27  inventory property. (Code Civ. Proc. § 513.010.) The same elements to establish grounds for a

   writ of possession apply for a TRO *except* that the plaintiff need only show that there is only a

28

MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF RENWOOD WINERY INC.
FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
(3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

Received    Jun-08-08   02:56pm       From-916 448 9009            To-NMPMN MARIN 1        Page  17

1   "probability" that the property will disappear or be damaged. (*Id.* § 513.010(b)(3).) This is a

2   lesser standard than what is required for a writ of possession.

3        As discussed above, RENWOOD has established the probable validity of its claim for

4   possession of personal property and has established that WJD has no interest in the subject cure

5   inventory. (See Code Civ. Proc. §§ 511.090; 515.010(b).) Again, RENWOOD herein

6   establishes the probable validity of its claim by and through the accompanying declarations of

7   Robert Smerling and Danica Ratkovich illustrating that WJD is in breach of the services

8   agreement, has failed to cure its contractual breaches, and now engages in a practice of

9   wrongfully selling the cure inventory, depleting RENWOOD's secured interest. RENWOOD is

10  continually and irreparably harmed by WJD's contractual breaches, failure to cure and the

11  diversion of cure inventory. Certainly, there is more than enough evidence to show that there is

12  at least a "probability" that the cure inventory will disappear if a TRO does not issue. The

13  irreparable harm here is real. The TRO is necessary to maintain the status quo and to ensure that

14  the cure inventory is not lost, destroyed, transferred or concealed.

15       Specific request is made that any TRO be issued for 22 days rather than 15 days. (CCP

16  §513.010(a), 527(d)(1).) Good cause exists for this request for the cure inventory will disappear

17  if the TRO expires prior to any noticed writ of possession hearing going forward on 16 court

18  days notice.

### C. IN THE ABSENCE OF ISSUANCE OF ITS WRIT OF POSSESSION EX PARTE OR POST HEARING, RENWOOD IS ENTITLED TO A PRELIMINARY JUNCTION

21       The above authorities permit the Court to issue a writ of possession either ex parte or

22  upon noticed hearing. If for any reason, the Court declines issuance of a writ of possession on

23  an ex parte basis, and further declines to issue such an order after noticed hearing, RENWOOD

24  applies for injunctive relief to protect its interest in the cure inventory during this lawsuit.

25  Injunctive relief is available under California Code of Civil Procedure section 526(a) permits a

26  plaintiff to seek an injunction:

27           (1) When it appears by the complaint that the plaintiff is entitled to the relief
              demanded, and the relief, or any part thereof, consists in restraining the
28           commission or continuance of the act complained of, either for a limited
              period or perpetually.

11

MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF RENWOOD WINERY INC.
FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
(3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

(2) When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great and irreparable injury, to a party to the action.

Again, WJD has not cured its breaches under the services agreement. RENWOOD is continually and irreparably harmed by WJD's contractual breaches, failure to cure and the diversion of cure inventory by wrongful sale. Injunctive relief is particularly proper herein, as RENWOOD's security interest in the cure inventory is easily and quickly lost as WJD continues to sell off the cure inventory and spends the proceeds without accounting to RENWOOD, and continues to ignore the notices to cure which have gone unpaid. WJD has demonstrated a clear unwillingness to meet its contractual obligations and/or otherwise surrendering its cure inventory per the agreement which grants RENWOOD a security interest in this personal property. WJD is past due on cure invoices totaling $2.5 million. (See declarations of Robert Smerling and Danica Ratkovich.)

If the Court does not issue injunctive relief, RENWOOD is in danger of having its secured position diminished further, causing great and irreparable injury to RENWOOD if injunctive relief is not granted. Lastly, the net effect of WJD's actions is a complete halt of cash flow to RENWOOD, impacting its ability to facilitate/fund its next harvest.

For all the reasons set forth above in support of the issuance of a temporary restraining order and writ of possession, RENWOOD likewise satisfies the requirements for injunctive relief in the form of a preliminary injunction to maintain the status quo during litigation of this matter.

## IV.
## CONCLUSION

For the foregoing reasons, RENWOOD respectfully requests that the court issue an ex parte Order for Writ of Possession, or alternatively that the court issue a temporary restraining pending noticed hearing on RENWOOD's application for writ of possession order to maintain the status quo, and restrain WJD from continuing its failure to cure contractual breaches, and preventing its continued diversion and profit of the cure inventory at issue in this litigation, in which RENWOOD has a security interest. If for any reason the Court declines to issue the writ

12

MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF RENWOOD WINERY INC.
FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
(3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

1    Either ex parte or as part of a noticed hearing, RENWOOD seeks injunctive relief in the form of

2    a preliminary injunction to maintain the status quo as to the cure inventory for the pendency of

3    litigation.

4

5    DATED:  June ___ 2008                    CHARTER DAVIS, LLP

6

7

8                                            WHITNEY A. DAVIS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

MEMORANDUM OF POINTS AND AUTHORITIES ON BEHALF OF RENWOOD WINERY INC.
FOR (1) EX PARTE WRIT OF POSSESSION OR (2) TEMPORARY RESTRAINING ORDER OR
(3) WRIT OF POSSESSION OR (4) PRELIMINARY INJUNCTION

1  WHITNEY A. DAVIS, SBN 149523
   MARIA S. ROSENFELD, SBN 186116
2  CHARTER DAVIS, LLP
   1730 I Street, Ste. 240
3  Sacramento, CA 95814
   Tel: (916) 448-9000
4  Fax: (916) 448-9009

5  Attorneys for Defendant
   RENWOOD WINERY, INC.

6

7

8              IN THE SUPERIOR COURT IN THE STATE OF CALIFORNIA

9                    IN AND FOR THE COUNTY OF NAPA

10

11  RENWOOD WINERY INC.                 )    Case No.:
                                        )
12              Plaintiff,              )
                                        )
13      vs.                             )    **DECLARATION OF WHITNEY A.**
                                        )    **DAVIS**
14  W.J. DEUTSCH & SONS LTD., a New York )
    Corporation, and DOES 1-50 inclusive, )
15                                      )
                                        )
16              Defendants.             )
    _____)

17

18      I, WHITNEY A. DAVIS, declare:

19      1.  I am an attorney at law licensed to practice before all of the courts of the State of

20      California, and am a partner of the Charter-Davis, LLP law firm, attorneys of record

21      for Renwood Winery, Inc. I have personal knowledge of the facts and circumstances

22      set forth below, and if called upon to do so could and would testify thereto.

23      2.  I originally provided notice to Jim Parinello, counsel for W.J. Deutsch and Sons,

24      Ltd. on Thursday, June 05, 2008 of Renwood's intention to seek a TRO as it was

25      originally scheduled for Friday, June 6, 2008.

26      3.  Due to the Court's calendar, and due to the fact that additional relevant information

27      came to my attention on June 5, 2008 that required revision of the moving papers,

28      my office re-scheduled the hearing to take place on Monday, June 9, 2008.

                                    -1-
                   DECLARATION OF WHITNEY A. DAVIS

4. On June 5, 2008, I received information leading me to believe that W.J. Deutsch may be planning to liquidate the collateral cure inventory and "dump" the inventory at below-market prices in order to damage Renwood and the distributor network. Such a tactic had been mentioned in the past by Jim Mello, President of W.J. Deutsch, which corroborated the risk of that tactic being deployed by W.J. Deutsch. Even if W.J. Deutsch had no intention of damaging Renwood by dumping the collateral cure inventory, the fact that W.J. Deutsch has not paid Renwood for months and is past due on millions of dollars of invoices led me to believe that W.J. Deutsch is suffering a financial crisis that may compel it to liquidate the collateral cure inventory for its own cash flow needs.

5. On June 5, 2008, I advised Jim Parinello, counsel for W.J. Deutsch & Sons, of the hearing date and time for this matter. The final moving papers are scheduled to be sent to Mr. Parinello's office via e-mail on Saturday, June 7, 2008.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 6, 2008 at Sacramento, California.

Whitney A. Davis

-2-
DECLARATION OF WHITNEY A. DAVIS

CD-200

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Whitney A. Davis, SBN 149523<br>CHARTER DAVIS LLP<br>1730 I Street, # 240<br>Sacramento, CA 95814<br>TELEPHONE NO.: (916) 448-9000     FAX NO. *(Optional)*: (916) 448-9009<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Renwood Winery, Inc. | *FOR COURT USE ONLY* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF NAPA
STREET ADDRESS: 825 Brown Street
MAILING ADDRESS:
CITY AND ZIP CODE: Napa, CA 94559-3031
BRANCH NAME:

PLAINTIFF: RENWOOD WINERY, INC.

