WHITNEY A. DAVIS, SBN 149523
MARIA S. ROSENFELD, SBN 186116
CHARTER DAVIS, LLP
1730 I Street, Ste. 240
Sacramento, CA 95814
(916) 448-9000
(916) 448-9009

ATTORNEYS FOR PLAINTIFF
RENWOOD WINERY, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RENWOOD WINERY INC.<br><br>Plaintiff,<br><br>vs.<br><br>W.J. DEUTSCH & SONS LTD., a New York Corporation, and DOES 1-50 inclusive,<br><br>Defendants. | Case No.: CV-08-02848 PJH<br><br>**OPPOSITION ON BEHALF OF PLAINTIFF RENWOOD WINERY, INC. TO MOTION TO DISMISS/COMPEL ARBITRATION FILED ON BEHALF OF W.J. DEUTSCH & SONS LTD.**<br><br>Date: July 23, 2008<br>Time: 9:00 a.m.<br><br>**The Honorable Phyllis J. Hamilton** |

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING OPPOSITION ON BEHALF OF
PLAINTIFF RENWOOD WINERY INC. TO DEFENDANT WJD'S MOTION TO DISMISS/COMPEL
ARBITRATION
CASE NO. C-08-02848 PJH

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ................................................................................................... 1

II.  RELEVANT FACTUAL BACKGROUND ............................................................ 2

   A. RENWOOD files for Writ of Possession/Temporary Restraining Order/Preliminary Injunctive Relief in Napa County Superior Court ................... 2

   B. Concurrent with RENWOOD'S Napa County Superior Court Application for Writ of Possession/Temporary Restraining Order/Preliminary Injunction Relief RENWOOD filed also a Demand for Arbitration with Sacramento JAMS as Contemplated by the Services Agreement ................................................................ 4

   C. WJD Removes the Napa County Superior Court Action to Federal Court Before Any Provisional Relief Could be Heard/Granted ................................................... 5

   D. WJD Files Motion to Dismiss for Lack of Subject Matter Jurisdiction/Motion to Compel Arbitration ................................................................................................. 6

   E. WJD Ignores JAMS Rule 24(e) Which Specifically Permits Parties Subject to JAMS Arbitration to Seek Recourse Before a Court for Interim or Provisional Relief ........................................................................................................................ 7

III. LEGAL ANALYSIS ................................................................................................. 7

   A. THE ISSUE OF ARBITRATION IS MOOT HERE AS RENWOOD HAS DEMANDED ARBITRATION IN THIS MATTER ............................................. 7

B.    THE COURT RETAINS JURISDICTION TO ISSUE INTERIM PROVISIONAL RELIEF PENDING ARBITRATION ................................................................................. 9

    1.    JAMS Rule 24(e) Specifically Permits Interim Relief while Arbitration Pending ........................................................................................... 9

    2.    JAMS Rule 24(e) Permitting Interim Relief Prevents Parties like WJD, here, from Transforming the Arbitration Process into a Hollow Proceeding ......................... 10

    3.    JAMS Rule 24(e) Permits Court Jurisdiction Over this Action in Order to Prevent a Breakdown of the Arbitration Process ............................................................. 11

IV.    CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

<u>Supreme Court Cases</u>                                                                                                      <u>Pages</u>

*First Options of Chicago v. Kaplan*
    (1995) 514 US 938, 115 S.Ct. 1920..................................................................8

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*
    (1989) 489 US 468, 109 S. Ct. 1248.................................................................8

<u>Federal Court Cases</u>

*KKE Architects, Inc. v. Diamond Ridge Dev. LLC Case No. CV-07-06866*
    (2008) U.S. Dist. Lexis 17127 (C.D. Cal. Mar. 3. 2008)...................................8

*Morris v. Morgan Stanley & Co.*
    (9th Cir. 1991) 942 F.2d 648..........................................................................12

*Ortho Pharm. Corp. v. Amgen, Inc.*
    (3rd Cir. 1989) 882 F.2d 806............................................................................12

*PMS Distributing Co. Inc. v. Huber & Suhner, A.G.*
    (9th Cir. 1988) 863 F.2d 639....................................................................8,9, 12

