NIELSEN, MERKSAMER, PARRINELLO,
  MUELLER & NAYLOR, LLP
JAMES R. PARRINELLO, SBN #63415
SEAN P. WELCH, SBN #227101
2350 KERNER BLVD., SUITE 250
SAN RAFAEL, CA 94901
TELEPHONE (415) 389-6800
FAX          (415) 388-6874
e-mail: jparrinello@nmgovlaw.com

*Attorneys for Defendant*
W.J. Deutsch & Sons, Ltd.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RENWOOD WINERY, INC.,<br><br>    *Plaintiff,*<br><br>v.<br><br>W.J. DEUTSCH & SONS, LTD., a New York Corporation, and DOES 1-50, inclusive,<br><br>    *Defendants.* | Case No.  C 08-02848 PJH<br><br>**PRELIMINARY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR WRIT OF POSSESSION AND/OR TEMPORARY RESTRAINING ORDER**<br><br>DATE: July 2, 2008<br>TIME:  9:00 a.m.<br>Hon. Phyllis J. Hamilton |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

0

I. **INTRODUCTION**

This Memorandum of Points and Authorities is submitted on behalf of defendant W.J. DEUTSCH & SONS LTD ("WJD"), in opposition to the application by plaintiff Renwood Winery, Inc. ("Renwood") for a Writ of Possession, Temporary Restraining Order or Preliminary Injunction.

Renwood's application suffers from several fatal procedural flaws. First, the underlying claims supporting its application are subject to arbitration; the pursuit of those claims in this Court as well as the instant application constitutes a flagrant violation of Renwood's obligation to arbitrate disputes. Second, the Federal Arbitration Act ("FAA") does <u>not</u> authorize Court issued provisional remedies such as Renwood seeks here. Both the claims asserted and relief requested are legally untenable. Finally, Renwood has been threatening to seek injunctive relief for a month. This case has been pending since June 9th and Renwood has sat on its hands since then, making this "urgent" ex parte application absolutely inappropriate. Four months ago WJD put Renwood on written notice of its position (the crux of Renwood's claim) and notably, the papers purporting to support Renwood's application are at least three weeks old and raise nothing more than the claim that WJD will "dump" the inventory in issue. As we demonstrate, there is nothing to this claim, making Renwood's request for emergency relief particularly hollow.

Moreover, even if its claims were not arbitrable and the FAA allowed for the issuance of provisional relief, Renwood's application would be legally insufficient. Stripped of hyperbole, Renwood's contentions here are – at bottom – about money. Given the adequacy of a monetary award, Renwood's request for equitable relief is not legally tenable. Furthermore Renwood's damage claim is bizarre; essentially it is claiming the full purchase price for goods (additional so-called "cure inventory") that it refuses to sell to WJD. Nor, can Renwood establish a legitimate basis to seize property (wine comprising existing cure inventory) for which WJD had already paid in full and in which Renwood has no security interest. This is particularly so since Renwood is not even willing to support its application with the requisite undertaking required by

1

California Code of Civil Procedure section 515.010(a).[1] Hence, Plaintiff's application, failing to establish either a likelihood of success on the merits or irreparable harm, is devoid of merit.

## II.    FACTUAL SUMMARY

The fulcrum of the dispute between the parties is a Services Agreement executed March 17, 2006 (the "Agreement"), whereunder WJD is granted the exclusive right to market and sell Plaintiff's wine.[2] As discussed in WJD's accompanying motion to dismiss the complaint and compel arbitration, the Agreement contains a comprehensive dispute resolution provision - providing for both mediation and arbitration of any dispute, claim or controversy arising from the Agreement. On June 9, 2008 Renwood filed a complaint (the "Complaint") in the Napa County Superior Court seeking possession of certain wine inventory bought and paid for by WJD (the "Cure Inventory"); as an alternative, the Complaint seeks injunctive relief with respect to this Cure Inventory. WJD filed a Notice of Removal in this Court that same day. (Renwood's state court complaint is appended to WJD's Notice of Removal of Action filed in this Court on June 9, 2008.)

Sometime before June 9, 2008, the Plaintiff filed a Demand for Arbitration with JAMS (the "Demand") pursuant to the Agreement. (Parrinello Decl., Ex. G.) Notably, the Complaint is necessarily based upon the Agreement. Remarkably, however, the Complaint never mentions the arbitration provision <u>or</u> the Demand (which asserts almost identical allegations concerning WJD's purported breaches of the Agreement).