DEFENDANT: W.J. DEUTSCH & SONS, LTD.

| | |
|---|---|
| **TEMPORARY RESTRAINING ORDER** | CASE NUMBER: |

1. The application of plaintiff* *(name):* Renwood Winery, Inc.
   for a temporary restraining order having been considered by the court, the court finds:
   a. Plaintiff has filed an undertaking as required by Code Civ. Proc., § 515.010, in the amount of: $
   b. Plaintiff has established the probable validity of plaintiff's claim to possession of the following property *(describe):*
      See Attachment 1b




      ☑ Continued on Attachment 1b.
   c. Plaintiff has established the probability that there is an immediate danger that the above-described property
      ☑ may become unavailable to levy.   ☑ may become substantially impaired in value.

**IT IS ORDERED**

2. Defendant *(name):* W.J. Deutsch & Sons, Ltd.
   is restrained from doing the following:
   a. ☑ Transferring any interest by sale, pledge, or grant of security interest, or otherwise disposing of, or encumbering
      (1) ☑ the following property *(specify):*
         See Attachment



         ☑ Continued on Attachment 2a.
      (2) ☐ except in the ordinary course of business, the following farm products held for sale or lease:



         ☐ Continued on Attachment 2a.
      (3) ☐ except in the ordinary course of business, the following inventory:



         ☐ Continued on Attachment 2a.

* "Plaintiff" includes cross-complainant, and "defendant" includes cross-defendant.

| | | |
|---|---|---|
| | | Page 1 of 3 |
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CD-200 [Rev January 1, 2008] | **TEMPORARY RESTRAINING ORDER**<br>**(Claim and Delivery)** | Code Civ. Proc., §§ 510.010, 510.020, 527<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.USCourtForms.com |

Received   Jun-08-08  02:50pm     From-916 448 9009         To-NMPWN MARIN 1       Page  02

CD-200

| PLAINTIFF: RENWOOD WINERY, INC. | CASE NUMBER: |
| DEFENDANT: W.J. DEUTSCH & SONS, LTD. | |

2. b. ☑ Concealing or otherwise removing the following property in such manner as to make it less available to seizure by the levying officer *(describe):*

　　See Attachment

　　☑ Continued on Attachment 2b.

c. ☑ Impairing the value of

　　(1) the following property *(describe):*

　　　　See Attachment

　　　　☑ Continued on Attachment 2c.

　　(2) either by acts of destruction or by failure to care for the property in a reasonable manner, including the following acts:

　　　　See Attachment

　　　　☑ Continued on Attachment 2c.

d. ☑ Disposing of the proceeds from the transfer of any interest in

　　(1) ☐ the following farm products held for sale or lease *(describe):*

　　　　☐ Continued on Attachment 2d.

　　(2) ☑ the following inventory *(describe):*

　　　　See Attachment

　　　　☑ Continued on Attachment 2d.

e. Number of boxes checked in item 2:  _2_

3. ☐ The clerk of this court is directed to attach a copy of plaintiff's undertaking to this order.

4. This order will have no force or effect after *(date):* 7/1/08-see attached    (Code Civ. Proc., §§ 513.010(c), 527.)

5. Number of pages attached: _1_

Date: _____    _____
　　　　　　　　　　　　　　　　　　(JUDICIAL OFFICER)

　　　　　　　　　　　　☐ Signature follows last attachment.

**TEMPORARY RESTRAINING ORDER**
(Claim and Delivery)

Page 2 of 2

| SHORT TITLE:<br>— Renwood Winery. Inc. v. W.J. Deutsch & Sons, Ltd. | CASE NUMBER: |
| --- | --- |

1
2  ATTACHMENT 1b, 2(a)(1),2(b), 2(c)(1)(2),2(d)(2):  (the cure inventory subject to TRO):
   149322030100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2003 6/750;  57 cases
3  149322040100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2004 6/750;  0 cases
   140277040100 RENWOOD BARBERA AMADOR COUNTY 2004 6/750;  0 cases
4  149232040000 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 2004 12/750;  836 cases
5  149232040401 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 2004 1/3L; • PROMO 15
   cases
6  149232050000 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 200512/750;  4,211 cases
7  149324040100 RENWOOD ZINFANDEL JACK RABBIT FLAT 2004 6/750; 65 cases
   146550060300 RENWOOD ORANGE MUSCAT AMADOR COUNTY 200612/375; 536 cases
8  147052030300 RENWOOD PORT SIERRA FOOTHILLS 2003 12/375; 555 cases
9  147052040000 RENWOOD PORT SIERRA FOOTHILLS 2004 12/750; 89 cases
   149233060300 RENWOOD ZINFANDEL AMADOR ICE 2006 12/375; 26 cases
10 146744050000 RENWOOD DRY ROSE RED LABEL 200512/750;  425 cases
11 149174050000 RENWOOD VIOGNIER SIERRA SERIES 2005 12/750;  0 cases
   149234050000 RENWOOD ZINFANDEL RED LABEL 200512/750; 10,799 cases
12 The above inventory is located at 875 Hanna Drive, American Canyon, CA.

13
14 ATTACHMENT 4:  Request is made that the instant TRO issue for 22 days upon good cause; i.e. per the
   accompanying points and authorities there is real and immediate danger of the cure inventory
15 disappearing.  To the extent the Court requires a noticed hearing, the TRO must not expire prior to the
   noticed hearing going forward.

16
17
18
19
20
21
22
23
24
25
26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line
    numbers):*
27  | This page may be used with any Judicial Council form or any other paper filed with the court. | Page _____ |

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201.501

American LegalNet, Inc.  www.USCourtForms.com

BOND #57BSBFB8253

AT-160/CD-140

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Whitney A. Davis, SBN 149523<br>CHARTER DAVIS LLP<br>1730 I Street, # 240<br>Sacramento, CA 95814<br>TELEPHONE NO.. (916) 448-9000    FAX NO. *(Optional)* (916) 448-9009<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Renwood Winery, Inc. | FOR COURT USE ONLY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** NAPA
STREET ADDRESS: 825 Brown Street
MAILING ADDRESS:
CITY AND ZIP CODE: Napa, CA 94559-3031
BRANCH NAME: Historic Courthouse

PLAINTIFF: RENWOOD WINERY, INC.

DEFENDANT: W.J. DEUTSCH & SONS, LTD.

| | | CASE NUMBER: |
|---|---|---|
| ☑ Plaintiff's<br>☐ Defendant's | **UNDERTAKING BY PERSONAL SURETIES**<br>☐ Attachment    ☑ Claim and Delivery | |

1. ☑ Plaintiff *(name):* Renwood Winery, Inc.
2. ☑ Defendant *(name):* W.J. Deutsch & Sons, Ltd.
3. Amount of undertaking: $ 50,000.00
4. ☐ *(Claim and delivery only)* Address to which notice of objection to sureties may be sent *(specify):*

   P. O. Box 2103, 690 Asylum Avenue Hartford, CT 06115

5. This undertaking is for ☐ attachment. ☑ claim and delivery.
6. We, the undersigned sureties, hereby submit to the jurisdiction of the court in all matters affecting our liability on this undertaking and obligate ourselves, jointly and severally, to and including the amount specified in item 3,

   **ATTACHMENT**

   a. ☐ to pay the defendant named in item 2 any amount the defendant may recover for any wrongful attachment by the plaintiff named in item 1 in the action under Code of Civil Procedure section 489.210.

   b. ☐ to pay the plaintiff named in item 1 the value of the property released not exceeding the amount of any judgment which may be recovered by the plaintiff in an action against the defendant named in item 2 (Code Civ. Proc., § 489.310).

   c. ☐ to pay the plaintiff named in item 1 the amount of any judgment that may be recovered by the plaintiff in the action against the defendant named in item 2 under Code of Civil Procedure section 489.320.

   **CLAIM AND DELIVERY**

   d. ☐ to the plaintiff named in item 1, if the plaintiff recover judgment in the action, the defendant named in item 2 will pay all costs awarded to the plaintiff and all damages that the plaintiff may sustain by reason of the loss of the property, not exceeding the amount of this undertaking under Code of Civil Procedure section 515.020.

   e. ☐ to the defendant named in item 1, for the return of the property to the defendant if a return is ordered, and for the payment of any sum the defendant may recover against the plaintiff, not exceeding the amount of this undertaking under Code of Civil Procedure section 515.010.