*Simula Inc. v. Autoliv Inc.*
    (9th Cir. 1999)175 F.2d 719..............................................................................8

*Sink v. Aden Enter, Inc.*
    (9th Cir. 2003) 352 F.3d 1197.........................................................................12

*Sovak v. Chugai Pharmaceutical Co.*
    (9th Cir. 2002) 280 F.3d 1266...........................................................................8

*Sparling v. Hoffman Constr. Co. .*
    (9th Cir. 1989) 864 F.2d 635............................................................................8

State Court Cases

*Davenport v. Blue Cross of California*
    (1997) 52 Cal.App.4th 435................................................................8,10

*Luster v. Collins*
    (1993) 15 Cal.App.4th 1338..................................................................10

*Marsch v. Williams*
    (1994) 23 Cal.App.4th 238....................................................................10

Federal Statutes

Federal Arbitration Act...........................................................................7

State Statutes

Civ. Code § 512 et. seq.......................................................................1, 2
    § 1281 et. seq...........................................................................7,10, 12

Other

JAMS Arbitration Provision ...................................................................6

JAMS Rule 11(c).................................................................................8,9

JAMS Rule 24(e)...............................................................................7-12

# I.

# INTRODUCTION

Defendant W.J. DEUTSCH & SONS LTD. (hereinafter "WJD") demands dismissal claiming that JAMS is the only adjudicating authority to which the parties may direct requests for provisional relief. To reach its conclusion, defendant ignored JAMS Rule 24(e), which expressly authorizes a party to seek such relief in court. Defendant's motion is therefore relegated to an improper legal artifice calculated to delay Renwood's path to relief while defendant tries to sell Plaintiff RENWOOD's collateral.

Indeed, Plaintiff RENWOOD's request for interim relief pending arbitration is entirely appropriate, and in no manner undermines contractual obligations to arbitrate under the March 2006 Services Agreement. (See **Exhibit A** to the accompanying declaration of Whitney A. Davis.) To the contrary, it is RENWOOD who demanded arbitration of all pending matters on June 9, 2008 (**Exhibit B** to the accompanying declaration of Whitney A. Davis.) concurrently with its request in state court, seeking to obtain ex parte writ of possession relief and accompanying injunctive relief as provisional relief to preserve the status quo pending arbitration. RENWOOD's goal is to recover and/or "freeze" (pending arbitration determination on the merits) certain cure inventory representing collateral in the possession of defendant WJD, following WJD'S contractual defaults/breaches relating to the Services Agreement.[1]

---

[1] RENWOOD applies concurrently for Writ of Possession relief under California Code of Civil Procedure § 512.010 to recover certain cure inventory representing personal property collateral in the possession of defendant W.J. DEUTSCH & SONS. RENWOOD seeks a writ of possession (ex parte or by noticed hearing as the Court deems necessary) following WJD'S contractual defaults/breaches relating to the wine sales and services agreement of March 2006 entered into by and between RENWOOD and WJD. (**Exhibit A** to the accompanying declaration of Whitney A. Davis.) The agreement requires that RENWOOD produce 16 wines organized in four tiers and that WJD exert its "best efforts" to market and sell those wines. WJD also guaranteed a 15% growth in RENWOOD sales by product and by tier for each month during the first five years of the contract. This means that if WJD did/does not sell the wine, WJD must buy the wine itself to cure the breach of the performance standard. Additionally, WJD must ensure that depletions of distributor inventory to retailers not fall below 80% of the sales performance standard. WJD has breached the services agreement, (1) by accumulating and then selling out the enormous cure inventory, located in American Canyon, CA, before selling from RENWOOD inventory, and (2) at the same time, failing to cure contract breaches of the sales performance standard per the service agreement for many months. WJD is past due on cure invoices totaling in excess of $2 million. RENWOOD has a security interest in that cure inventory per the security agreement and UCC-1 filings. The sale of wine from the WJD cure inventory before satisfying monthly sales requirements or cure demands constitutes an unfair business practice, in that WJD has used the cure to delay payment

Nothing in either the Federal Arbitration Act (to the extent it is deemed applicable) or the California Arbitration Rules prohibit interim provisional relief ordered by the Court. WJD's motion to compel arbitration is mooted by RENWOOD's demand for arbitration.