Finally, in stark contrast to Renwood's unwillingness to do so – even to bolster its application here – by letter dated June 10, 2008, WJD offered to post an undertaking in the

---

[1] This section specifies that no writ of possession or related TRO can be granted until plaintiff has filed an undertaking "in an amount not less than twice the value of defendant's interest in the property" at issue. As the declaration of Evis Savvides, filed herewith, attests, WJD purchased the "cure inventory" from Renwood and paid Renwood $1,212,410 for it; thus, Renwood <u>must</u> post an undertaking in the minimum amount of $2,424,820. Renwood's argument that it should not be required to post any bond under section 515.010(b) is spurious. That section applies only "[i]f the court finds that the defendant [WJD] has no interest in the property…" Such a finding is impossible here, as it is undisputed that WJD bought, paid for and owns the so-called cure inventory.

[2] Documents relevant to this application are annexed as exhibits to the accompanying Declaration of James R. Parrinello ("Parrinello Decl.") or cited to their location in the papers already on file with the Court. The Services Agreement is annexed as Exhibit A to Renwood's "Compendium of Exhibits" in support of its Ex Parte application.

2

---

**PRELIMINARY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR WRIT OF POSSESSION AND/OR TEMPORARY RESTRAINING ORDER**
CASE NO. C 08-02848 PJH

amount of the cost of the Cure Inventory <u>and</u> to give Renwood the opportunity to repurchase such inventory at WJD's laid-in cost. (Parrinello Decl., Ex. B.) Renwood rejected the offer. (Parrinello Decl., ¶ 6.)[3]

## III. LEGAL ANALYSIS

### A. This Court Does Not Have Jurisdiction To Entertain This Application.

This Court is respectfully referred to WJD's companion motion to dismiss the complaint on the grounds that Plaintiff's claims must be arbitrated pursuant to the parties' explicit agreement. (WJD's Motion to Dismiss was filed on June 11, 2008 and is pending before this Court.) As set forth in that motion, the parties bargained for a comprehensive dispute resolution clause, providing for (among other things) mediation, discovery rights and that arbitration proceedings shall take place pursuant to the Comprehensive Rules and Procedures promulgated by JAMS. As the WJD motion demonstrates, there can be no doubt that the issues raised by this action are arbitrable. Accordingly, the WJD motion to dismiss should be granted and this Court should not entertain any further application by Renwood for provisional relief or otherwise.

Renwood filed its opposition to the motion to dismiss only yesterday and WJD will file its reply as required by the Court's rules. Suffice it to say that Renwood's accusations in that opposition that WJD has acted improperly in removing this case to federal court and in proceeding under JAMS rules are unfounded and misleading in the extreme. While Renwood submits a copy of WJD's letter to JAMS explaining its position regarding the status of <u>this</u> case as a new case, the selection of an arbitrator and JAMS' jurisdiction to issue provisional relief, Renwood fails to give the Court the JAMS response of June 20, 2008, in which JAMS <u>agreed</u> with WJD's position. (Parrinello Decl., ¶ 8 and Ex. E.)

Since then WJD has duly paid the $400 fee required by JAMS and has made it clear that it will comply with all aspects of the case-opening process in a timely fashion. Renwood has no

---

[3] Instead it cleverly provided an intellectually insulting counterproposal: accepting Deutsch's undertaking but offering to exchange its own worthless "credit memo" for the amount of the cure inventory.

3

**PRELIMINARY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR WRIT OF POSSESSION AND/OR TEMPORARY RESTRAINING ORDER**
CASE NO. C 08-02848 PJH

basis to accuse WJD of dragging out the arbitration process and has no basis to require this Court to police the arbitration process. This action should be dismissed.

### B. Under These Circumstances The Court Should Not Award A Writ Of Possession Or Other Provisional Relief.

#### 1. The Court Does Not Have Authority To Issue Injunctive Relief.

The Ninth Circuit has recently stated that the Federal Arbitration Act "does not give a court authority to issue equitable remedies, such as a temporary injunction, to maintain the status quo between the parties." *Comedy Club, Inc. v. Improv West Associates*, 514 F. 3d 833, 843 (9th Cir. 2007) (as amended, 2008). Accordingly, even if the Plaintiff's Complaint survives Defendant's dismissal motion, the request for provisional relief must be denied.