7. a. (1) Surety *(name):* Hartford Fire Insurance Company    b. (1) Surety *(name):*

   (2) Occupation:                          (2) Occupation:

   (3) Residence address:                   (3) Residence address:

   (4) Business address:                    (4) Business address:
   P. O. Box 2103, 690 Asylum Avenue
   Hartford, CT 06115
   (5) Address for service:                 (5) Address for service:
   P. O. Box 2103, 690 Asylum Avenue
   Hartford, CT 06115

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>AT-160/CD-140 [Rev. January 1, 2006] | **UNDERTAKING BY PERSONAL SURETIES**<br>**(Attachment and Claim and Delivery)** | Code Civ. Proc., §§ 482.030; 515.010, 515.020,<br>505.510, 555.020<br>www.courtinfo.ca.gov |
| | | American LegalNet, Inc.<br>www.USCourtForms.com |

Received    Jun-08-08  02:50pm    From-916 448 9009    To-NMPMN MARIN 1    Page  05

BOND #57BSBFB8253

AT-160/CD-140

| PLAINTIFF: RENWOOD WINERY, INC. | CASE NUMBER: |
| DEFENDANT: W.J. DEUTSCH & SONS, LTD. | |

8. a. (1) I am neither an officer of the court nor a member of the State Bar of California, but I am a resident and ☐ householder ☐ owner of real property within California and I am worth the amount of the bond in real or personal property, or both, situated in this state, over and above all my debts and liabilities, exclusive of property exempt from enforcement of a money judgment.

(2) ☐ *(Complete if undertaking exceeds $5,000.)*
I rely on the following described property belonging to me and situated in this state as qualifying me on the undertaking *(describe property and nature of declarant's interest and specify best estimate of fair market value of each item of property):*

☐ Continued on Attachment 8a.

(3) The charges, liens, impediments, or clouds against any item of property known to me and the amounts are as follows *(specify):*

☐ Continued on Attachment 8a.

9. a. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: June 06, 2008

►
_(SIGNATURE OF SURETY)_

JOHN SUTAK III, ATTORNEY-IN-FACT
Hartford Fire Insurance Company
_(TYPE OR PRINT NAME OF SURETY)_

8. b. (1) I am neither an officer of the court nor a member of the State Bar of California, but I am a resident and ☐ householder ☐ owner of real property within California and I am worth the amount of the bond in real or personal property, or both, situated in this state, over and above all my debts and liabilities, exclusive of property exempt from enforcement of a money judgment.

(2) ☐ *(Complete if undertaking exceeds $5,000.)*
I rely on the following described property belonging to me and situated in this state as qualifying me on the undertaking *(describe property and nature of declarant's interest and specify best estimate of fair market value of each item of property):*

☐ Continued on Attachment 8b.

(3) The charges, liens, impediments, or clouds against any item of property known to me and the amounts are as follows *(specify):*

☐ Continued on Attachment 8b.

9. b. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

►
_(SIGNATURE OF SURETY)_

_(TYPE OR PRINT NAME OF SURETY)_

**COURT APPROVAL**
(Attachment only)

The undertaking is approved.

Date:

_(JUDICIAL OFFICER)_

☐ Signature follows last attachment.

AT-160/CD-140 [Rev. January 1, 2006]

**UNDERTAKING BY PERSONAL SURETIES**
(Attachment and Claim and Delivery)

Page 2 of 2

# POWER OF ATTORNEY

Direct Inquiries/Claims to:
**THE HARTFORD**
BOND, T-4
P.O. BOX 2103, 690 ASYLUM AVENUE
HARTFORD, CONNECTICUT 06115
call: 888-266-3488 or fax: 860-757-5835
Agency Code: 57   556335

KNOW ALL PERSONS BY THESE PRESENTS THAT:

| | |
|---|---|
| [X] | Hartford Fire Insurance Company, a corporation duly organized under the laws of the State of Connecticut |
| [ ] | Hartford Casualty Insurance Company, a corporation duly organized under the laws of the State of Indiana |
| [ ] | Hartford Accident and Indemnity Company, a corporation duly organized under the laws of the State of Connecticut |
| [ ] | Hartford Underwriters Insurance Company, a corporation duly organized under the laws of the State of Connecticut |
| [ ] | Twin City Fire Insurance Company, a corporation duly organized under the laws of the State of Indiana |
| [ ] | Hartford Insurance Company of Illinois, a corporation duly organized under the laws of the State of Illinois |
| [ ] | Hartford Insurance Company of the Midwest, a corporation duly organized under the laws of the State of Indiana |
| [ ] | Hartford Insurance Company of the Southeast, a corporation duly organized under the laws of the State of Florida |

having their home office in Hartford, Connecticut (hereinafter collectively referred to as the "Companies") do hereby make, constitute and appoint,
**up to the amount of UNLIMITED**
JOHN SUTAK III, JENNIFER C. ROYALL OF SAN FRANCISCO, CALIFORNIA

their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety(ies) only as delineated above by [X], and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof, on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

In Witness Whereof, and as authorized by a Resolution of the Board of Directors of the Companies on January 22, 2004, the Companies have caused these presents to be signed by its Assistant Vice President and its corporate seals to be hereto affixed, duly attested by its Assistant Secretary. Further, pursuant to Resolution of the Board of Directors of the Companies, the Companies hereby unambiguously affirm that they are and will be bound by any mechanically applied signatures applied to this Power of Attorney.

      

Paul A. Bergenholtz, Assistant Secretary

M. Ross Fisher, Assistant Vice President

STATE OF CONNECTICUT }
                        } ss.    Hartford
COUNTY OF HARTFORD }

On this 3rd day of March, 2008, before me personally came M. Ross Fisher, to me known, who being by me duly sworn, did depose and say: that he resides in the County of Hartford, State of Connecticut; that he is the Assistant Vice President of the Companies, the corporations described in and which executed the above instrument; that he knows the seals of the said corporations; that the seals affixed to the said instrument are such corporate seals; that they were so affixed by authority of the Boards of Directors of said corporations and that he signed his name thereto by like authority.


CERTIFICATE

Scott E. Paseka
Notary Public
My Commission Expires October 31, 2012

I, the undersigned, Assistant Vice President of the Companies, DO HEREBY CERTIFY that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is still in full force effective as of June 6, 2008
Signed and sealed at the City of Hartford.

       

Gary W. Stumper, Assistant Vice President

POA 2008

CD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| WHITNEY DAVIS, SBN 149523<br>CHARTER DAVIS LLP<br>1730 I STREET STE. 240<br>SACRAMENTO, CA 95814 | |

TELEPHONE NO.: (916) 448-9000          FAX NO. *(Optional)*: (916) 448-9009

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*: RENWOOD WINERY INC.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF NAPA
STREET ADDRESS: 825 BROWN STREET
MAILING ADDRESS: 825 BROWN STREET
CITY AND ZIP CODE: NAPA, CA 94559-3031
BRANCH NAME: NAPA SUPERIOR COURT-HISTORIC COURTHOUSE

PLAINTIFF: RENWOOD WINERY INC.

DEFENDANT: W.J. DEUTSCH & SONS LTD.

| APPLICATION FOR WRIT OF POSSESSION ☐ AFTER HEARING<br>☑ EX PARTE ☑ AND FOR TEMPORARY RESTRAINING ORDER | CASE NUMBER: |
|---|---|

1. Plaintiff* has filed a complaint and makes claim for delivery of property in the possession of the defendant named in b.
   a. Plaintiff *(name)*: RENWOOD WINERY INC.
   b. Defendant *(name)*: W.J. DEUTSCH & SONS LTD.

2. Plaintiff applies for *(check all that apply)*:
   a. ☐ Writ of possession after hearing (Code Civ. Proc, (C.C.P.), § 512.010).
   b. ☑ Ex parte writ of possession (C.C.P., § 512.020). *(File Declaration for Ex Parte Writ of Possession, form CD-180.)*
   c. ☑ Temporary restraining order (C.C.P., § 513.010). *(File Application for Temporary Restraining Order, form CD-190.)*

3. The basis of the plaintiff's claim and right to possession of the claimed property is specified in ☑ a written document, a copy of which is attached. ☑ the verified complaint. ☑ the attached declaration. ☑ the following facts *(specify)*:

   See Accompanying Memorandum of Points and Authorities in support of Application for Ex Parte Writ of Possession and alternatively TRO filed/served concurrently herewith; See also Accompanying Compendium of Exhibits, Accompanying Declarations of Whitney Davis, Robert Smerling and Danica Ratkovich filed/served concurrently herewith. See also Verified Complaint filed/served herewith.

4. Claimed property *(Describe, state value, and further identify any property that is a farm product (Code Civ.Proc., § 511.040) or inventory held for sale or lease (Code Civ. Proc., § 511.050))*:

   See Attachment

☑ Continued on Attachment 4.