The only real issue here, then, is ensuring that this Court *retains* jurisdiction during this arbitration such that the status quo is not further disturbed by WJD pending a determination on the merits.

## II.

## RELEVANT FACTUAL BACKGROUND

### A. RENWOOD files for Writ of Possession/Temporary Restraining Order/Preliminary Injunction Relief in Napa County Superior Court

On June 9, 2008 RENWOOD filed a verified complaint and accompanying application in the Napa County Superior Court for Writ of Possession relief under California Code of Civil Procedure § 512.010 to recover certain cure inventory representing wine inventory collateral in the possession of defendant WJD.[2] In conjunction with the complaint, RENWOOD filed (in the state court) for a writ of possession (either ex parte or by noticed hearing as the Court deemed necessary) following WJD'S contractual defaults/breaches relating to the wine sales and services agreement of March 2006 entered into by and between RENWOOD and WJD. (**Exhibit A.**)

The agreement requires that RENWOOD produce 16 wines organized in four tiers and that WJD exert its "best efforts" to market and sell those wines. WJD also guaranteed a 15%

---

and breach the contract. Based on the above, there is immediate danger of the cure inventory quickly disappearing (per WJD's recent "sell off scheme") RENWOOD applies for an ex parte writ of possession to mandate the return of the cure inventory collateral and to prevent WJD from wrongfully selling off cure inventory without curing contractual breaches under the services agreement. Due to WJD'S defaults on its contractual obligations to RENWOOD per the services agreement, RENWOOD has sent notices of cure and also made demand for the cure inventory in which it has a security interest, but WJD has refused to comply. The sale of wine from the WJD cure inventory before satisfying monthly sales requirements or cure demands constitutes an unfair business practice, in that WJD has used the cure to delay payment and breach the contract. By cutting off sales revenue from contracted wines, WJD is eliminating revenue to prevent RENWOOD from funding its harvest of grapes for the next vintage. The grapes of an entire vintage will be ruined, causing irreparable injury in the form of lost inventory. (See **Exhibit C**, accompanying declaration of Robert Smerling at ¶ 62.) The compendium to which Mr. Smerling's declaration refers is on file with the writ of possession/injunction/TRO papers. Bottom line is, the threat is real and the need for immediate Court intervention is critical.

[2] Napa County Superior Court was chosen given that the "res" for this in rem/quasi in rem proceeding (i.e. the subject wine inventory) is located in Napa County.

growth in RENWOOD sales by product and by tier for each month during the first five years of the contract. *This means that if WJD did/does not sell the wine, WJD must **buy the wine itself** to cure the breach of the performance standard.* Additionally, WJD must ensure that depletions of distributor inventory to retailers not fall below 80% of the sales performance standard. WJD enjoys annual sales revenue in excess of $500 million, so it has the resources to comply with the terms of the Services Agreement.

Because RENWOOD would not consent to WJD's demand to reduce the guarantee to which WJD would be held, WJD decided to retaliate by deploying a double-whammy. WJD essentially stopped selling wine from RENWOOD's inventory, and stopped paying on its monthly sales shortfalls. Instead, WJD sold wine from the cure inventory, in which RENWOOD holds a security interest.

The resulting damage is substantial. WJD owes RENWOOD about $2 million, most of which is past due, and all of which WJD claims it does not owe. When annual sales for the small winery are barely more than $8 million, WJD's defaults are devastating. The fact that WJD stopped paying RENWOOD on the eve of harvest ensures that the effects of the WJD defaults will be felt for years to come.