Although dispositive, we are constrained to observe that *Comedy Club* is consistent with recent FAA jurisprudence limiting the courts' involvement in arbitrations to that explicitly set forth in the FAA. Thus, the Supreme Court recently held that private parties may not – by agreement or otherwise – expand judicial review of an arbitration award beyond the parameters expressly set forth in the FAA; affirming the Ninth Circuit, the court held that such an agreement was unenforceable. *Hall Street Assocs, L.L.C. v. Mattel, Inc.*, --- U.S. ---, 128 S. Ct. 1396, 1403 (2008). See also *Prostyakov v. Masco Corp.*, 513 F. 3d 716, 723 (7th Cir. 2008), in which the Seventh Circuit (citing the Ninth Circuit's *Hall* decision) reaffirmed the principle of limited judicial involvement in arbitration,

> [t]o do so [review arbitral awards for legal or factual error] would defeat the purpose of entering into an arbitration agreement in the first place – to opt out of the judicial system – and we will neither deprive parties of the benefits, nor shield them from the pitfalls, that arise when they agree to settle their disputes outside of the courts' purview.

Surely, if a courts' authority to review arbitral awards is limited to the grounds expressly set forth in the FAA, so too is the courts' authority to issue provisional relief (or otherwise involve themselves in pending arbitration) so limited. Thus, as the Ninth Circuit recently instructed, as the FAA "does not give a court authority to issue equitable remedies", the court

4

---

**PRELIMINARY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR WRIT OF POSSESSION AND/OR TEMPORARY RESTRAINING ORDER**
CASE NO. C 08-02848 PJH

cannot do so. Nor can it "shield [Renwood] from the pitfalls" that may arise as a result of its agreement to arbitrate.

In sum, the Court should deny Renwood's application: this matter should not even be before the Court. Even if the case had been properly filed, the FAA does not authorize the issuance of the provisional relief sought by Renwood. It is respectfully submitted that this Court should reject Renwood's bold effort to circumvent its obligation to arbitrate disputes (not settled by mediation) as set forth in Section XII.E. of the Agreement.

> 2. **Even If Plaintiff's Complaint Is Not Dismissed And The Court Did Have Authority To Issue The Relief Sought, The Court Should Not Usurp The Power The Parties Have Conferred Upon The Arbitrator**

Where, as here, the Agreement provides for arbitration of <u>all</u> disputes under the Agreement, a court may not step in and usurp the arbitrator's authority. This is particularly so since the provisional relief sought now by Renwood is encompassed within the remedies specified under the Agreement.[4] Even before *Hall* and *Comedy Club,* the Ninth Circuit had expressly forbidden courts from issuing provisional remedies when an arbitral tribunal had been empowered to grant the same relief. *Simula, Inc. v. Autoliv, Inc.*, 175 F. 3d 716, 725-26 (9th Cir.

---

[4] As set forth in the Agreement,

- Where there is a 60 day past due balance for Renwood products shipped to WJD, the past due balance is not attributed to a bonafide dispute between the parties and the parties have not submitted the dispute for mediation and arbitration, WJD may be subject to Writs of Attachment and/or Execution against such product (Agreement, VII.B.i.a. and b.);

- In the event of a unilateral termination of the Agreement by either party without Breach by the other, the terminating party shall pay the Liquidated Damages specified in the Agreement (Id., IX.B.3.a. and b.);

- In an arbitration mandated by the Agreement, the arbitrators are not empowered to award damages in excess of compensatory damages (Id., XII.E.).

5

PRELIMINARY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR WRIT OF POSSESSION AND/OR TEMPORARY RESTRAINING ORDER
CASE NO. C 08-02848 PJH

1999); *Ever-Gotesco Resources and Holdings, Inc. v. Pricesmart, Inc.*, 192 F. Supp. 2d 1040, 1044 (S.D.Cal. 2002). As the District Court in *Pricesmart* stated, the relief sought:

> was predicated on Defendant's alleged Agreement violation. The Agreement containing the arbitration clause is at the very core of this dispute; any argument to the contrary strains credulity. Therefore, the provisional relief Plaintiffs seek is clearly arbitrable.