* "Plaintiff" includes cross-complainant, "defendant" includes cross-defendant, and "complaint" includes cross-complaint.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CD-100 [Rev. January 1, 2006]

**APPLICATION FOR WRIT OF POSSESSION**
(Claim and Delivery)

Code Civ. Proc. § 512.010
www.courtinfo.ca.gov

American LegalNet, Inc.
www.USCourtForms.com

CD-100

| PLAINTIFF: RENWOOD WINERY INC. | CASE NUMBER: |
|---|---|
| DEFENDANT: W.J. DEUTSCH & SONS LTD. | |

5. A showing that the claimed property is wrongfully detained by defendant, of how the defendant came into possession of the claimed property, and, according to Plaintiff's best knowledge, information, and belief, of the reason for the defendant's detention of the claimed property, is made ☑ in the verified complaint. ☑ in the attached declaration. ☑ as follows (specify):

See Accompanying Memorandum of Points and Authorities in support of Application for Ex Parte Writ of Possession and alternatively TRO filed/served concurrently herewith; See also Accompanying Compendium of Exhibits, Accompanying Declarations of Whitney Davis, Robert Smerling and Danica Ratkovich filed/served concurrently herewith. See also Verified Complaint filed/served concurrently herewith.

6. To Plaintiff's best knowledge, information, and belief the claimed property or some part of it is located as stated ☑ in the verified complaint. ☑ in the attached declaration. ☑ as follows (specify):
*(Include in this statement whether any part of the claimed property is within a private place that may have to be entered to take possession. If so, complete item 7.)*

See Accompanying Memorandum of Points and Authorities in support of Application for Ex Parte Writ of Possession and alternatively TRO filed/served concurrently herewith; See also Accompanying Compendium of Exhibits, Accompanying Declarations of Whitney Davis, Robert Smerling and Danica Ratkovich filed/served concurrently herewith. See also Verified Complaint filed/served concurrently herewith.

The subject cure inventory is located at 875 Hanna Drive, American Canyon, CA

7. ☑ Facts showing probable cause for belief that the claimed property or some part of it is located in the private place referred to in item 6 are specified ☑ in the verified complaint. ☑ in the attached declaration. ☑ as follows:

See Accompanying Memorandum of Points and Authorities in support of Application for Ex Parte Writ of Possession and alternatively TRO filed/served concurrently herewith. As a separate basis to allow entry to WJD'S premises, RENWOOD submits that the services agreement stipulates on behalf of WJD to filing and satisfaction of writs of attachment/execution aimed against contracted product inventory including that "owned" by WJD. (Exhibit A to the accompanying declaration of Robert Smerling at p. 8 (i)(b).) Thus, implied permission is indeed contemplated within the agreement and is warranted

8. The claimed property has not been taken for a tax, assessment, or fine, pursuant to statute, and *(check one)*:
   a. ☑ has not been seized under an execution against the plaintiff's property.
   b. ☐ has been seized under an execution against the plaintiff's property, but is exempt from such seizure under *(code section)*:

9. ☐ This action is subject to the ☐ Unruh Retail Installment Sales Act (Civ. Code, §§ 1801-1812.10);
   ☐ Rees-Levering Motor Vehicle Sales and Finance Act (Civ. Code, §§ 2981-2984.4).
   Facts showing that this is the proper court are specified in the ☐ verified complaint. ☐ attached declaration.

10. Total number of pages attached: 1

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: June ___, 2008

WHITNEY A. DAVIS
_____
(TYPE OR PRINT NAME)

▶

_____
(PLAINTIFF'S SIGNATURE)

Page 2 of 2

CD-100 [Rev. January 1, 2000]

## APPLICATION FOR WRIT OF POSSESSION
### (Claim and Delivery)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Renwood Winery, Inc. v. W.J. Deutsch & Sons, Ltd. | |

1 | ATTACHMENT 4:

2 | The cure inventory subject to writ of possession:

2 | 149322030100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2003 6/750;  57 cases

3 | 149322040100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2004 6/750;  0 cases

3 | 140277040100 RENWOOD BARBERA AMADOR COUNTY 2004 6/750;  0 cases

4 | 149232040000 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 2004 12/750;  836 cases

5 | 149232040401 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 2004 1/3L; • PROMO 15 cases

6 | 149232050000 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 200512/750;  4,211 cases

7 | 149324040100 RENWOOD ZINFANDEL JACK RABBIT FLAT 2004 6/750; 65 cases

7 | 146550060300 RENWOOD ORANGE MUSCAT AMADOR COUNTY 200612/375; 536 cases

8 | 147052030300 RENWOOD PORT SIERRA FOOTHILLS 2003 12/375; 555 cases

9 | 147052040000 RENWOOD PORT SIERRA FOOTHILLS 2004 12/750; 89 cases

9 | 149233060300 RENWOOD ZINFANDEL AMADOR ICE 2006 12/375; 26 cases

10 | 146744050000 RENWOOD DRY ROSE RED LABEL 200512/750;  425 cases

11 | 149174050000 RENWOOD VIOGNIER SIERRA SERIES 2005 12/750; 0 cases

11 | 149234050000 RENWOOD ZINFANDEL RED LABEL 200512/750; 10,799 cases

13 | The above inventory is located at 875 Hanna Drive, American Canyon, CA.

14 | Stated value: $1,761,400.00

26 | *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers):*

27 | This page may be used with any Judicial Council form or any other paper filed with the court.

Page _____

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

CRC 201, 501
American LegalNet, Inc.   www.USCourtForms.com

CD-130

| | FOR COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Whitney A. Davis, SBN 149523<br>CHARTER DAVIS LLP<br>1730 I Street, # 240<br>Sacramento, CA 95814<br>TELEPHONE NO.: (916) 448-9000     FAX NO. *(Optional)*: (916) 448-9009<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Renwood Winery, Inc. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  NAPA
STREET ADDRESS: 825 Brown Street
MAILING ADDRESS:
CITY AND ZIP CODE: Napa, CA  94559-3031
BRANCH NAME: Historic Courthouse

PLAINTIFF:  RENWOOD WINERY, INC.

DEFENDANT:  W.J. DEUTSCH & SONS, INC.

| WRIT OF POSSESSION  ☐ AFTER HEARING  ☑ EX PARTE | CASE NUMBER: |
|---|---|

TO THE SHERIFF OR ANY MARSHAL OF THE COUNTY OF  NAPA

YOU ARE DIRECTED:

1. To levy upon and retain in your custody, until released or sold (Code Civ. Proc., § 514.030), the following property or any part of it *(specify)*:

    See Attachment

2. To enter the following private place or places to take possession of the above-described property or some part of it *(specify exact locations)*:

    See Attachment

3. To return this writ and the certificate of your proceedings within 30 days after levy and service, but in no event later than 60 days after issuance of this writ.

Dated:                                                    Clerk, by _____ , Deputy

| (SEAL) | **NOTICE TO DEFENDANT:** The plaintiff has filed with the court a written undertaking, a copy of which is attached. You have the right to object to the plaintiff's undertaking on a ground specified in Code of Civil Procedure section 995.920 and in the manner provided in Code of Civil Procedure section 515.030 or to obtain redelivery of the property by filing a written undertaking of your own, in an amount equal to the plaintiff's undertaking or as determined by the court under Code of Civil Procedure sections 515.010 and 515.020. You also have other rights under Code of Civil Procedure sections 512.020–512.120.<br><br>If your property has been taken under an ex parte writ of possession, you may apply under Code of Civil Procedure section 512.020(b) for an order that the writ be quashed, any property levied on be released, and for other relief as provided in that section, including an award of damages for any loss sustained by you as a proximate result of the levy. |
|---|---|

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CD-130 [Rev. January 1, 2006] | **WRIT OF POSSESSION**<br>(Claim and Delivery) | Code Civ. Proc., §§ 512.020–512.120<br>www.courtinfo.ca.gov<br><br>American LegalNet, Inc.<br>www.USCourtForms.com |
|---|---|---|

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Renwood Winery, Inc. v. W.J. Deutsch & Sons, Ltd. | |

1  The cure inventory subject to ex parte writ:
2  149322030100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2003 6/750; 57 cases
3  149322040100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2004 6/750; 0 cases
   140277040100 RENWOOD BARBERA AMADOR COUNTY 2004 6/750; 0 cases
4  149232040000 RENWOOD ZINFANDEL OLD VINE AMA DOR COUNTY 2004 12/750; 836 cases
   149232040401 RENWOOD ZINFANDEL OLD VINE AMA DOR COUNTY 2004 1/3L; • PROMO 15
5  cases
6  149232040401 RENWOOD ZINFANDEL OLD VINE AMA DOR COUNTY 200512/750; 4,211 cases
   cases
7  149232050000 RENWOOD ZINFANDEL JACK RABBIT FLAT 2004 6/750; 65 cases
8  149324040100 RENWOOD ORANGE MUSCAT AMADOR COUNTY 200612/375; 536 cases
   146550060300 RENWOOD PORT SIERRA FOOTHILLS 2003 12/375; 555 cases
9  147052030300 RENWOOD PORT SIERRA FOOTHILLS 2004 12/750; 89 cases
   149233060300 RENWOOD ZINFANDEL AMADOR ICE 2006 12/375; 26 cases
10  146744050000 RENWOOD DRY ROSE RED LABEL 200512/750; 425 cases
11  149174050000 RENWOOD VIOGNIER SIERRA SERIES 2005 12/750; 0 cases
   149234050000 RENWOOD ZINFANDEL RED LABEL 200512/750; 10,799 cases
12  The above inventory is located at 875 Hanna Drive, American Canyon, CA.
13
14
15
16
17
18
19
20
21
22
23
24
25
26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line*
   *numbers)*:
27  This page may be used with any Judicial Council form or any other paper filed with the court.    Page _____