RENWOOD has a security interest in that cure inventory per the Services Agreement and UCC-1 filings. The sale of wine from the WJD cure inventory before satisfying monthly sales requirements or cure demands constitutes an unfair business practice, in that WJD has used the cure to delay payment and breach the contract. (See accompanying declarations of Robert Smerling and Danica Ratkovich filed and served in conjunction with RENWOOD'S concurrent filing herein seeking ex parte writ of possession or alternatively temporary restraining order/preliminary injunction pending hearing on writ of possession; a copy of Robert Smerling's declaration is likewise attached as **Exhibit C** to the accompanying declaration of Whitney A. Davis )

As explained in the declaration of Robert Smerling, the sale of wine from the WJD cure inventory before satisfying monthly sales requirements or cure demands constitutes an unfair business practice, in that WJD has used the cure to delay payment and breach the contract. (Smerling Dec at ¶ 61.) By cutting off sales revenue from contracted wines, WJD is eliminating revenue to prevent RENWOOD from funding its harvest of grapes for the next vintage. The grapes of an entire vintage will be ruined, causing irreparable injury in the form of lost inventory. RENWOOD's wines cannot be made with grapes from other vineyards, nor could RENWOOD buy grapes to replace them as the unique Grandpere and Grandmere grapes, blended into many of the other RENWOOD wines, can only be grown at RENWOOD. (Smerling Dec at ¶ 62.)

Based on the above, and given the immediate danger of the cure inventory quickly disappearing, RENWOOD applied at the Napa County Superior Court for an ex parte writ of possession to mandate the return of the cure inventory collateral and to prevent WJD from wrongfully selling-off the cure inventory without first curing contractual breaches under the Services Agreement. Due to WJD'S defaults on its contractual obligations to RENWOOD per the services agreement, RENWOOD sent notices of cure and also made demand for the cure inventory in which it has a security interest, but WJD has refused to comply.

Thus, the gravity of the instant lawsuit concerns RENWOOD's request for court assistance in enforcing its rights to possession of its cure inventory before WJD sells off more cure inventory, wrongfully diverting RENWOOD's collateral, and wrongfully profiting from the cure inventory. If for any reason the ex parte writ of possession was not issued, RENWOOD sought (and now seeks in the instant Court) injunctive relief requiring WJD to preserve the cure inventory pending arbitration.

**B. Concurrent with RENWOOD'S Napa County Superior Court Application for Writ of Possession/Temporary Restraining Order/Preliminary Injunction Relief RENWOOD filed also a Demand for Arbitration with Sacramento JAMS as Contemplated by the Services Agreement**

Notably, the above writ of possession action provides the issuing Court with a variety of options from ex parte writ relief to a temporary restraining order to a preliminary injunction, all consistent with RENWOOD's theme that this aspect of the litigation seeks only interim relief

to preclude WJD from depleting the "cure inventory" prior to an arbitration ruling on the merits.[3]

To make abundantly clear that RENWOOD fully intended to arbitrate, RENWOOD also filed a Demand for Arbitration as to the claims for money damages and related relief. (**Exhibit B** to the accompanying declaration of Whitney A. Davis.) As described by counsel for WJD, the Demand for Arbitration "includes most, if not all, of the allegations set forth in its [provisional relief] Complaint." (Motion to Dismiss at p. 2 line 27- p. 3 line 1.)

Clearly, then, RENWOOD has not sidestepped its obligations under the Services Agreement to arbitrate the present controversy/dispute. Quite the contrary, RENWOOD demanded the same while also seeking interim provisional relief to preserve the "status quo" and thus, prevent the pending arbitration from turning out to be "hollow" relief.

### C. WJD Removes the Napa County Superior Court Action to Federal Court Before Any Provisional Relief Could be Heard/Granted

On June 9, 2008, the same date ex parte writ of possession/temporary restraining order relief was sought, and prior to the Court hearing the matter substantively, WJD removed the matter to this court.

With characteristic hubris, on June 10, 2008, W.J. Deutsch CEO Peter Deutsch sent electronic correspondence to Renwood CEO Robert Smerling stating, "I heard you had a great productive day in Napa Court yesterday." (**Exhibit F** to the accompanying declaration of Whitney A. Davis.)

/ / /

/ / /

/ / /

---

[3] To the extent the Court deems ex parte writ of possession relief to tread into determination on the merits of any of the underlying claims, RENWOOD purposefully requested, alternatively, a TRO or other injunctive relief to stress that the goal here is to "freeze" the cure inventory pending arbitration determination of issues on the merits. Thus, a TRO alone and/or injunction is requested and perhaps most appropriate while the arbitration is pending.