*Id.* at 1043. *See also China National Metal Products Import/Export Co. v. Apex Digital, Inc.*, 155 F.Supp. 2d 1174, 1182 (C.D.Cal 2001) (Where the parties have agreed to abide by arbitration rules regarding provisional relief, "*Simula* dictates that the court must respect that agreement and refrain from awarding provisional relief when the parties have provided for another means to obtain such relief.")

The fact that the administrators at JAMS will not entertain an application for provisional relief (and has advised Renwood's counsel that such an application must be made to the duly appointed arbitrator) (Parrinello Decl., Ex. E) cannot alter this result. Such a process is precisely the process by which the parties have agreed to abide. Under the JAMS rules, which the parties have agreed will govern the dispute resolution process, provisional relief may be available, not from a JAMS administrator, but from the arbitrator (Rule 24(e)). Here, however, by its continuing efforts to evade its agreement to arbitrate under the JAMS rules Renwood has allowed several weeks to pass without availing itself of the procedures to which it has agreed. Thus, although Renwood apparently contacted JAMS about provisional relief sometime <u>in May</u> (Parrinello Decl., Ex. A), rather than filing its Demand then and requesting that its case be opened promptly,

- On June 5, 2008 Renwood threatened WJD that it would seek a TRO in the Napa County Superior Court.

- On June 9, 2008 Renwood filed its complaint in Napa County and WJD immediately removed it to this Court.

- At or about the same time Renwood filed a Demand for Arbitration. (As already noted, the Complaint did not mention the arbitration requirement or the fact that an

6

PRELIMINARY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR WRIT OF POSSESSION AND/OR TEMPORARY RESTRAINING ORDER
CASE NO. C 08-02848 PJH

arbitration demand was also being filed, and the Demand did not mention the duplicative court action.)

- WJD filed its motion to dismiss the complaint on June 11, 2008.

- Renwood did nothing until June 18, 2008, when its counsel sent an email to JAM inquiring as to JAMS procedures for ex parte relief.

- On June 20, 2008 JAMS made it clear to Renwood that any application for provisional relief could only be made to a duly appointed arbitrator. Even then Renwood waited another 10 days to come to this Court to seek such relief, based on three-week old papers.

For Renwood now to argue that the Court should interfere with the Arbitrator's authority because provisional relief cannot be obtained from JAMS is beyond disingenuous. Had Renwood proceeded pursuant to the parties' agreed-to procedures and filed its Demand in May (when it first approached JAMS), the case-opening procedures might be concluded by now and an arbitrator would be in place to consider the matter. Renwood cannot be heard to argue that the Court must act because provisional relief from an arbitrator will not be available soon enough to suit Renwood's trumped up claims of irreparable harm. It cannot cite any case which holds that where parties have agreed to abide by arbitration rules regarding provisional relief, one party can avoid that agreement and obtain "urgent" relief from a court after it sat on its hands and failed to follow the rules to obtain provisional relief in arbitration. Respectfully, this Court should not reward Renwood's tactics and should refrain from awarding any provisional remedy.

### C. Renwood Cannot Establish That Any Injunctive Relief Is Warranted.

Even if the Court were to ignore the arbitration provision contained in the Agreement and overlook that the FAA does not authorize a court to issue the relief sought by Plaintiff; and, even if the Court were inclined to displace the arbitrator which has been granted the authority to issue

7

provisional relief, Renwood's motion is legally and factually untenable. Indeed, Deutsch disputes all of the material factual and legal premises of Renwood's application.

First and as already noted, Renwood's hysterical claims that WJD will "dump" this inventory are utterly without basis. The rank hearsay in Robert Smerling's three-week old Supplemental Affidavit cannot support the extraordinary relief sought by Renwood. This is especially so in view of WJD's confirmation to Southern Wine & Spirits (the supposed source of Renwood's dumping fears) that it will continue to sell in the "ordinary course of our business" and Southern's confirmation that it understands that pricing "will remain consistent with past practices". (Declaration of Peter Deutsch, Exhibits A and B. See also Savvides Declaration.) As Renwood's dumping allegations are the crux of its claims of irreparable harm, the application should be rejected on this basis alone.

In addition, among other things:

- WJD disputes Renwood's interpretation of the cure provisions of the Services Agreement and has done so since the outset of the parties' relationship. These provisions require WJD to purchase 85% (not 100%) for two "tiers" (categories) of wine products; the provisions require that WJD's performance be measured (and if applicable, "cured") on an annual (not monthly) basis. (Savvides Decl., ¶ 3; Services Agreement, ¶ VIII(D)iii.)