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

ADDITIONAL PAGE
Attach to Judicial Council Form or Other Court Paper                    CRC 301, 501

CD-120

| PLAINTIFF: RENWOOD WINERY, INC. | CASE NUMBER: |
|---|---|
| DEFENDANT: W.J. DEUTSCH & SONS, LTD. | |

## ADDITIONAL FINDINGS FOR EX PARTE ISSUANCE OF WRIT OF POSSESSION

4. [✓] The court also finds:

   a. [ ] Defendant gained possession of the property described in item 3c, which was not entrusted to the defendant, by feloniously taking such property from the plaintiff by means other than by false or fraudulent representation, pretense, or embezzlement.

   b. [ ] The property is a credit card.

   c. [✓] Defendant acquired possession of this property in the ordinary course of the defendant's trade or business for commercial purposes. and (1) the property is not necessary for the support of the defendant or the defendant's family; (2) there is an immediate danger that the property will become unavailable to levy by reason of being transferred, concealed or removed from the state, or will become substantially impaired in value by acts of destruction, or by failure to take care of the property in a reasonable manner; and (3) the ex parte issuance of a writ of possession is necessary to protect the property.

   d. Total number of boxes checked in item 4: _2_

## ORDERS

5. **IT IS ORDERED**

   a. The clerk of this court is directed to issue a writ of possession as provided in Code of Civil Procedure section 512.020, directing the sheriff or marshal within whose jurisdiction the property described in item 3c, or some part of it, is located, to seize such property and retain custody of it as provided in Code of Civil Procedure sections 514.010–514.050.

   b. [✓] The clerk is directed to issue the writ of possession immediately.

   c. [ ] The clerk is directed to issue the writ of possession upon the plaintiff's filing of a written undertaking, as required by Code of Civil Procedure section 515.010, in the amount of: $

   d. The written undertaking required by the defendant for redelivery or to stay delivery is in the amount of: $

   e. The clerk of this court is directed to attach a copy of this order and a copy of the plaintiff's undertaking to the writ of possession.

   f. The sheriff or marshal may enter the following private place(s) to take possession of the property or some part of it:

      See Attachment

   [✓] Continued on Attachment 5f.

   g. [✓] Defendant *(name):* W.J. Deutsch & Sons Ltd.
      Is ordered to transfer possession of the property described in item 3c to the plaintiff. (Code Civ. Proc., § 512.070.)

**NOTICE TO DEFENDANT: Failure to comply with an order of the court to turn over possession of such property to the plaintiff may subject you to being held in contempt of court.**

6. Number of pages attached: _1_

Dated: _____

                                          (JUDICIAL OFFICER)

                      [ ] Signature follows last attachment.

### ORDER FOR WRIT OF POSSESSION
#### (Claim and Delivery)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Renwood Winery, Inc. v. W.J. Deutsch & Sons, Ltd. | |

1  ATTACHMENT: 3c, 3d, 3f; 5f:

2  The cure inventory subject to ex parte writ:

3  149322030100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2003 6/750;  57 cases

   149322040100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2004 6/750; 0 cases

4  140277040100 RENWOOD BARBERA AMADOR COUNTY 2004 6/750;  0 cases

5  149232040000 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 2004 12/750;  836 cases

   149232040401 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 2004 1/3L; • PROMO 15

6  cases

7  140232050000 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 200512/750;  4,211 cases

   149324040100 RENWOOD ZINFANDEL JACK RABBIT FLAT 2004 6/750; 65 cases

8  146550060300 RENWOOD ORANGE MUSCAT AMADOR COUNTY 200612/375; 536 cases

9  147052030300 RENWOOD PORT SIERRA FOOTHILLS 2003 12/375; 555 cases

   147052040000 RENWOOD PORT SIERRA FOOTHILLS 2004 12/750; 89 cases

10  149233060300 RENWOOD ZINFANDEL AMADOR ICE 2006 12/375; 26 cases

11  146744050000 RENWOOD DRY ROSE RED LABEL 200512/750;  425 cases

   149174050000 RENWOOD VIOGNIER SIERRA SERIES 2005 12/750; 0 cases

12  149234050000 RENWOOD ZINFANDEL RED LABEL 200512/750; 10,799 cases

13  The above inventory is located at 875 Hanna Drive, American Canyon, CA.

14

15

16

17

18

19

20

21

22

23

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers):*

27  This page may be used with any Judicial Council form or any other paper filed with the court.                                Page ____

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

CRC 201, 501

American LegalNet, Inc. | www.USCourtForms.com

CD-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Whitney A. Davis. SBN 149523<br>CHARTER DAVIS LLP<br>1730 I Street. # 240<br>Sacramento. CA 95814<br>TELEPHONE NO.: (916) 448-9000        FAX NO. *(Optional)*: (916) 448-9009<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Renwood Winery, Inc. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF NAPA
STREET ADDRESS: 825 Brown Street
MAILING ADDRESS:
CITY AND ZIP CODE: Napa, CA 94559-3031
BRANCH NAME: Historic Courthouse

PLAINTIFF: RENWOOD WINERY, INC.

DEFENDANT: W.J. DEUTSCH & SONS, LTD.

| | CASE NUMBER: |
|---|---|
| **NOTICE OF APPLICATION FOR WRIT OF POSSESSION AND HEARING** | |

TO DEFENDANT* *(name)*: W.J. DEUTSCH & SONS, LTD.

1. A hearing on the plaintiff's application for a writ of possession for levy on personal property described in the application, including attachments, claimed to be wrongfully detained by you, will held be in this court, as follows:

    a. Date:                Time: 11:30a.m.  ☑ Dept.: B       ☐  Rm.:

    b. Address of court: ☑ same as noted above  ☐ is *(specify)*:

2. The writ of possession will be issued if the court finds that the plaintiff's claim is probably valid and the other requirements for issuing the writ are established. This hearing is not for the purpose of determining whether the claim is actually valid. The determination of the actual validity of the claim will be made in later proceedings in the action and will not be affected by the decision at the hearing on the application for the writ.

3. If you wish to oppose the issuance of the writ, you must file with this court and serve on the plaintiff's attorney, or on the plaintiff if the plaintiff has no attorney, one or more declarations providing evidence sufficient to defeat the plaintiff's right to issuance of the writ.

4. If you fail to oppose the issuance of the writ, the court at the hearing may do the following:

    a. Order that a writ of possession be issued.
    b. Order that you or anyone in possession transfer possession of the claimed property to the plaintiff (Code Civ. Proc., § 512.070).
    c. Grant injunctive or other relief.

5. If a writ of possession is issued, you may stay the delivery of the property or regain possession of property taken under the writ by filing an undertaking with the court in accordance with Code of Civil Procedure section 515.020.

6. IF YOU BELIEVE THE PLAINTIFF MAY NOT BE ENTITLED TO POSSESSION OF THE PROPERTY CLAIMED, YOU MAY WISH TO SEEK THE ADVICE OF AN ATTORNEY. SUCH ATTORNEY SHOULD BE CONSULTED PROMPTLY SO THAT HE OR SHE MAY ASSIST YOU BEFORE THE TIME SET FOR THE HEARING.

Dated: June 12, 2008

WHITNEY A. DAVIS
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

* "Plaintiff" includes cross-complainant, and "defendant" includes cross-defendant.

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CD-110 [Rev. January 1, 2000] | **NOTICE OF APPLICATION FOR WRIT OF POSSESSION AND HEARING**<br>(Claim and Delivery) | Code Civ. Proc., § 512.040<br>www.courtinfo.ca.gov<br><br>American LegalNet, Inc.<br>www.USCourtForms.com |
|---|---|---|

CD-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Whitney A. Davis, SBN 149525<br>CHARTER DAVIS LLP<br>1730 I Street, # 240<br>Sacramento, CA 95814<br>TELEPHONE NO.: (916) 448-9000    FAX NO. *(Optional)*: (916) 448-9009<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Renwood Winery, Inc. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF NAPA
STREET ADDRESS: 825 Brown Streeet
MAILING ADDRESS:
CITY AND ZIP CODE: Napa, CA 94559-3031
BRANCH NAME: Historic Courthouse

PLAINTIFF: RENWOOD WINERY, INC.