### D. WJD Moves to Dismiss for Lack of Subject Matter Jurisdiction/Motion to Compel Arbitration

WJD filed a motion to dismiss and/or motion to compel arbitration on the basis that all claims within the complaint are subject to arbitration. (WJD's points and authorities supporting Motion to Dismiss at p. 1 ¶ 1.) WJD presumes that the Federal Arbitration Act applies to the Services Agreement because the underlying dispute involves interstate commerce. (WJD's points and authorities at p. 3 lines 15-16.) Defendant argues that the dispute resolution provision of the Services Agreement provides that any dispute, controversy, or claim arising from, or regarding the terms and operation of, the Services Agreement must be submitted to mediation and, if not resolved by mediation, arbitration pursuant to JAMS rules ("Arbitration Provision.") (*Id.* at p. 1 lines 17-2:4; see also **Exhibit A** at §IX.)

WJD counsel's June 18, 2008 letter to JAMS sheds light on WJD'S true motives in both removing the matter to federal court and attempted dismissal for lack of subject matter jurisdiction (**Exhibit E**.) Therein, counsel for WJD requests that a "new" arbitrator be appointed in regards to RENWOOD's arbitration demand, even though all parties had been through arbitration with JAMS with arbitrator Ken Gack. (see **Exhibit E** detailing parties' history in arbitration with Ken Gack.) WJD counsel goes further, encouraging that JAMS *not* "automatically" assign the matter given that it would be necessary to engage attorney(s) and review their ability to arbitrate the matter. All in all, a combined look at WJD's responses/reactions affirms WJD has implemented a strategy to drag out the arbitration process (from selection of arbitrator to discovery to conducting/enforcing the agreement) while they "sell off their cure inventory.

In the same letter, WJD alludes briefly that the fact that RENWOOD'S injunctive requests (i.e. RENWOOD'S request that WJD stop selling off cure inventory) poses no emergency. This again is difficult to digest given that without any cure inventory there will be no adequate remedy at law in the arbitration proceeding. Again, reading between the lines, of WJD's letter to JAMS, it is clear that WJD's ploy is to engage in a series of delay tactics to derail timely hearing of the arbitration process (such that WJD can continue on its course of

breaching the Services Agreement and wrongfully disposing/selling off/moving/hiding the cure inventory at issue.)  By the instant motion, WJD hopes to simultaneously divest the Court of jurisdiction so it can likewise divest RENWOOD of recourse.

### E. WJD Ignores JAMS Rule 24(e) Which Specifically Permits Parties Subject to JAMS Arbitration to Seek Recourse Before a Court for Interim or Provisional Relief.

RENWOOD herein incorporates the JAMS Comprehensive Arbitration Rules and Procedures as **Exhibit D** to the accompanying declaration of Whitney A. Davis.  The parties agreed to be bound by the JAMS rules, including JAMS Rule 24(e) which specifically states:

> "any recourse by a party to a **court** for **interim** or **provisional** relief <u>**shall not be deemed incompatible with the agreement to arbitrate**</u>."
> (Emphasis added.)

Defendant WJD's argument that a party cannot seek provisional relief from a court when the dispute is one that the parties have agreed to submit to arbitration, if accepted, would obviously render meaningless Rule 24(e)'s relief provision.  Also obvious is that Rule 24(e) assumes the existence of an agreement to arbitrate and yet still recognizes the inherent ability of a party to seek Court issued interim relief *notwithstanding* the ability of an arbitrator to provide provisional injunctive relief.