- The parties submitted their dispute to mediation in 2007 with a JAMS mediator, former Napa County presiding Judge Scott Snowdon. This effort appeared to be successful and resulted in an Interim Agreement which was to be a precursor to a written amendment to the Services Agreement. Renwood, however, reneged upon the agreement and refused to go forward with the amendment in January 2008. (Savvides Decl., ¶ 3.)

- Before Renwood reneged upon its agreement, WJD – as an accommodation and without prejudice – had been adhering to Renwood's incorrect contractual interpretation. On February 21, 2008 (Savvides Decl., Ex. B) WJD notified Renwood that it would make any applicable "cure" payments annually, at 85% for the two tiers in dispute in accordance with its understanding of the Services Agreement.

8

PRELIMINARY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR WRIT OF POSSESSION AND/OR TEMPORARY RESTRAINING ORDER
CASE NO. C 08-02848 PJH

- Knowing WJD's position since February, Renwood has done nothing. It is impossible to reconcile such delay with Renwood's vitriolic request for ex parte and emergency relief.

- WJD has paid Renwood in full for the Cure Inventory in issue. (Savvides Decl., ¶ 6.) This is WJD's wine.

- Similarly, Renwood has no security interest in this wine. Under Article VII.B.i. of the Services Agreement, any security interest attaches only to wine which has been delivered to WJD, but which has <u>not</u> been paid for. (Savvides Decl., ¶ **7.**)

- Renwood's claim for money allegedly due is <u>not</u> for wine delivered but not paid for. Instead, it is based on Renwood's incorrect view of the sales standards and the theory that WJD should have purchased more wine than it did and that it now owes Renwood for amounts equivalent to the wine WJD should have bought (but which WJD did <u>not</u> buy and <u>never</u> received). (Savvides Decl., ¶ 7.)

- WJD paid approximately $1,212,410 for the 16,540 cases of wine Renwood seeks to seize. If WJD is prevented from selling this wine, whether by an injunction against WJD or while the wine is held by Renwood under a Writ of Possession, WJD will be substantially harmed. As current vintages become available it will be difficult, if not impossible to sell the older vintages. Moreover, there will be concerns about the quality of the wine diminishing over time. Given Renwood's professed concern about its reputation, it should be encouraging WJD's prompt sale of this wine, rather than trying to interfere. (Savvides Decl., ¶ 10.)

- Renwood itself is in breach of its obligation under the Services Agreement to pay WJD $224, 216 in marketing fees for the first quarter of 2008 and owes additional fees for April and May 2008. WJD delivered its Notice of Breach on May 28, 2008, which apparently triggered Renwood's resort to the California Superior Court. (Savvides Decl., ¶ 8 and Ex. C.)

- Renwood already is holding $1 million of WJD's money. At the same time that the parties signed the Services Agreement, WJD invested $1 million in Renwood's parent company, in exchange for a minority interest in its stock, which is not publicly traded. While this will be

9

**PRELIMINARY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR WRIT OF POSSESSION AND/OR TEMPORARY RESTRAINING ORDER**
CASE NO. C 08-02848 PJH

the subject of a separate claim by WJD, suffice it to say that Renwood now owes $1 million to WJD. (Savvides Decl., ¶ 9.)

For all these reasons, Renwood cannot succeed in arbitration on its claims against WJD. More critically, it has no claim of irreparable harm. WJD has offered to post security in an amount approximating what WJD has paid for the Cure Inventory and it has offered to allow Renwood to repurchase this wine at WJD's laid-in cost. (Parrinello Decl., Ex. B.) Renwood has rejected that offer. (Parrinello Decl., ¶ 6.) In the face of this, Renwood cannot establish the irreparable injury required to support any provisional relief.

IV. **CONCLUSION**

For the reasons set forth herein, Renwood's application should be denied.

Date: July 1, 2008

Nielsen, Merksamer, Parrinello, Mueller & Naylor LLP

By: _____
James R. Parrinello, Esq.
ATTORNEYS FOR W.J. DEUTSCH & SONS, LTD.

10

**PRELIMINARY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR WRIT OF POSSESSION AND/OR TEMPORARY RESTRAINING ORDER**
CASE NO. C 08-02848 PJH