DEFENDANT: W.J. DEUTSCH & SONS, LTD.

| NOTICE OF APPLICATION FOR WRIT OF POSSESSION AND HEARING | CASE NUMBER |
|---|---|

TO DEFENDANT* *(name)*: W.J. DEUTSCH & SONS, LTD.

1.  A hearing on the plaintiff's application for a writ of possession for levy on personal property described in the application, including attachments, claimed to be wrongfully detained by you, will held be in this court, as follows:

    a.  Date:                    Time: 11:30a.m.    ☑ Dept.: B    ☐ Rm.:

    b.  Address of court:    ☑ same as noted above    ☐ is *(specify)*:

2.  The writ of possession will be issued if the court finds that the plaintiff's claim is probably valid and the other requirements for issuing the writ are established. This hearing is not for the purpose of determining whether the claim is actually valid. The determination of the actual validity of the claim will be made in later proceedings in the action and will not be affected by the decision at the hearing on the application for the writ.

3.  If you wish to oppose the issuance of the writ, you must file with this court and serve on the plaintiff's attorney, or on the plaintiff if the plaintiff has no attorney, one or more declarations providing evidence sufficient to defeat the plaintiff's right to issuance of the writ.

4.  If you fail to oppose the issuance of the writ, the court at the hearing may do the following:

    a.  Order that a writ of possession be issued.
    b.  Order that you or anyone in possession transfer possession of the claimed property to the plaintiff (Code Civ. Proc., § 512.070).
    c.  Grant injunctive or other relief.

5.  If a writ of possession is issued, you may stay the delivery of the property or regain possession of property taken under the writ by filing an undertaking with the court in accordance with Code of Civil Procedure section 515.020.

6.  IF YOU BELIEVE THE PLAINTIFF MAY NOT BE ENTITLED TO POSSESSION OF THE PROPERTY CLAIMED, YOU MAY WISH TO SEEK THE ADVICE OF AN ATTORNEY. SUCH ATTORNEY SHOULD BE CONSULTED PROMPTLY SO THAT HE OR SHE MAY ASSIST YOU BEFORE THE TIME SET FOR THE HEARING.

Dated: June 12, 2008

WHITNEY A. DAVIS
(TYPE OR PRINT NAME)                                    ► _____
                                                           (SIGNATURE OF PLAINTIFF OR ATTORNEY)

* "Plaintiff" includes cross-complainant, and "defendant" includes cross-defendant.

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CD-110 [Rev. January 1, 2008] | NOTICE OF APPLICATION FOR WRIT OF POSSESSION AND HEARING<br>(Claim and Delivery) | Code Civ. Proc, § 512.010<br>www.courtinfo.ca.gov<br><br>American LegalNet, Inc.<br>www.USCourtForms.com |
|---|---|---|

CD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| WHITNEY DAVIS, SBN 149523<br>CHARTER DAVIS LLP<br>1730 I STREET STE. 240<br>SACRAMENTO, CA 95814<br>  TELEPHONE NO. (916) 448-9000   FAX NO. *(Optional):* (916) 448-9009<br>E-MAIL ADDRESS *(Optional):*<br>  ATTORNEY FOR *(Name):* RENWOOD WINERY INC. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF NAPA
  STREET ADDRESS: 825 BROWN STREET
  MAILING ADDRESS: 825 BROWN STREET
  CITY AND ZIP CODE: NAPA, CA 94559-3031
  BRANCH NAME: NAPA SUPERIOR COURT-HISTORIC COURTHOUSE

PLAINTIFF: RENWOOD WINERY INC.

DEFENDANT: W.J. DEUTSCH & SONS LTD.

| APPLICATION FOR WRIT OF POSSESSION ☑ AFTER HEARING<br>☐ EX PARTE ☐ AND FOR TEMPORARY RESTRAINING ORDER | CASE NUMBER: |
|---|---|

1. Plaintiff* has filed a complaint and makes claim for delivery of property in the possession of the defendant named in b.
   a. Plaintiff *(name):* RENWOOD WINERY INC.
   b. Defendant *(name):* W.J. DEUTSCH & SONS LTD.

2. Plaintiff applies for (check all that apply):
   a. ☑ Writ of possession after hearing (Code Civ. Proc, (C.C.P.), § 512.010).
   b. ☐ Ex parte writ of possession (C.C.P., § 512.020). *(File Declaration for Ex Parte Writ of Possession, form CD-180.)*
   c. ☐ Temporary restraining order (C.C.P., § 513.010). *(File Application for Temporary Restraining Order, form CD-190.)*

3. The basis of the plaintiff's claim and right to possession of the claimed property is specified in ☑ a written document,
   a copy of which is attached. ☑ the verified complaint. ☑ the attached declaration. ☑ the following facts *(specify):*

   See Accompanying Memorandum of Points and Authorities filed/served June 6, 2008 in support of
   Application for Ex Parte Writ of Possession and alternatively TRO (Said Points and Authorities Likewise
   Support Noticed Writ of Possession); See also Accompanying Compendium of Exhibits, Accompanying
   Declarations of Whitney Davis, Robert Smerling and Danica Ratkovich filed/served concurrently with ex
   parte writ/TRO applications. See also Verified Complaint on file.

4. Claimed property *(Describe, state value, and further identify any property that is a farm product (Code Civ.Proc., § 511.040)
   or inventory hold for sale or lease (Code Civ. Proc., § 511.050)):*

   See Attachment

☑ Continued on Attachment 4.

* "Plaintiff" includes cross-complainant, "defendant" includes cross-defendant, and "complaint" includes cross-complaint.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CD-100 [Rev. January 1, 2008]

**APPLICATION FOR WRIT OF POSSESSION**
(Claim and Delivery)

Code Civ. Proc. § 512.010
www.courtinfo.ca.gov

American LegalNet, Inc.
www.USCourtForms.com

CD-100

| PLAINTIFF: RENWOOD WINERY INC. | CASE NUMBER: |
|---|---|
| DEFENDANT: W.J. DEUTSCH & SONS LTD. | |

5. A showing that the claimed property is wrongfully detained by defendant, of how the defendant came into possession of the claimed property, and, according to Plaintiff's best knowledge, information, and belief, of the reason for the defendant's detention of the claimed property, is made ☑ in the verified complaint. ☑ in the attached declaration. ☑ as follows (specify):

See Accompanying Memorandum of Points and Authorities filed/served June 6, 2008 in support of Application for Ex Parte Writ of Possession and alternatively TRO (Said Points and Authorities Likewise Support Noticed Writ of Possession); See also Accompanying Compendium of Exhibits, Accompanying Declarations of Whitney Davis, Robert Smerling and Danica Ratkovich filed/served concurrently with ex parte writ/TRO applications. See also Verified Complaint on file.

6. To Plaintiff's best knowledge, information, and belief the claimed property or some part of it is located as stated ☑ in the verified complaint. ☑ in the attached declaration. ☑ as follows (specify):
   (Include in this statement whether any part of the claimed property is within a private place that may have to be entered to take possession. If so, complete item 7.)

See Accompanying Memorandum of Points and Authorities filed/served June 6, 2008 in support of Application for Ex Parte Writ of Possession and alternatively TRO (Said Points and Authorities Likewise Support Noticed Writ of Possession); See also Accompanying Compendium of Exhibits, Accompanying Declarations of Whitney Davis, Robert Smerling and Danica Ratkovich filed/served concurrently with ex parte papers.
The subject cure inventory is located at 875 Hanna Drive, American Canyon, CA

7. ☑ Facts showing probable cause for belief that the claimed property or some part of it is located in the private place referred to in item 6 are specified ☑ in the verified complaint. ☑ in the attached declaration. ☑ as follows:

See Accompanying Memorandum of Points and Authorities in support of Application for Ex Parte Writ of Possession and alternatively TRO filed/served June 6, 2008. As a separate basis to allow entry to WJD'S premises, RENWOOD submits that the services agreement stipulates on behalf of WJD to filing and satisfaction of writs of attachment/execution aimed against contracted product inventory including that "owned" by WJD. (Exhibit A to the accompanying declaration of Robert Smerling at p. 8 (i)(b).) Thus, implied permission is indeed contemplated within the agreement and is warranted

8. The claimed property has not been taken for a tax, assessment, or fine, pursuant to statute, and (check one):
   a. ☑ has not been seized under an execution against the plaintiff's property.
   b. ☐ has been seized under an execution against the plaintiff's property, but is exempt from such seizure under (code section):

9. ☐ This action is subject to the ☐ Unruh Retail Installment Sales Act (Civ. Code, §§ 1801-1812.10);
   ☐ Rees-Levering Motor Vehicle Sales and Finance Act (Civ. Code, §§ 2981-2984.4).
   Facts showing that this is the proper court are specified in the ☐ verified complaint. ☐ attached declaration.