## III.

## LEGAL ANALYSIS

### A. THE ISSUE OF ARBITRABILITY IS MOOT AS RENWOOD DEMANDED ARBITRATION.

Defendant WJD opens with analysis of the Federal Arbitration Act[4], thereafter launching into analysis as to how and why the question of arbitrability rests here with the arbitrator. The

---

[4] In assuming application of the FAA, WJD appears to ignore XII E of the Services Agreement (Exhibit A) which indicates that the parties submit to Sacramento County Superior Court jurisdiction, and agree further to interpret the agreement under California law.  The FAA rules governing arbitration do not apply where the parties have clearly provided otherwise. Nothing in the Act prevents enforcement of agreements to arbitrate under different rules. Just as the parties may limit by contract the issues to be arbitrated "so too may they specify by

7

Services Agreement incorporates the JAMS rules. Defendant WJD argues that JAMS Rule 11c delegates jurisdictional and arbitrability of disputes to the arbitrator. (Motion to Dismiss at 4:12-20.) Plaintiff RENWOOD does not disagree that this is the language of Rule 11c. More importantly, however, whether the underlying dispute/controversy is subject to arbitration, with the arbitrator having authority to determine issues of arbitrability as an initial matter is moot to the analysis here. This is so given that plaintiff RENWOOD <u>demanded</u> arbitration of the underlying disputes. (See **Exhibit B**.) As acknowledged by WJD itself, the Demand for Arbitration "includes most, if not all, of the allegations set forth in its [provisional relief] Complaint." (Motion to Dismiss at p. 2 line 27- p. 3 line 1.) Clearly, then, RENWOOD has not sidestepped its obligations under the Services Agreement to arbitrate the present controversy/dispute.[5] Quite the contrary, RENWOOD demanded the same while also seeking interim provisional relief to preserve the "status quo" and thus, prevent the pending arbitration from being relegated to a fruitless endeavor.

---

contract the rules under which the arbitration will be conducted." (*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.* (1989) 489 US 468, 469, 109 S.Ct. 1248, 1250; *Sovak v. Chugai Pharmaceutical Co.* (9th Cir. 2002) 280 F3d 1266, 1269) The basic objective is to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms and according to the intentions of the parties. (*First Options of Chicago v. Kaplan* (1995) 514 US 938, 946, 115 S.Ct. 1920, 1925.) In the "bigger picture" the distinction between the FAA applicability as opposed to the California Arbitration rules is minimal as the California Rules, Code Civ. Proc. §1281 et. seq. as well as interpretation of the FAA are aligned as to a party's **right** to seek provisional relief in Court even when a matter is arbitrable and has in fact been submitted to arbitration. (*PMS Distributing Co., Inc. v. Huber & Suhner, A.G.*, 863 F.2d 639, 642 (9th Cir. 1988); Code Civ. Proc. §1281.1; *Davenport v. Blue Cross of California*, 52 Cal. App. 4th 435, 453, 60 Cal. Rptr. 2d 641, 651 (1997) (under both California law and the FAA, the trial court has the authority to grant injunctive relief pending contractual arbitration, as necessary to preserve the effectiveness of arbitration.

[5] Those cases cited in the Motion to Dismiss wherein the Court dismissed claims subject to arbitration are likewise off base (*Sparling v. Hoffman Constr. Co.* 864 F.2d 635 (9th Cir. 1989); *Simula Inc. v. Autoliv Inc.* 175 F.3d 716, 719 (9th Cir. 1999), *KKE Architects, Inc. v. Diamond Ridge Dev. LLC*, Case No. CV-07-06866, 2008 U.S. Dist. LEXIS 17127 (C.D. Cal. Mar. 3, 2008) as those cases contained no concurrent demand to arbitration so as to invoke Rule 24e relief nor were they cases with an express agreement incorporated by the parties permitting Court intervention.

Instead, the relevant legal question is whether the Court nonetheless retains jurisdiction to issue interim relief/remedies while arbitration is pending.

## B. THE COURT MAY ISSUE PROVISIONAL RELIEF PENDING ARBITRATION

### 1. JAMS Rule 24(e) Specifically Permits Interim Relief while Arbitration Pending

JAMS Rule 24(e) (incorporated into the Services Agreement by the provision in the Services Agreement submitting to the Comprehensive JAMS rules (**Exhibit A** XII E ¶ 4)) specifically states that "**any** recourse by a party to a court for **interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate**." (Emphasis added).