10. Total number of pages attached: 1

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: June 6, 2008

WHITNEY A. DAVIS
_____
(TYPE OR PRINT NAME)

► _____
(PLAINTIFF'S SIGNATURE)

Page 2 of 2

CD-100 [Rev. January 1, 2006]

**APPLICATION FOR WRIT OF POSSESSION**
(Claim and Delivery)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Renwood Winery, Inc. v. W.J. Deutsch & Sons, Ltd. | |

1  ATTACHMENT 4:

The cure inventory subject to writ of possession:

2  149322030100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2003 6/750; 57 cases

3  149322040100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2004 6/750; 0 cases

   140277040100 RENWOOD BARBERA AMADOR COUNTY 2004 6/750; 0 cases

4  149232040000 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 2004 12/750; 836 cases

5  149232040401 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 2004 1/3L.; • PROMO 15

6  cases

   149232050000 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 200512/750; 4,211 cases

7  149324040100 RENWOOD ZINFANDEL JACK RABBIT FLAT 2004 6/750; 65 cases

   146550060300 RENWOOD ORANGE MUSCAT AMADOR COUNTY 200612/375; 536 cases

8  147052030300 RENWOOD PORT SIERRA FOOTHILLS 2003 12/375; 555 cases

9  147052040000 RENWOOD PORT SIERRA FOOTHILLS 2004 12/750; 89 cases

   149233060300 RENWOOD ZINFANDEL AMADOR ICE 2006 12/375; 26 cases

10 146744050000 RENWOOD DRY ROSE RED LABEL 200512/750; 425 cases

11 149174050000 RENWOOD VIOGNIER SIERRA SERIES 2005 12/750; 0 cases

   149234050000 RENWOOD ZINFANDEL RED LABEL 200512/750; 10,799 cases

12

13 The above inventory is located at 875 Hanna Drive, American Canyon, CA.

14 Stated value: $1,761,400.00

15

16

17

18

19

20

21

22

23

24

25

26 *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers)*:

27 This page may be used with any Judicial Council form or any other paper filed with the court.    Page _____

Form Approved by the
Judicial Council of California
MC-020 (New January 1, 1997)

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

CRO-061, 001

Received    Jun-08-08  02:40pm    From-916 448 9009    To-NMPMN MARIN 1    Page  06

CD-120

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Whitney A. Davis, SBN 149523
CHARTER DAVIS LLP
1730 I Street, Suite 240
Sacramento, CA 95814
TELEPHONE NO.: (916) 448-9000    FAX NO. *(Optional):* (916) 448-9009
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* Renwood Winery, INc.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF NAPA
STREET ADDRESS: 825 Brown Street
MAILING ADDRESS:
CITY AND ZIP CODE: Napa, CA 94559-3031
BRANCH NAME: Historic Courthouse

PLAINTIFF: RENWOOD WINERY, INC.

DEFENDANT: W.J. DEUTSCH & SONS, LTD.

| ORDER FOR WRIT OF POSSESSION<br>☑ AFTER HEARING    ☐ EX PARTE | CASE NUMBER: |
|---|---|

## AFTER HEARING

1. ☑ The application of the plaintiff* for a writ of possession was heard as follows *(check boxes in 1c and 1d to indicate personal presence at the hearing):*

a. Judicial Officer *(name):*

b. Hearing date:                Time:            ☐ Dept.:            ☐ Rm.:

c. ☑ Plaintiff *(name):*                              ☑ Attorney *(name):*
    RENWOOD WINERY INC.                            WHITNEY A. DAVIS

d. ☐ Defendant *(name):*                            ☐ Attorney *(name):*
    W.J. DEUTSCH & SONS LTD.                        JAMES PARRINELLO

## EX PARTE

2. ☐ The application of the plaintiff for an ex parte writ of possession has been considered by the court.

3. The court finds:

a. ☐ Defendant has been properly served as required by Code of Civil Procedure section 512.030.
    *(Do not check this item if the application is ex parte.)*

b. Plaintiff ☐ has  ☑ has not  filed an undertaking as required by Code of Civil Procedure section 515.010.

c. Plaintiff has established the probable validity of the plaintiff's claim to possession of the following property *(specify):*
   See Attachment

    ☐ Continued on Attachment 3c.

d. ☐ There is probable cause to believe this property or some part of it is located at one or more of the following private places *(specify):*
   See Attachment

    ☑ Continued on Attachment 3d.

*"Plaintiff" includes cross-complainant, and "defendant" includes cross-defendant.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CD-120 [Rev. January 1, 2000] | ORDER FOR WRIT OF POSSESSION<br>(Claim and Delivery) | Code Civ. Proc., §§ 512.020, 512.030,<br>512.070; 514.010, 514.030; 515.010<br>www.courtinfo.ca.gov |
|---|---|---|
| | | American LegalNet, Inc.<br>www.USCourtForms.com |

CD-120

| PLAINTIFF: RENWOOD WINERY, INC. | CASE NUMBER |
|---|---|
| DEFENDANT: W.J. DEUTSCH & SONS, LTD. | |

## ADDITIONAL FINDINGS FOR EX PARTE ISSUANCE OF WRIT OF POSSESSION

4. ☐ The court also finds:

   a. ☐ Defendant gained possession of the property described in item 3c, which was not entrusted to the defendant, by feloniously taking such property from the plaintiff by means other than by false or fraudulent representation, pretense, or embezzlement.

   b. ☐ The property is a credit card.

   c. ☐ Defendant acquired possession of this property in the ordinary course of the defendant's trade or business for commercial purposes, and (1) the property is not necessary for the support of the defendant or the defendant's family; (2) there is an immediate danger that the property will become unavailable to levy by reason of being transferred, concealed or removed from the state, or will become substantially impaired in value by acts of destruction, or by failure to take care of the property in a reasonable manner; and (3) the ex parte issuance of a writ of possession is necessary to protect the property.

   d. Total number of boxes checked in item 4: _____

## ORDERS

5. **IT IS ORDERED**

   a. The clerk of this court is directed to issue a writ of possession as provided in Code of Civil Procedure section 512.020, directing the sheriff or marshal within whose jurisdiction the property described in item 3c, or some part of it, is located, to seize such property and retain custody of it as provided in Code of Civil Procedure sections 514.010–514.050.

   b. ☑ The clerk is directed to issue the writ of possession immediately.

   c. ☐ The clerk is directed to issue the writ of possession upon the plaintiff's filing of a written undertaking, as required by Code of Civil Procedure section 515.010, in the amount of: $

   d. The written undertaking required by the defendant for redelivery or to stay delivery is in the amount of: $

   e. The clerk of this court is directed to attach a copy of this order and a copy of the plaintiff's undertaking to the writ of possession.

   f. The sheriff or marshal may enter the following private place(s) to take possession of the property or some part of it:

      See Attachment

   ☑ Continued on Attachment 5f.

   g. ☑ Defendant *(name):* W.J. Deutsch & Sons Ltd.
      is ordered to transfer possession of the property described in item 3c to the plaintiff. (Code Civ. Proc., § 512.070.)

**NOTICE TO DEFENDANT: Failure to comply with an order of the court to turn over possession of such property to the plaintiff may subject you to being held in contempt of court.**

6. Number of pages attached: _____

Dated: _____

                       _____
                               (JUDICIAL OFFICER)
            ☐ Signature follows last attachment.

**ORDER FOR WRIT OF POSSESSION**
(Claim and Delivery)

Received  Jun-08-08  02:40pm    From-916 448 9009    To-NMPMN MARIN 1    Page  08

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Renwood Winery, Inc. v. W.J. Deutsch & Sons, Ltd. | |

1 ATTACHMENT: 3c, 3d, 3f, 5f:

2 The cure inventory subject to writ of possession (following noticed hearing):

3 149322030100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2003 6/750; 57 cases
149322040100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2004 6/750; 0 cases
4 140277040100 RENWOOD BARBERA AMADOR COUNTY 2004 6/750; 0 cases
5 149232040000 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 2004 12/750; 836 cases
149232040401 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 2004 1/3L; • PROMO 15
6 cases
7 149232050000 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 200512/750; 4,211 cases
149324040100 RENWOOD ZINFANDEL JACK RABBIT FLAT 2004 6/750; 65 cases
8 146550060300 RENWOOD ORANGE MUSCAT AMADOR COUNTY 200612/375; 536 cases
9 147052030300 RENWOOD PORT SIERRA FOOTHILLS 2003 12/375; 555 cases
147052040000 RENWOOD PORT SIERRA FOOTHILLS 2004 12/750; 89 cases
10 149233060300 RENWOOD ZINFANDEL AMADOR ICE 2006 12/375; 26 cases
11 146744050000 RENWOOD DRY ROSE RED LABEL 200512/750; 425 cases
149174050000 RENWOOD VIOGNIER SIERRA SERIES 2005 12/750; 0 cases
12 149234050000 RENWOOD ZINFANDEL RED LABEL 200512/750; 10,799 cases