First, Rule 24(e) refutes WJD's underlying premise that a party cannot seek provisional relief from a court when the dispute is one that the parties have agreed to submit to arbitration. That Rule *assumes* the existence of an agreement to arbitrate and recognizes the jurisdiction of the court to provide provisional injunctive relief. Thus, Rule 24(e)'s recognition of the right to seek preliminary injunctive relief in the courts cannot be reasonably construed as WJD would suggest by its interpretation of Rule 11c to suggest that parties are banned from court intervention on any matter subject to arbitration. Obviously, such interpretation would render Rule 24(e) meaningless.

The Ninth Circuit has established that a party to an arbitration agreement may seek provisional injunctive relief in court, ***specifically provisional relief in the form of a writ of possession***. (*PMS Distributing Co., Inc. v. Huber & Suhner, A.G.*, 863 F.2d 639, 642 (9th Cir. 1988).) Therein, the Court ruled that a district court **can** grant injunctive relief in an arbitrable dispute pending arbitration, in line with the congressional desire to enforce arbitration agreements given that any ruling to the contrary would frustrate the Court's ability to maintain and preserve the status quo pending arbitration.

The California Arbitration statutory scheme is no different when a party seeks such provisional relief in conjunction with a demand for arbitration. (See *Davenport v. Blue Cross of California*, 52 Cal. App. 4th 435, 453, 60 Cal. Rptr. 2d 641, 651 (1997) ("under both California law and the FAA, the trial court has the authority to grant injunctive relief pending contractual arbitration, as necessary to preserve the effectiveness of arbitration"; see also Code Civ. Proc. §1281.1[6] providing parallel rule to JAMS Rule 24(e).)

### 2. JAMS Rule 24(e) Prevents Parties like WJD, here, from Transforming the Arbitration Process into a Hollow Proceeding.

The rationale behind JAMS Rule 24(e) and the Ninth Circuit authority, holding that a party to an arbitration agreement may seek provisional injunctive relief in court is sound. For the reality is, the process of submitting a demand for arbitration to JAMS, going through the arbitration selection process, scheduling the arbitration itself, and other routine case opening procedures can take many weeks, and can be ***stretched longer*** by a party determined on ***delaying*** the process.

Here, WJD deployed its delay tactics while it negotiated with distributors to quickly buy-out the entire cure inventory. First, WJD removed the matter to federal court on diversity grounds (to prevent speedy issuance of an ex parte writ of possession and/or temporary restraining order/preliminary injunction aimed at preserving the status quo while the parties arbitrate the underlying matters). Second, WJD filed the present motion. Third, WJD demanded that JAMS treat RENWOOD's June 9, 2008 arbitration demand as a "new matter" despite the fact

---

[6] To the extent California Arbitration Rules are applied, the need for Court intervention is even greater. For California courts have determined that an arbitrator's power is not on par with that of the Courts. (e.g. *Marsch v. Williams* (1994) 23 Cal.App.4th 238, 245 stands for the proposition that arbitrators do not have the power to appoint a receiver; *Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1347-1348, arbitrator had no authority to issue contempt sanction type relief.)

that the parties have been through JAMS before on the identical issues with an already selected/familiar arbitrator (who might have streamlined both the issues and the process.)

Rule 24(e) exists to combat this type dilatory conduct by permitting provisional injunctive relief in court. Thus, while RENWOOD waits for WJD to inevitably be hauled in front of a JAMS neutral, it can be protected by immediate court relief to maintain the status quo and prevent further irreparable harm from occurring by WJD's delay scheme. RENWOOD should not be forced to await the decision of an arbitrator not even yet identified/selected, and then forced to confirm any injunctive based relief before it becomes enforceable.

### 3.  JAMS Rule 24(e) Permits Court Jurisdiction in Order to Prevent a Breakdown of the Arbitration Process.

The Court cannot lose sight of WJD's obvious goals of delay and harassment of this small winery while the collateral is sold out from under tiny Renwood. WJD CEO Peter Deutsch's sarcastic e-mail to Renwood CEO Robert Smerling the day after the TRO/writ was removed to this court speaks volumes beyond its text. WJD is knowingly trying to destroy the Renwood brand by breaching the contract with impunity, and delaying Renwood's remedy before harvest.