13 The above inventory is located at 875 Hanna Drive, American Canyon, CA.

14

15 Stated value: $1,761,400.00

16

17

18

19

20

21

22

23

24

25

26 *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers)*:

27 This page may be used with any Judicial Council form or any other paper filed with the court.                Page ____

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

CRC 201, 501

# CHARTER✦DAVIS LLP
1730 I Street, Suite 240
Sacramento, California 95814
916-448-9000 Phone
916-448-9009 Fax

## FACSIMILE COVER SHEET

TO:        **James Parinello**         FACSIMILE:   **(415) 388-6874**
           **NIELSEN, MERKSAMER, PARRINELLO, et al.**

FROM:      **Susan Leon**
           **Legal Assistant to Whitney Davis**

RE:        **Renwood Winery, Inc.**

DATE:      **June 8, 2008**                PAGES:        __4__ (including
                                                        cover page)

           ORIGINAL TO FOLLOW IN MAIL:      _____ YES    __x___ NO

**MESSAGE:** Decl. of WAD



CD-180

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Whitney A. Davis, SBN 149523<br>CHARTER DAVIS LLP<br>1730 I Street, # 240<br>Sacramento, CA 95814<br><br>TELEPHONE NO.: (916) 448-9000    FAX NO. *(Optional):* (916) 448-9009<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Renwood Winery, Inc. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF NAPA
STREET ADDRESS: 825 Brown Street
MAILING ADDRESS:
CITY AND ZIP CODE: Napa, CA 94559-3031
BRANCH NAME: Historic Courthouse

PLAINTIFF: RENWOOD WINERY, INC.

DEFENDANT: W.J. DEUTSCH & SONS, LTD.

| DECLARATION FOR EX PARTE WRIT OF POSSESSION | CASE NUMBER: |
|---|---|

1. ☐ A showing that the defendant* gained possession of the property described in the application, which was not entrusted to the defendant, by feloniously taking such property from the plaintiff* by means other than by false or fraudulent representation, pretense, or embezzlement is made in the ☐ verified complaint. ☐ attached declaration. ☐ as follows:

2. ☐ A showing that the property described in the application is a credit card is made in the ☐ verified complaint ☐ attached declaration ☐ as follows:

3. ☑ A showing that the defendant acquired possession of the property described in the application in the ordinary course of trade or business for commercial purposes, and (a) the property is not necessary for the support of the defendant or the defendant's family; (b) there is an immediate danger that the property will become unavailable to levy by reason of being transferred, concealed or removed from the state, or will become substantially impaired in value by acts of destruction, or by failure to take care of the property in a reasonable manner; and (c) the ex parte issuance of a writ of possession is necessary to protect the property is made in the ☑ verified complaint. ☑ attached declaration. ☑ as follows:

See Attachment

4. The plaintiff ☐ has ☑ has not filed an undertaking under Code of Civil Procedure section 515.010.

5. Number of pages attached: 1

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

Date: June 7, 2008

WHITNEY A. DAVIS
*(TYPE OR PRINT PLAINTIFF'S NAME)*    ► _____
                                          *(PLAINTIFF'S SIGNATURE)*

* "Plaintiff" includes cross-complainant, and "defendant" includes cross-defendant.

Page 1 of 1
Form Adopted for Mandatory Use
Judicial Council of California
CD-180 [Rev. January 1, 2000]    **DECLARATION FOR EX PARTE WRIT OF POSSESSION**
**(Claim and Delivery)**    Code Civ. Proc., §§ 512.010, 512.020
www.courtinfo.ca.gov

American LegalNet, Inc.
www.USCourtForms.com

| SHORT TITLE: Renwood Winery, Inc. v. W.J. Deutsch & Sons, Ltd. | CASE NUMBER: |
|---|---|

1  Plaintiff RENWOOD WINERY INC. directs the Court to its accompanying Memorandum of Points and
2  Authorities in support of its application for an ex parte application for a writ of possession or, in the
3  alternative, a temporary restraining order pertaining to certain cure inventory collateral as discussed
   therein. RENWOOD applies for an ex parte writ of possession to recover certain cure inventory
4  representing personal property collateral in the possession of defendant W.J. DEUTSCH & SONS
   (hereinafter "WJD" and/or "Defendant".) RENWOOD seeks the ex parte writ of possession following
5  WJD'S contractual defaults/breaches relating to a wine sales and services agreement of March 2006
6  entered into by and between RENWOOD and WJD. (Exhibit A. attached to the accompanying
   Compendium of Exhibits.)
7
8  The agreement requires that RENWOOD produce 16 wines organized in four tiers and that WJD exert its
   "best efforts" to market and sell those wines. WJD also guaranteed a 15% growth in RENWOOD sales by
9  product and by tier for each month during the first five years of the contract. This means that if WJD did/
   does not sell the wine, WJD must buy the wine itself to cure the breach of the performance standard.
10 Additionally, WJD must ensure that depletions of distributor inventory to retailers not fall below 80% of
11 the sales performance standard. As is described in more detail in the accompanying points and authorities,
   WJD has breached the services agreement, (1) by accumulating and then selling out the enormous cure
12 inventory, located in American Canyon, CA, before selling from RENWOOD inventory, and (2) at the
13 same time, failing to cure contract breaches of the sales performance standard per the service agreement
   for many months. WJD is past due on cure invoices totaling in excess of $2 million. RENWOOD has a
14 security interest in that cure inventory per the security agreement and UCC-1 filings. The sale of wine
15 from the WJD cure inventory before satisfying monthly sales requirements or cure demands constitutes an
   unfair business practice, in that WJD has used the cure to delay payment and breach the contract. (See
16 accompanying declarations of Robert Smerling and Danica Ratkovich filed and served herewith and
17 verified complaint herein.)

18 Based on the above, and given the immediate danger of the cure inventory quickly disappearing (per
19 WJD's recent "sell off scheme") RENWOOD applies for an ex parte writ of possession to mandate the
   return of the cure inventory collateral and to prevent WJD from wrongfully selling off cure inventory
20 without curing contractual breaches under the services agreement. Due to WJD'S defaults on its
   contractual obligations to RENWOOD per the services agreement, RENWOOD has sent notices of cure
21 and also made demand for the cure inventory in which it has a security interest, but WJD has refused to
22 comply. RENWOOD seeks the court's assistance in enforcing its rights to possession of its cure inventory
   before WJD sells off more cure inventory, wrongfully diverting RENWOOD's collateral, and wrongfully
23 profiting from the cure inventory.
24
25 Defendant WJD was given notice on June 5, 2008 of RENWOOD's intent to seek the instant ex parte writ
   of possession or alternatively TRO.
26 *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers):*
27 | This page may be used with any Judicial Council form or any other paper filed with the court. |    Page _____

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

CRC 201, 501
American LegalNet, Inc. | www.USCourtForms.com

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| — Renwood Winery, Inc. v. W.J. Deutsch & Sons, Ltd. | |

1
2 The cure inventory subject to writ of possession (following noticed hearing):
149322030100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2003 6/750;  57 cases
3 149322040100 RENWOOD ZINFANDEL GRANDPERE AMADOR COUNTY 2004 6/750;  0 cases
140277040100 RENWOOD BARBERA AMADOR COUNTY 2004 6/750;  0 cases
4 149232040000 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 2004 12/750;  836 cases
5 149232040401 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 2004 1/3L; • PROMO 15
cases
6 149232050000 RENWOOD ZINFANDEL OLD VINE AMADOR COUNTY 200512/750;  4,211 cases
7 149324040100 RENWOOD ZINFANDEL JACK RABBIT FLAT 2004 6/750; 65 cases
146550060300 RENWOOD ORANGE MUSCAT AMADOR COUNTY 200612/375; 536 cases
8 147052030300 RENWOOD PORT SIERRA FOOTHILLS 2003 12/375; 555 cases
147052040000 RENWOOD PORT SIERRA FOOTHILLS 2004 12/750; 89 cases
9 149233060300 RENWOOD ZINFANDEL AMADOR ICE 2006 12/375; 26 cases
10 146744050000 RENWOOD DRY ROSE RED LABEL 200512/750;  425 cases
11 149174050000 RENWOOD VIOGNIER SIERRA SERIES 2005 12/750; 0 cases
149234050000 RENWOOD ZINFANDEL RED LABEL 200512/750; 10,799 cases
12 The above inventory is located at 875 Hanna Drive, American Canyon, CA.
13
14
15
16
17
18
19
20
21
22
23
24
25
26 *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers)*:
27

| This page may be used with any Judicial Council form or any other paper filed with the court. | Page _____ |
|---|---|

Form Approved by the
Judicial Council of California
MC-470 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501
American LegalNet, Inc. | www.USCourtForms.com