To merely keep Renwood busy, WJD moves to dismiss this matter entirely, arguing that the Court does not need to retain jurisdiction of this action because the claims are subject to arbitration. Again, plaintiff RENWOOD has demanded arbitration and that process is in the initiation stages. However, while plaintiff RENWOOD is hopeful that defendant WJD will cooperate in the arbitration process, its delay tactic actions to date speak volumes in terms of predicting what is to come. It is telling how eager WJD is to ensure the Court loses jurisdiction which would otherwise act to keep the parties "in check" during the arbitration. Clearly, this Court should retain jurisdiction to ensure that the arbitration process does not break down.

Presuming as defendant WJD does, that the FAA comes into play here, the Ninth Circuit has held that the FAA empowers district courts to "retain control over case[s] to prevent a complete breakdown of the [arbitration] process." (*Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 653 (9th Cir. 1991.) Stated simply, retaining jurisdiction is important not to displace the arbitration process but rather to support it. The California Arbitration Rules provide a parallel provision. To that end, Code Civ. Proc. 1281.8 allows for provisional remedies, including writs of possession (specifically mentioned) while arbitrations are pending or in connection with an arbitrable controversy to the extent an arbitration award might otherwise be rendered ineffectual without such relief.

The reality is, continued Court jurisdiction is necessary to oversee the arbitration process and protect the "sanctity of the arbitral process." (See *Morris*, 942 F.2d at 653.) For during the course of the arbitral process, a variety of situations might transpire requiring Court intervention. (See *Morris*, 942 F.2d at 653 [court forced to intervene (while arbitration pending) when parties unreasonably delay arbitration proceedings]) (*Id.* at 653-654); *Sink v. Aden Enter., Inc.*, 352 F.3d 1197, 1199 (9th Cir. 2003 [court intervention to force case to trial after a party failed to comply with arbitration requirements during arbitration pending before an arbitration service.])

Additionally, and clearly on point here, district courts have the authority to grant other equitable **remedies** during arbitration proceedings, including ordering prejudgment attachments and/or writ of possession pending outcome of arbitration. (*PMS Distributing Co., Inc. v. Huber & Suhner, A.G.*, 854 F.2d 355, 358 (9th Cir. 1988) [district court had jurisdiction to grant writ of possession pending outcome of arbitration.] Lastly, district courts have inherent jurisdiction to rule on requests for injunctive or other equitable relief in arbitrable matters. (*Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 811-13 (3d Cir. 1989) [court had jurisdiction to rule on motion for preliminary injunction.]

Bottom line is, whether the court applies the FAA or the California Arbitration rules, the Court in this matter has the jurisdiction to hear RENWOOD'S and can order the accompanying ex parte writ of possession/injunctive relief request pending arbitration. In the instant matter, WJD has already set sail on a course of steady delay tactics. RENWOOD, in turn, is irreparably damaged with each day that WJD continues its breach of the services agreement, and wrongfully disposes of the cure inventory as collateral.

More importantly, WJD's conduct to date seriously suggests that Court intervention may become necessary throughout the arbitration course in order to prevent breakdown of the arbitration process. At the very least, this Court should entertain the ex parte writ of possession request and concurrent TRO/preliminary injunction requests. Thereafter, the Court can direct the arbitration to proceed **while retaining jurisdiction to ensure the process does not break down.**

## IV.
## CONCLUSION

WJD should not be permitted to engage in a "pick and pull" as regards to which provisions in the Services Agreement (and incorporated JAMS rules) it will adhere to and which it will not. Where, as here, plaintiff RENWOOD (1) has submitted to arbitration yet seeks injunctive based/writ of possession remedy relief in addition to claims that are subject to arbitration, and (2) the Services Agreement specifically contemplates a party's recourse to the Courts for interim provisional relief pending arbitration, courts may allow the claims, including writ of possession remedies and accompanying injunctive relief requests.

///

///

1 | For all of these reasons, defendant's motion to dismiss must be denied, and the motion to
2 | compel under the FAA denied as the parties have otherwise submitted to arbitration in the first
3 | instance.

4 | DATED: June ___ 2008                    CHARTER DAVIS, LLP

                                            _____
                                            WHITNEY A. DAVIS
                                            Attorneys for RENWOOD WINERY INC.